UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ALF RENTAL COMPANY, INC.,

                        Plaintiff,

      -against-

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP.,
CONSOLIDATED EDISON OF NEW YORK,
INC., TERRA DINAMICA, LLC, CORESLAB
STRUCTURES, and NICOLSON
CONSTRUCTION CO.,

                        Defendants.
------------------------------------------------------------X
CORESLAB STRUCTURES (CONN), INC.
(MISNAMED AS CORESLAB STRUCTURES),

                        Defendant/Third-Party Plaintiff,

      -against-

STEVE ALLARD,

                        Third-Party Defendant.
------------------------------------------------------------X

Docket No.: 07 CV 3148 (LAK)

---

MEMORANDUM OF DEFENDANT/THIRD PARTY PLAINTIFF CORESLAB
STRUCTURES (CONN), INC., IN OPPOSITION TO MOTIONS OF DEFENDANT
BUILDERS RESOURCE, INC., AND THIRD PARTY DEFENDANT STEVEN
ALLARD TO DISMISS CROSSCLAIMS AND THIRD PARTY COMPLAINT

---

**Lindabury, McCormick, Estabrook & Cooper, P.C.**
*Attorneys for Defendant/Third Party Plaintiff*
*Coreslab Structures (Conn), Inc.*
26 Broadway, Suite 2300
New York, New York 10004
(212) 742-3390

TABLE OF CONTENTS

PRELIMINARY STATEMENT ……………………………………………………………..1

COUTNERSTATEMENT OF FACTS………………………………………………………..2

LEGAL ARGUMENT

I.   THE FIRST-FILED (OR PRIOR PENDING) ACTION RULE
     FIRST REQUIRES THAT THE COURT WITH THE PRIOR
     ACTION DECIDE WHERE THE MATTER SHOULD PROCEED,
     SO THIS COURT SHOULD AWAIT THE DISPOSITION
     OF CORESLAB'S MOTION IN THE D. MASS. ACTION…………………………….6

II.  ALTERNATIVELY, THE BALANCE OF CONVENIENCE AND/OR
     SPECIAL CIRCUMSTANCES EXCEPTIONS TO THE FIRST-FILED
     RULE HERE APPLY………………………………………………………………………7

III. CORESLAB WILL PROMPTLY AMEND ITS RESPONSIVE PLEADING
     (AS OF RIGHT) TO JOIN ALLARD AS AN ADDED CROSSCLAIM
     DEFENDANT RATHER THAN A THIRD PARTY DEFENDANT…………………..10

IV.  THIS COURT HAS PERSONAL JURISDITION OVER ALLARD…………………...11

CONCLUSION………………………………………………………………………………..14

PRELIMINARY STATEMENT

This matter is before the court on the motions of defendant Builders Resource, Inc. ("BRI") and third party defendant Steve Allard ("Allard"), respectively, to dismiss the cross claims and the third party complaint against them of defendant/third party plaintiff Coreslab Structures (Conn), Inc. ("Coreslab"). Their motions lack merit

In brief, their assertion here of the prior pending action rule is misplaced. They instead must assert it to the court where the prior action pends.

In fact, BRI already has asserted it there, as part of its opposition to Coreslab's there-pending motion to dismiss that action or, alternatively, to transfer it here (for eventual consolidation with this one). This court therefore should await that court's disposition of such motion.

Coreslab made it there because that court lacks personal jurisdiction over Coreslab, because venue there is improper, and because a 28 U.S.C. § 1404(a) "convenience" transfer to this court is warranted. Here is where the underlying construction project was done, all necessary parties and witnesses are available, and the complete resolution required by applicable local law can be had.

Finally, Coreslab properly can join Allard as a F.R. Civ. P. 13(h) additional cross-claim defendant, even if not as a F.R. Civ. P. 14(a) third-party defendant, and it will so amend. Because of his numerous contacts with New York in connection with the project, personal jurisdiction exists over him here.

COUNTERSTATEMENT OF FACTS

The pleadings, together with the Affidavits of Edward J. Frisch, Esq., and of Leon Grant, with exhibits, show the following.

First, BRI's Verified Complaint in the District of Massachusetts ("D. Mass.") action was filed on March 13, 2007. (Frisch Affid., Exhs. A, B) Plaintiff Alf Rental Co. Inc.'s ("Alf's") state court Verified Complaint herein was filed on March 15, 2007, and later removed here by BRI. The former action thus was "prior pending" by two days.

Also of note, BRI's Verified Complaint in the former was verified by Allard. One of its exhibits, a sizeable "change order" to BRI, was sent to his "Attn" at BRI and then was signed by him. (Id., Exh. B) While he claims in his Affidavit not to be a "statutory officer" (sic) of BRI, he thereby has acted for it in significant legal and contractual matters.

Secondly, presently pending in the D. Mass. action is Coreslab's motion in advance of responsive pleading for a F.R. Civ. P. 12(b)(1), (2), (3) dismissal for lack of subject matter jurisdiction, lack of personal jurisdiction, and improper venue, and alternatively, for a 28 U.S.C. § 1404(a) "convenience" transfer to this court. The parties now await the court's decision thereon. (Id., ¶¶ 4-6 and Exhs. C-J.) If the motion were granted, there no longer would be a D. Mass. action.

Third, among the reasons for that motion – and for keeping Coreslab's claims over here – is that this matter emanated from a New York City construction project – the Mott Haven Substation project. Defendant Consolidated Edison of N.Y., Inc. ("Con Ed") was the project/premises owner; defendant D'Onofrio General Contractors Corp. ("D'Onofrio") was the general contractor; and defendants Terra Dinamica LLC, Nicholson Construction Co., and Coreslab were among D'Onofrio's subcontractors. (E.g., Id., Exh. E - ¶¶ 3, 4)

2

Coreslab subcontracted for the precast concrete work. In turn, it engaged BRI for the precast concrete erection. BRI then obtained services from several vendors, such as Alf for crane mats, third party defendant Bay Crane Service, Inc. ("Bay Crane") for crane rentals, and others. (Id., at ¶¶ 4, 12-14, 26) (BRI apparently contends that it procured Alf's crane mats through Bay Crane, rather than directly.)

Save for BRI and Coreslab, these project participants are parties here, but not in the D. Mass. action. Because of their New York or other tri-state locales, they likely would not be subject to personal jurisdiction in Massachusetts and, hence, could not be joined in the D. Mass. action. None appear to have done anything in Massachusetts related to the merits claims, so as to create any specific personal jurisdiction over them there. Moreover, the Massachusetts long arm statute for general personal jurisdiction extends only to those domiciled, incorporated, or having their principal place of business there – which none appear to be. (E.g. Id., Exh. D – pp. 3, 7-8, 12; Exh. I – pp. 2, 5-6)

Indeed, BRI itself had dealt with Coreslab (in Connecticut) from a BRI Rhode Island office. (Id., Exh. E - ¶¶ 5-11) BRI's D. Mass. Verified Complaint alleged that it had just "a place of business" in Massachusetts. (Id., Exh. B - ¶ 1) It since has asserted its incorporation there, although that may have occurred after its Rhode Island charter had been revoked. (See Id., Exh. L) Thus, the only Massachusetts connection to the project seems to have been BRI's unilateral actions to reincorporate and then to file suit against Coreslab there.

Such matters become relevant in several respects. For instance, on BRI's claim to payment for certain extra work (Id., Exh. B - ¶ 8), Coreslab will need testimony from Con Ed's and D'Onofrio's representatives that BRI did not comply with the conditions and limits to payment for such work (Id., Exh. J - ¶ 9; also see Id., Exh. E - ¶ 22 (flow down clause)). Corelab

3

also will need testimony from certain New York City officials that per their audit, BRI's certified payrolls did not support the amount claimed by it. (Id., Exh. J - ¶ 9) These necessary witnesses would be readily available here, but likely would not even be within the jurisdiction of the D. Mass. court.

More generally, the merits claims go beyond those for breach of contract between the respective parties in direct privity. They further include statutory claims for the foreclosure of several mechanics liens and associated relief, including by Alf, Coreslab itself, and Terra Dinamica. (E.g. Id., Exh. E - ¶¶ 13-17)

Pursuant to the New York Lien Law, all having liens on the project are necessary parties to anyone's lien foreclosure action, as are the general contractor and the project/premises owner. The reasons include: because there are two types of lienable res – the improved realty and the contract funds (and rights and claims thereto) remaining unpaid in the hands of each one contractually upstream of a lienor, which are impressed with a statutory trust; because of the derivative (or subrogation-like) nature of New York's lien system (i.e., payment to one immediately downstream discharges the payor pro tanto as to those further downstream); and because of the distributive rules for lien satisfaction (i.e. parity of distribution among lienors, but with a single satisfaction on vertically duplicative liens). (See Id., Exh. D – pp. 16-18)

This web of statutory rights and duties thus extends to project participants beyond those in direct privity on any particular contract, making them all necessary parties. While BRI would attempt to avoid it by having eschewed a lien of its own, that makes no difference. The monies for which it sues Coreslab, if due, would be trust funds in Coreslab's hands for the benefit of lienors downstream of BRI – such as Alf. Even BRI's present claim therefor and any later receipts thereof are or would be trust assets in its own hands for their benefit. In connection with

4

Coreslab's own lien, moreover, D'Onofrio and Con Ed need the other lienors to be involved, so that distributive parity can be had and any vertical duplication in liens can be netted out.

Additionally, several contract provisions resemble this statutory scheme.  As between D'Onofrio and Coreslab and likewise as between Coreslab and BRI, they condition payment on the putative payee's proof that its downstream project vendors have been paid and have no claims or liens, and they entitle the putative payor to things like indemnity against and the right to backcharge for such claims or liens.  (Id., Exh. D – p. 3, Exh. E - ¶¶ 21-29, Exh. K)

While such contract provisions alone might not make the other project participants necessary parties to contract litigation between the ones in privity, they do make representatives of those others important non-party witnesses – e.g. for testimony from Alf and other BRI project vendors on what they are owed, to support Coreslab's corresponding defenses and claims over against BRI.  Again, moreover, they would be readily available here, but not in Massachusetts.

As Coreslab has argued in its D. Mass motion, these and several other considerations warrant at least that action's transfer here, if not its dismissal.  Some of the other considerations are:  the presence of no one's witnesses or documents in Massachusetts (those even of BRI being in Rhode Island); the New York locale of the operative events; the applicability of New York's Lien Law and the inapplicability of any Massachusetts law; the availability of a complete resolution here but not there; the local interest in deciding localized controversies locally; and the lack of personal jurisdiction over Coreslab there.  (See Id., Exh. D – pp. 14-19, Exh. I – pp. 5-9)  BRI and Allard do not argue otherwise here, and BRI's contrary contentions there are without merit.

5

Finally, Allard errs in contending that this court lacks personal jurisdiction over him. He had negotiated BRI's subcontract with Coreslab, for BRI's work in New York and including through project vendors from New York. He also personally came to New York on numerous occasions to view the job site, negotiate the subcontract, obtain a necessary regulatory approval from the City, and attend job meetings. (Grant Affid., ¶¶ 5-16) (Even apart from this project, he had negotiated for BRI's purchase of equipment from a New York vendor. (Id., ¶ 14))

He did so, not as any mere corporate employee, but rather as one calling himself BRI's CFO, as one who verifies pleadings and signs contract documents for it, and as one who appears to be the spouse of its sole owner and president. (Id., ¶¶ 6; supra, p. 2) He thus had personally transacted business in New York.

Among the contract documents he signed were the lien waivers and releases which Coreslab contends were false and fraudulent – as asserted in its third party complaint against him. (E.g. Grant Affid. ¶ 15 and Exh. D) Coreslab's claim against him thus is related enough to his business transacted here for this court to have personal jurisdiction over him.

I.  THE FIRST-FILED (OR PRIOR PENDING) ACTION RULE FIRST REQUIRES THAT THE COURT WITH THE PRIOR ACTION DECIDE WHERE THE MATTER SHOULD PROCEED, SO THIS COURT SHOULD AWAIT THE DISPOSITION OF CORESLAB'S MOTION IN THE D. MASS. ACTION.

In here arguing the first-filed (or prior pending) action rule, BRI and Allard overlook its first requirement. It is that "the court in which the first-filed case was brought decides the question of whether or not the first-filed rule, or alternatively, an exception to the first-filed rule, applies." (citations omitted). Ontel Products, Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 n.9 (S.D.N.Y. 1995). Accord, e.g., Affinity Memory & Micro, Inc. v. K&Q Enterprises, Inc., 20 F. Supp. 2d 948, 954 and n.11 (E.D. Va. 1998); Texas Instruments, Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 999 (E.D. Texas. 1993).

6

2144648v1

Accordingly, when a motion is pending in the first-filed action essentially to determine where the matter should go forward, "[t]hat motion, not [one in the second-filed action], is the proper vehicle to resolve the issue of which court should proceed …" Texas Instruments Inc. v. Micron Semiconductor, Inc., supra.  Accord Stroock & Stroock & Lavan v. Valley Systems, Inc., 1996 WL 11249, p. 4 (S.D.N.Y. 1996) (staying second-filed action pending decision on suit injunction and transfer motions in first-filed one).  See also Transcanada Power Marketing Ltd. v. Narragansett Electric Co., 402 F. Supp. 343, 347 (D. Mass. 2005) (noting such a stay of second-filed action).

Here, such a motion is pending in the first-filed, D. Mass. action.  Supra, p. 2.  This court therefore should stay its hand pending that motion's disposition.

II.    ALTERNATIVELY, THE BALANCE OF CONVENIENCE AND/OR SPECIAL CIRCUMSTANCES EXCEPTIONS TO THE FIRST-FILED RULE HERE APPLY.

"[T]he [first-filed] rule need not be applied where there is a 'showing of balance of convenience or special circumstances giving priority to the second [case].'"  (citations omitted) American Steamship Owners Mut. Protection & Indem. Ass'n, Inc. v. La Farge North America, Inc., 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) ("American Steamship").

"Special circumstances include situations where there is only a short span of time between the filing of the two actions (citation omitted), where there is a lack of progress in either litigation (citation omitted), or where the interest of justice favors the second action." (citation omitted) American Steamship, supra.  See also Ontel Products, Inc. v. Project Strategies Corp., supra (899 F. Supp at 1153) ("first filed rule … usually disregarded where the competing suits were filed merely days apart"); Affinity Memory & Micro, Inc. v. K&Q Enterprises, Inc., supra (also disregarded "when little of anything has been done to advance [the first] action for trial").

7

2144648v1

Here, the D. Mass action preceded the instant one by just two days. Supra, p. 2. See also Feinstein v. Brown, 304 F. Supp. 2d 279, 282-283 (D.R.I. 2004) (federal filing date as that of a state court action later removed). Since then, the instant case has progressed faster with responsive pleading and impleader filings.

Regarding the "balance of convenience," "'[t]he first-filed rule does not supersede the inquiry into the balance of convenience under [28 U.S.C.] § 1404(a).'" (citation omitted) Instead, it is just "one among several factors in the overall [§ 1404(a)] calculus of efficiency and the interests of justice." (citation omitted) American Steamship, supra.

Thus, where '[t]he 'whole of the war and all the parties to it' are in the Southern District of New York" (citation omitted), this court properly may enjoin a prior action filed elsewhere and involving less than all. See Wm. Gluckin & Co., Inc. v. Int'l Playtex Corp., 407 F.2d 177, 180 (2nd Cir. 1969). Likewise, where the several § 1404(a) factors do not warrant a transfer to the forum of a prior filed action, a transfer there should be denied notwithstanding the first-filed rule. See American Steamship, supra (474 F. Supp. 2d at 480-492).

Here, Coreslab promptly moved in the D. Mass. action, in part for its § 1404(a) transfer here. Such approach both properly gave that court the first crack at the issue and avoided the intrusiveness of a suit injunction by this court against that action. In contrast, BRI and Allard would belatedly move here – in disregard of the first-filed rule which they otherwise argue, and they do so without even addressing the § 1404(a) considerations.

Regarding those considerations, Coreslab respectfully refers the court to the discussion in its initial and reply motion briefs in the D. Mass action (Frisch Affid., Exh. D, pp. 14-19 and Exh. I, pp. 5-9), so as to avoid repeating all of it here. In brief, the operative events all occurred in New York and, to a lesser extent, in Connecticut and Rhode Island, and with none in

8

Massachusetts.  No one's – not even BRI's – witnesses or documents are in Massachusetts; they instead are in the New York tristate area, Connecticut, and Rhode Island.

A key witness consideration is that necessary witnesses from the New York area are outside the "100 mile bulge" from Massachusetts extended by F.R. Civ. P. 45(b)(2) and 45(c)(3)(A)(ii) and (B)(iii).  See, e.g., Glass v. S&M Nutec, LLC, 456 F. Supp. 2d 498, 503-504 (S.D.N.Y. 2006) (§ 1404(a) factor).

Such witnesses include certain New York City officials whose audit of BRI's certified payrolls showed such payrolls not to support the amount now claimed by BRI.  They further include representatives of the New York area-based general contractor (D'Onofrio), owner (Con Ed), and BRI project vendors (e.g., Alf, Bay Crane, and others), with testimony regarding non-conformities in BRI's project work, its non-payment of its project vendors, and the respective entitlements to payment  or not down the contractual stream for things like extras claimed by BRI.

While parties here, these other project participants are not parties in the D. Mass action, and likely are not within the jurisdiction of that court – even with the "100 mile bulge" of F.R. Civ. P. 4(k)(1)(B).  Unlike here, their representatives thus would be non-party witnesses there – and beyond that court's jurisdiction.

In part, their testimony will be necessary because of the applicable state substantive law – New York's contract and, particularly, its Lien Law.  BRI's D. Mass. action overlooks the fact that even contractually, one's payment from those upstream was conditioned upon its payment of those downstream, as well as that payment for things like extra work turned on compliance with the requirements therefor of those upstream.

Aside from contract, moreover, New York's Lien Law requires the involvement – as necessary parties – of all project participants asserting or affectable by mechanics liens, from a liening project vendor up to the owner. All such necessary parties to a lien foreclosure action are joinable here, but not in Massachusetts.

Finally, Allard resides in Rhode Island, not Massachusetts. BRI's offices are in Rhode Island with its only Massachusetts connections being its incorporation and "a place of business" (just a contractor's yard?) there.

The § 1404(a) factors favoring this court as the more convenient forum thus far outweigh those slight Massachusetts connections. BRI and Allard do not argue otherwise here, and their first-filed action argument therefore has a gaping hole in it. Accordingly, their motion to dismiss should be denied.

III.   CORESLAB WILL PROMPTLY AMEND ITS RESPONSIVE PLEADING (AS OF RIGHT) TO JOIN ALLARD AS AN ADDED CROSSCLAIM DEFENDANT RATHER THAN A THIRD PARTY DEFENDANT.

As Allard suggests, he would as a matter of pleading be subject to joinder as a F.R. Civ. P. 13(h) additional cross-claim defendant, on Coreslab's crossclaims against BRI. Rather than debate his F.R. Civ. P. 14(a) impleader as a third party defendant, Coreslab prefers simply to so amend its responsive pleading. See Broadcast Music, Inc. v. Hearst/ABC Viacom Ent. Serv., 746 F. Supp. 320, 330-331 (S.D.N.Y. 1990).

Being in advance of BRI's answer to Coreslab's crossclaims, such an amendment would be as of right under F.R. Civ. P. 15(a). Also in the interest of efficiency, Coreslab proposes to defer such amendment until the court decides the personal jurisdiction issue raised by Allard, if the court, BRI and Allard are amenable thereto.

10

IV.    THIS COURT HAS PERSONAL JURISDITION OVER ALLARD.

As incorporated by F.R. Civ. P. 4(k)(1)(A), New York's C.P.L.R. § 302 extends specific personal jurisdiction over non-New York domiciliaries "[a]s to a cause of action arising from any of the acts enumerated in this section, …"  In pertinent part, such acts are those of the non-domicilary – "who either in person or through an agent" - (a)(1) "transacts any business within the state …," and/or (a)(3) "commits a tortious act without the state causing injury to person or property within the state, …" (and with a further (a)(3) requirement discussed infra).

Regarding the § 302(a)(1) "transact[ing] business" prong, it applies to actions in tort as well as to ones in contract.  See, e.g., Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguz, 171 F. 3d 779, 787 n. 3 (2d Cir. 1999), later opin. at 305 F.3d 120 (2d Cir. 2002).  It is a "'single act statute,'" under which "'proof of one transaction in New York is sufficient to … invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" (citation omitted) Deutsche Bank Securities, Inc. v. Montana Board of Investments, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 1142, 818 N.Y.S.2d 164, 166-167, cert. den., 127 S. Ct. 832 (2006).

The business transacted need not be the making of a contract, but rather can be that involved in its prior negotiation and/or its subsequent performance.  See, e.g., American Contract Designers, Inc. v. Cliffside, Inc., 458 F. Supp. 735, 739 (S.D.N.Y. 1978); Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 458, 209 N.E.2d 68, 75-76, 261 N.Y.S.2d 8, 19, cert. den., 382 U.S. 905 (1965).  Also, the business transacted can be that done through an agent, such as a corporation for which the non-domicilliary works.  See e.g. Kreutter

11

v. McFadden Oil Co., 71 N.Y.2d 460, 467, 522 N.E.2d 40, 44, 527 N.Y.S.2d 195, 199 (1988). See also Retail Software Services, Inc. v. Lashee, 854 F.2d 18, 22 (2d Cir. 1988).

Here, there can be no question that Allard transacted business in New York. He came here many times – to negotiate the subcontract for BRI, to obtain a New York regulatory approval it needed, and to attend multiple job meetings in the course of construction. Moreover, he was no mere corporate employee, but rather apparently the husband of BRI's sole owner and president, its CFO, and one who executed important legal and contractual documents for it. Supra, pp. 5.

Among such documents were the lien waivers and releases at issue. They were necessary for BRI to be paid by Coreslab (and indirectly, for Coreslab to be paid by D'Onofrio and then D'Onofrio to be paid by Con Ed,) including to avoid the risk which has since eventuated – of still outstanding liens and claims by BRI's project vendors.

They thus were "a creature of contract" – indeed, "a mechanism … to ensure compliance with the terms of [a] contract," like the arbitration involved in Sole Resort, S.A. De C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 104 (2d Cir. 2006). Accordingly, Coreslab's claim that they were falsely and fraudulently made by Allard arises from the business he transacted including in New York, in the performance of BRI's subcontract. Put another way, "the connection between [his] activities in New York and the claim [against him] …" was no " 'mere coincidence'," but rather was one of a " 'substantial relat[ionship]' " among the New York activities, the false documents, and the subcontract underlying both. See Id.

He then fails to address such matters in his motion brief, instead focusing solely on C.P.L.R. §3 02(a)(3). However, since jurisdiction over him exists under §302(a)(1), his argument need not be reached.

If it were, he appears to dispute, not that the allegedly tortious conduct occurred "outside the state," but rather just that it "caus[ed] injury … within the state …" C.P.L.R. § 302(a)(3). However, under the "situs of injury" (or "'original event which caused the injury'") test (citation omitted), such situs in a misrepresentation case typically is where the "original [detrimental] reliance" on the misrepresentation occurred. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, supra (171 F.3d at, 791-792). Also, there as more generally, only a significant part and not all of such "original event(s)" need occur in New York. See Id., discussing Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 385 N.E.2d 1055, 413 N.Y.S.2d. 127 (1978).

Here, Coreslab's detrimental reliance in part consisted of its not doing what it would have done had it known of the falsity. What it would have done was either: to withhold payment to BRI, forcing the latter to cure and thereby prevent New York mechanics lien filings by BRI's project vendors; or absent BRI's cure, to default terminate BRI and thereby disrupt its own work at the New York job site. Either way, the detrimental reliance thus included events in New York.

Further, while not addressed by him, his aforesaid activities in New York also meet the § 302(a)(3)(i) requirement of "engag[ing] in any other persistent course of conduct, or deriv[ing] substantial revenue from … services rendered, in the state, …" The latter includes because he presumably was compensated for such activities.

Finally, he does not argue that §302 jurisdiction over him nevertheless would be unconstitutional. Even so, there can be no doubt that his activities here were purposeful, and such that he reasonably could expect to be sued here in connection with a significant aspect of the building of – and payment for – a New York construction project. Also, such jurisdiction here would be reasonable, including because he has shown that coming here is not any undue burden upon him, and because the interests of Coreslab, the courts, and New York (as reflected

13

in its Lien Law) all would be furthered by a complete resolution here of all parties' claims, liens, and defenses from this New York project.

In sum, this court does have specific personal jurisdiction over Allard. It does so under C.P.L.R. § 302(a)(1), if not § 302(a)(3) as well.

### CONCLUSION

For the reasons and authorities previously advanced, Coreslab respectfully requests that BRI's and Allard's motions to dismiss be denied.

Dated: August 28, 2007

        Respectfully submitted,

        s/ *Scott M. Yaffe*

        Scott M. Yaffe (SY 4344)
        Lindabury, McCormick, Estabrook & Cooper, P.C.
        *Attorneys for Defendant/Third Party Plaintiff*
        *Coreslab Structures (Conn), Inc.*
        26 Broadway, Suite 2300
        New York, New York 10004
        (212) 742-3390