UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ALF RENTAL COMPANY, INC.,                          Docket No.: 1:07-cv-03148-LAK

       Plaintiff,

vs.

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP.,
CONSOLIDATED EDISON OF NEW YORK, INC.,
TERRA DINAMICA, LLC, CORESLAB                        AFFIDAVIT
STRUCTURES, and NICOLSON CONSTRUCTION        OF EDWARD J. FRISCH, ESQ.
CO.,

       Defendants,
-------------------------------------------------------------X
CORESLAB STRUCTURES (CONN), INC.
(MISNAMED AS CORESLAB STRUCTURES),

       Defendant/Third Party Plaintiff,

vs.

STEVE ALLARD, individually,

       Third Party Defendant.
-------------------------------------------------------------X

STATE OF NEW JERSEY   )
                  ) ss.:
COUNTY OF UNION      )

      Edward J. Frisch, of full age, having been duly sworn, upon his oath deposes and says:

      1.     I am an attorney at law of the State of New Jersey and a member of Lindabury,

McCormick, Estabrook & Cooper, P.A., attorneys for the defendant/third party plaintiff Coreslab

Structures (Conn), Inc. ("Coreslab") herein.   I also will soon be applying for admission *pro hac*

*vice* to the bar of this court.

2.      This Affidavit is submitted in opposition to the motions of defendant Builders

Resource, Inc. ("BRI") and third party defendant Steven Allard ("Allard") to dismiss Corelab's

crossclaims and third party complaint.

3.      As noted by them, BRI has sued Coreslab in connection with the same underlying

transaction, in the United States District Court for the District of Massachusetts (the "D. Mass

action").

4.      In advance of responsive pleading, Coreslab has moved there for such action's

dismissal (for lack of jurisdiction and/or improper venue) or, alternatively, for its 28 U.S.C.

§1404(a) "convenience" transfer to this court.  (If a transfer is granted, we then would seek that

action's consolidation with this one).

5.      The motion has been fully briefed.  We presently await oral argument and the

court's decision on it.

6.      Regarding such matters, annexed hereto as the indicated exhibits are true copies

of the following:

Exhibit A - the D. Mass action's civil docket sheet.

Exhibit B - BRI's Verified Complaint with exhibits, and civil cover sheets, filed on March 13,
2007.

Exhibit C – Defendant's [Coreslab's] Motion to Dismiss Pursuant to F.R.Civ.P.12(b)(1),(2) and
(3) or, Alternatively, for a 28 U.S.C. §1404(A) "Convenience" Transfer, filed June 29, 2007.

Exhibit D - Coreslab's Brief in Support of Defendant's F.R.Civ.P. 12(b)(1),(2) and (3) Motion to
Dismiss or, Alternatively, for a 28 U.S.C. §1404(a) "Convenience" Transfer.

Exhibit E – the supporting Affidavit of Leon Grant, with its exhibits A-I.

Exhibit F - the Opposition of Plaintiff, Builders Resource, Inc. to the Motion of Defendant
Coreslab Structures (Conn), Inc. to Dismiss or Alternatively for a Convenience Transfer.

2145166v1

Exhibit G - the Memorandum of Points and Authorities in Support of the Opposition of Plaintiff, Builders Resource, Inc. to the Motion of Defendant Coreslab Structures (Conn), Inc. to Dismiss or Alternatively for a Convenience Transfer.

Exhibit H - the Affidavit of Marty Cardon in Support of the Plaintiff's Opposition to the Motion of the Defendant, Coreslab Structures (Conn), Inc. to Dismiss the Complaint.

Exhibit I – the Reply Brief of the Defendant, Coreslab Structures (Conn), Inc. in Support of Its F.R.Civ.P. 12(b)(1),(2) and (3) Motion to Dismiss or, Alternatively, for a 28 U.S.C. §1404(a) "Convenience" Transfer.

Exhibit J - the reply Affidavit of Edward J. Frisch, Esq., with its Exhibit A.

7.      Regarding Mr. Grant's and my own aforesaid affidavits (Exs. E, J), we ask the court to consider them as if also filed herein, so as to avoid duplication.

8.      Since those filings, I received the two letters copied hereto at Exhibit K.  They were from the attorneys for the project's general contractor, defendant D'Onofrio General Contractor Corp.

9.      They refer ultimately to unsatisfied mechanics liens of two of BRI's project vendors, New York Crane and Alf Rental, demanding essentially that Coreslab take care of them.  Coreslab's position includes that BRI in turn is so obliged to take care of them.

10.      Finally, copied here to at Exhibit L is an April, 2007 D&B report on Builders Resource Corp. (It was what resulted from our request for one on BRI.)  Of note, it gives the Rhode Island and Massachusetts addresses variously used by BRI.

11.      Also of note, it describes "Louise Allard" as the "President" and "100%" owner. On information and belief, she is Steve Allard's wife.

WHEREFORE, Coreslab respectfully requests that BRI's and Allard's motions to dismiss be denied.

2145166v1

EDWARD J. FRISCH, Esq. (EF 8377)

Sworn to and subscribed before me on this
18th day of August, 2007.

Notary Public, State of New Jersey

LYNN NESENJUK
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES DECEMBER 1, 2010

4

2145166v1

ALF RENTAL COMPANY, INC., vs. BUILDERS RESOURCE, INC., et al
Docket No.: 1:07-cv-03148-LAK
<u>EXHIBIT LIST</u>

<u>EXHIBITS TO AFFIDAVIT OF EDWARD J. FRISCH, ESQ.</u> (separately filed)

<u>Exhibit A</u> - The D. Mass action's civil docket sheet.

<u>Exhibit B</u> - BRI's Verified Complaint with exhibits, and civil cover sheets, filed on 3/13/07.

<u>Exhibit C</u> – Defendant's [Coreslab's] Motion to Dismiss Pursuant to F.R.Civ.P.12(b)(1),(2) and (3) or, Alternatively, for a 28 U.S.C. §1404(A) "Convenience" Transfer, filed June 29, 2007.

<u>Exhibit D</u> - Coreslab's Brief in Support of Defendant's F.R.Civ.P. 12(b)(1),(2) and (3) Motion to Dismiss or, Alternatively, for a 28 U.S.C. §1404(a) "Convenience" Transfer.

<u>Exhibit E</u> – The supporting Affidavit of Leon Grant, with its exhibits A-I.

<u>Exhibit F</u> - The Opposition of Plaintiff, Builders Resource, Inc. to the Motion of Defendant Coreslab Structures (Conn), Inc. to Dismiss or Alternatively for a Convenience Transfer.

<u>Exhibit G</u> - The Memorandum of Points and Authorities in Support of the Opposition of Plaintiff, Builders Resource, Inc. to the Motion of Defendant Coreslab Structures (Conn), Inc. to Dismiss or Alternatively for a Convenience Transfer.

<u>Exhibit H</u> - The Affidavit of Marty Cardon in Support of the Plaintiff's Opposition to the Motion of the Defendant, Coreslab Structures (Conn), Inc. to Dismiss the Complaint.

<u>Exhibit I</u> – The Reply Brief of the Defendant, Coreslab Structures (Conn), Inc. in Support of Its F.R.Civ.P. 12(b)(1),(2) and (3) Motion to Dismiss or, Alternatively, for a 28 U.S.C. §1404(a) "Convenience" Transfer.

<u>Exhibit J</u> - The reply Affidavit of Edward J. Frisch, Esq., with its Exhibit A.

<u>Exhibit K</u> – Two letters from the attorneys for the project's general contractor, defendant D'Onofrio General Contractor Corp.

<u>Exhibit L</u> – April, 2007 D&B report on Builders Resource Corp.

ALF RENTAL COMPANY, INC., vs. BUILDERS RESOURCE, INC., et al
Docket No.:  1:07-cv-03148-LAK
<u>EXHIBIT LIST</u>

<u>EXHIBITS TO AFFIDAVIT OF LEON GRANT (attached behind affidavit)</u>

<u>Exhibit A</u> – The April 13, 2006 correspondence to Mr. Steven M. Allard from The City of  New York, Department of Small Business Services.

<u>Exhibit B</u> – BRI photographs of Steven M. Allard at the job site.

<u>Exhibit C</u> – Mr. Wood's e-mail to Leon Grant confirming the July 7, 2006 meeting with Mr. Allard and Mr. Abbot Wood.

<u>Exhibit D</u> -  Copies of lien waivers and releases executed by Mr. Allard.

2146195v1

EXHIBIT A

Builders Resource, Inc. v. Coreslab Structures Conn, Inc.

Assigned to: Judge F. Dennis Saylor, IV

Cause: 28:1332 Diversity-Breach of Contract

Date Filed: 03/13/2007

Jury Demand: None

Nature of Suit: 190 Contract: Other

Jurisdiction: Diversity

**Plaintiff**

**Builders Resource, Inc.**                     represented by     **Robert N. Meltzer**
Attorney at Law
P.O. Box 1459
Framingham, MA 01701
508-872-7116
Fax: 508-647-0332
Email: robmeltzer@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Coreslab Structures Conn, Inc.**              represented by     **Edward J. Frisch**
Lindabury, McCormick, Estabrook & Cooper
53 Cardinal Drive
P.O. Box 2369
Westfield, NJ 07091-2369
908-233-6800
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Craig F. Anderson**
Quinlan & Sadowski, PC
11 Vanderbilt Avenue
Suite 250
Norwood, MA 02062
781-440-9909
Fax: 781-440-9979
Email: canderson@qsatlaw.com
*ATTORNEY TO BE NOTICED*

**David T. Keenan**
Quinlan & Sadowski, P.C.
11 Vanderbilt Aveneu
Suite 250
Norwood, MA 02062-5056
781-440-9909
Fax: 781-440-9979
Email: dkeenan@qsatlaw.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
| --- | --- | --- |

| 03/13/2007 | | COMPLAINT against Coreslab Structures Conn, Inc. , filed by Builders Resource, Inc.. (Attachments: # 1 cover sheets)(Jones, Sherry) (Entered: 03/13/2007) |
|---|---|---|
| 03/13/2007 | | ELECTRONIC NOTICE of Case Assignment. Judge F. Dennis Saylor, IV assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Hillman (Jones, Sherry) (Entered: 03/13/2007) |
| 03/13/2007 | | Filing fee: $ 350.00, receipt number 405038 for 1 Complaint (Jones, Sherry) (Entered: 03/13/2007) |
| 03/13/2007 | | Summons Issued as to Coreslab Structures Conn, Inc.. (Jones, Sherry) (Entered: 03/13/2007) |
| 04/19/2007 | 2 | SUMMONS Returned Executed Coreslab Structures Conn, Inc. served on 4/11/2007, answer due 5/1/2007. (Meltzer, Robert) (Entered: 04/19/2007) |
| 04/30/2007 | 3 | MOTION for Extension of Time to May 14, 2007 to File Answer *or Otherwise Respond to Complaint* by Coreslab Structures Conn, Inc..(Anderson, Craig) (Entered: 04/30/2007) |
| 04/30/2007 | | Judge F. Dennis Saylor IV: Electronic ORDER entered granting 3 Motion for Extension of Time to Answer. Coreslab Structures Conn, Inc. answer due 5/14/2007. (Castles, Martin) (Entered: 04/30/2007) |
| 05/10/2007 | 4 | Assented to MOTION for Extension of Time to June 14, 2007 to File Answer *Or Otherwise Respond to Complaint* by Coreslab Structures Conn, Inc..(Anderson, Craig) (Entered: 05/10/2007) |
| 05/10/2007 | | Judge F. Dennis Saylor IV: Electronic ORDER entered granting 4 Motion for Extension of Time to Answer. Coreslab Structures Conn, Inc. answer due 6/14/2007. (Castles, Martin) (Entered: 05/10/2007) |
| 06/14/2007 | 5 | Assented to MOTION for Extension of Time to June 29, 2007 to File Answer *Or Otherwise Respond to Complaint* by Coreslab Structures Conn, Inc..(Anderson, Craig) (Entered: 06/14/2007) |
| 06/15/2007 | | Judge F. Dennis Saylor IV: Electronic ORDER entered granting 5 Motion for Extension of Time to answer. (Castles, Martin) (Entered: 06/15/2007) |
| 06/29/2007 | 6 | MOTION to Dismiss for Lack of Jurisdiction *or In the Alternative to Transfer to the S.D.N.Y.* by Coreslab Structures Conn, Inc. (Keenan, David) Modified on 7/2/2007 (Hassett, Kathy). (Entered: 06/29/2007) |
| 06/29/2007 | 7 | CORPORATE DISCLOSURE STATEMENT by Coreslab Structures Conn, Inc.. (Keenan, David) (Entered: 06/29/2007) |
| 07/02/2007 | | Notice of correction to docket made by Court staff. Correction: document #6 corrected because: Counsel filed memorandum as attachment to motion, will refile correctly. (Hassett, Kathy) (Entered: 07/02/2007) |
| 07/02/2007 | 8 | MEMORANDUM in Support re 6 MOTION to Dismiss for Lack of Jurisdiction *or In the Alternative to Transfer to the S.D.N.Y.* filed by Coreslab Structures Conn, Inc.. (Attachments: # 1 Affidavit Affidavit of Leon H. Grant# 2 Exhibit Exhibit A# 3 Exhibit Exhibit B# 4 Exhibit Exhibit C# 5 Exhibit Exhibit D# 6 Exhibit Exhibit E# 7 Exhibit Exhibit F# 8 Exhibit Exhibit G# 9 Exhibit Exhibit H# 10 Exhibit Exhibit I)(Keenan, David) (Entered: 07/02/2007) |
| 07/05/2007 | 9 | Assented to MOTION for Extension of Time to July 20, 2007 to To Respond to Defendant's Motion to Dismiss by Builders Resource, Inc..(Meltzer, Robert) (Entered: |

| | | 07/05/2007) |
|---|---|---|
| 07/09/2007 | | Judge F. Dennis Saylor IV: Electronic ORDER entered granting 9 Motion for Extension of Time to file response to motion. (Castles, Martin) (Entered: 07/09/2007) |
| 07/09/2007 | | Reset Deadlines as to 6 MOTION to Dismiss for Lack of Jurisdiction *or In the Alternative to Transfer to the S.D.N.Y.*. Response due by 7/20/2007. (Castles, Martin) (Entered: 07/09/2007) |
| 07/17/2007 | 10 | Assented to MOTION for Leave to Appear Pro Hac Vice for admission of Edward J. Frisch Filing fee $ 50, receipt number 1595554. by Coreslab Structures Conn, Inc.. (Attachments: # 1 Affidavit Affidavit of Edward J. Frisch)(Keenan, David) (Entered: 07/17/2007) |
| 07/17/2007 | | Judge F. Dennis Saylor IV: Electronic ORDER entered granting 10 Motion for Leave to Appear Pro Hac Vice. Added Edward J. Frisch for Coreslab Structures Conn, Inc. (Castles, Martin) (Entered: 07/17/2007) |
| 07/19/2007 | 11 | Opposition re 6 MOTION to Dismiss for Lack of Jurisdiction *or In the Alternative to Transfer to the S.D.N.Y.* filed by Builders Resource, Inc.. (Meltzer, Robert) (Entered: 07/19/2007) |
| 07/19/2007 | 12 | MEMORANDUM in Opposition re 6 MOTION to Dismiss for Lack of Jurisdiction *or In the Alternative to Transfer to the S.D.N.Y.* filed by Builders Resource, Inc.. (Attachments: # 1 Affidavit of Marty Cardon)(Meltzer, Robert) (Entered: 07/19/2007) |
| 08/07/2007 | 13 | First MOTION for Leave to File *Reply Brief* by Coreslab Structures Conn, Inc.. (Attachments: # 1 Supplement Proposed Reply Brief# 2 Affidavit Affidavit of Atty. Frisch)(Keenan, David) (Entered: 08/07/2007) |
| 08/08/2007 | | Judge F. Dennis Saylor IV: Electronic ORDER entered granting 13 Motion for Leave to File; Counsel using the Electronic Case Filing System should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. Counsel must include - Leave to file granted on (date of order)- in the caption of the document. (Castles, Martin) (Entered: 08/08/2007) |
| 08/08/2007 | 14 | First REPLY to Response to Motion re 6 MOTION to Dismiss for Lack of Jurisdiction *or In the Alternative to Transfer to the S.D.N.Y. Leave to File Ganted on 8/8/07* filed by Coreslab Structures Conn, Inc.. (Attachments: # 1 Affidavit of Edward J. Frisch, Esq.) (Keenan, David) (Entered: 08/08/2007) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/22/2007 14:34:51 | | |
| **PACER Login:** | lm0238 | **Client Code:** | 26584-0011 |
| **Description:** | Docket Report | **Search Criteria:** | 4:07-cv-40057-FDS |
| **Billable Pages:** | 2 | **Cost:** | 0.16 |

EXHIBIT B

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robimeltzer@aol.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

RECEIPT # _406638_
AMOUNT $ _350.00_
SUMMONS ISSUED _✓_
LOCAL RULE 4.1 _✓_
WAIVER FORM _✓_
MCF ISSUED _✓_
BY DPTY. CLK. _____
DATE _3-13-07_

---

BUILDERS RESOURCE, INC. )
)
         Plaintiff )
)
v. )
)
CORESLAB STRUCTURES )
CONN, INC. )
)
         Defendant )
)

Civil Action No.

# 07-40057FDS

---

## VERIFIED COMPLAINT BASED UPON DIVERSITY OF CITIZENSHIP

This is an action brought by Builders Resource, Inc., a citizen of Massachusetts, against Coreslab Structures (Conn), Inc., for funds due and owing under a construction contract.

1. Plaintiff, Builder Resource, Inc. ("the Plaintiff") is a business entity with a place of business at 180 Main Street in Blackstone, Worcester County, in the Commonwealth of Massachusetts.

2. Defendant, Coreslab Structures (Conn), Inc. ("the Defendant") is a business entity with a place of business at 1023 Waterbury Road, Thomaston, in the state of Connecticut

3. There is complete diversity between the parties, and damages exceed the statutory minimum.

4. This suit is brought in the venue of the residence of the Plaintiff.

5. Personal jurisdiction is had over the Defendant, as the Defendant conducts in construction business nationally, and presently is engaged in construction of the same type and nature within the Commonwealth of Massachusetts, including a project at Children's Hospital in Boston, in the Commonwealth of Massachusetts.



The Mountain States Law Group

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robnmeltzer@aol.com

6.  This forum is as convenient as any other, as no particular forum contains all parties, documents or witnesses in this case.

7.  The Plaintiff and the Defendant entered into a contract on May 10, 2006, for certain construction work at the Mott Haven Substation in the Bronx, in the state of New York. ("the Project").

8.  The Plaintiff performed its work for the Defendant in the form of contract work, as well as extras to the contract. The total contract price, including all additions to the contract, total $4,943,099.

9.  Notwithstanding the Plaintiff's performance, the Defendant has not paid the Plaintiff for the Plaintiff's work.

10. The Plaintiff is owed $2,274,264.75.

## COUNT I

### BREACH OF CONTRACT

11. The Plaintiff restates paragraphs 1-10 and incorporates them herein by reference.

12. The Defendant's failure to pay the Plaintiff constitutes a breach of the contract between the Plaintiff and the Defendant.

13. As a result of the Defendant's breach, the Plaintiff has sustained the loss of its expectancy under the contract, and has sustained incidental and consequential damages foreseeable at the time of formation of the contract.

## COUNT II

### ACCOUNT STATED

14. The Plaintiff restates paragraphs 1-13 and incorporates them herein by reference.


The Mountain States Law Group

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzer@aol.com

15. The Defendant received the invoice of account stated herein without objection and otherwise promised to pay all obligations.

16. The Defendant has not paid The Plaintiff on its account.

17. The Defendant owes the Plaintiff on account stated.

WHEREFORE, The Plaintiff respectfully prays that this Honorable Court:

1.  Enter judgment for the Plaintiff and against the Defendant on all counts;

2.  That this court award the Plaintiff its expectancy damages pursuant to Count I together with interest;

3.  That this court award the Plaintiff damages in its itemized account stated invoice in Count II together with any interest; and

4.  Any further relief deemed just and appropriate by this Honorable Court.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

Respectfully Submitted,
**The Plaintiff**

By its attorney,

The Mountain States Law Group
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: March 6, 2007


The Mountain States Law Group

3

Robert N. Meltzer
*Attorney At Law*

P.O. Box 1459
Framingham, MA 01701
508.872.7116
robmeltzcr@aol.com

## VERIFICATION

I do hereby certify that I have reviewed the attached document, and that the facts contained herein stating the funds owed and the facts alleged are true to the best of my knowledge and belief, and represent a true and accurate accounting of the funds due and owing to Builder Resource, Inc.

Signed under the pains and penalties of perjury this 6th day of March, 2007

*Steven M Allard*


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING
mail@mountainstateslawgroup.com

4

COPY


**CORESLAB STRUCTURES** (CONN) INC.

P.O. Box 279, Thomaston, CT 06787-0279
1023 Waterbury Road, Thomaston, CT 06787-2028
Ph. (860) 283-8281 Fax (860) 283-0165

## Purchase Order

Issued To: Builders Resource Inc.
101 Nasonville Rd
Harrisville, RI 02830

Ship To: Mott Haven Substation
415 Bruckner Blvd.
Bronx, NY 10454

P.O. No.: **0717**

Order Date: 10-May-06
Terms:

Your Quotation: Confirmed
To:
F.O.B.

### PLEASE ENTER OUR ORDER FOR THESE ITEMS SUBJECT TO THESE CONDITIONS

1. Show our order number on all related invoices, correspondence, bill of lading and packages.
2. Acknowledge our order promptly, including a statement of your ability to ship all items to meet specified delivery dates.
3. Send invoices in duplicate to above address unless otherwise instructed in writing.

4. No packing charges allowed without written approval.
5. Acceptance of all items subject to our inspection notwithstanding prior payment to obtain cast discount.
6. Items rejected due to inferior quality will be returned to you; all transportation expense both ways for your account and are not to be replaced except upon written instructions.

| Item No. | Quantity Ordered | Quantity Received | Unites | Items Description and/or Stock Number | Unit | Price Per | Price Extended |
|---|---|---|---|---|---|---|---|
| 1 | 1 | | | 345kv=659 pcs<br>Admin=262 pcs<br>13kv=183 pcs<br>Total=1104 pcs of<br>Precast Erected and attached to the Mott-Haven Substation bldg per erection dwgs and PCI standards.<br>Completion July 31, 2006<br>As per attach contract & Quotation | ea | $3,478,000.00 | $3,478,000.00 |

| Items No. | Accounting Code | Detail No. | Requested By | Approved By | Shp/Hdl Taxes |
|---|---|---|---|---|---|
| | | | Donald W. Brigtano JR. | | |

**Total Price** $3,478,000.00

Coreslab Structures (Conn)

By

Authorized Agent
Builders Resource Inc.

By

CORESLAB CT                                                     ☑002



**CORESLAB.**
**STRUCTURES**
**(CONN) INC.**

P.O. Box 279, Thomaston, CT 06787-0279
1923 Waterbury Road, Thomaston, CT 06787-2028
(860) 283-8281

## CHANGE ORDER:

Attn: Steve Allard
Builders Resource Inc
101 Nasonville Rd
Harrisville, RI 02830

Re: Mott Haven Substation
415 Bruckner Blvd
Bronx, NY 10454

| INVOICE DATE | INVOICE NO. | CUST. NO. | CUSTOMER NAME | JOB NO. | ENTITY NO. | TERMS |
|---|---|---|---|---|---|---|
| 10/11/2006 | | | BRI | #0111 | #0111.004BRI | |
| CUST. ORDER NO. | | F.O.B. Jobsite N/A | | VIA | | 3 |

CO-001BRI This C.O. is for X-01 through X-38 and X40, with X-08, 14, 21, 23, 25, 33 & 36, withdrawn

Note: C.O. X-01 trough X-06 has been previously paid in July
C.O. X-07 trough X-16 has been previously paid in August
C.O. X-17 trough X-20 has been previously paid in September

X1 - 38 & 40(exclude 8, 14, 21, 23, 25; 33, 36)  $1,465,099.46
Subtotal  $1,465,099.46
OH & P  Included
Total  $1,465,099.46 ~$1,465,099.00

Please have an Authorized Company representative sign and return for billing
Please expedite Change-Order work can not be performed until written consent is received.

**REVISED CONTRACT AGREEMENT:**

The Subcontract Sum prior to this Change Order  $ 3,478,000.00
The Subcontract Sum will be Increased by this change order  **$1,465,099.00**
The new Subcontract Sum including this Change Order will be  $ 4,943,099.00

The work and terms of payment covered by this order shall be performed under the same Terms and Conditions as that included in the Original Contract

IN WITNESS WHEREOF the said parties have caused this agreement to be executed as of the day and year signed below

D'ONOFRIO GENERAL CONTRACTORS
CONTRACTOR

CORESLAB STRUCTURES (CONN) INC
SUBCONTRACTOR

BY _Steve M Allard_

BY _____
Leon Grant  V.P./General Manager

DATE _10/12/06_

DATE:  10/11/06

03/12/2007  04:13    508-876-2001    BRI PROJECT MANAGEMT    PAGE  02/03

5:03 PM

03/12/07

# Builders Resource, Inc.
## Open Invoices
### As of March 12, 2007

| Type | Date | Num | Due Date | Aging | Open Balance |
|------|------|-----|----------|-------|-------------|
| **Coreslab** | | | | | |
| **Mott Haven Contract** | | | | | |
| **Mott Haven Retainage** | | | | | |
| Invoice | 4/25/2006 | retainage | 4/25/2006 | 321 | 35,617.04 |
| Invoice | 5/15/2006 | retainage | 5/15/2006 | 301 | 29,141.22 |
| Invoice | 6/15/2006 | retainage | 6/15/2006 | 270 | 95,181.87 |
| Invoice | 7/16/2006 | retainage | 7/16/2006 | 239 | 64,843.09 |
| Invoice | 8/15/2006 | retainage | 8/15/2006 | 209 | 105,731.44 |
| Invoice | 9/15/2006 | retainage | 9/15/2006 | 178 | 14,114.10 |
| Invoice | 10/10/2006 | retainage | 10/10/2006 | 153 | 3,191.25 |
| Total Mott Haven Retainage | | | | | 347,800.01 |
| **Mott Haven Extras** | | | | | |
| Invoice | 3/9/2007 | MH-X46 | 3/8/2007 | 4 | 37,425.04 |
| Invoice | 3/9/2007 | MH-X47 | 3/9/2007 | 3 | 13,390.18 |
| Total Mott Haven Extras | | | | | 50,815.22 |
| **Mott Haven Contract - Other** | | | | | |
| Invoice | 8/15/2006 | MH-08-CO-... | 8/15/2006 | 209 | 97,498.33 |
| Invoice | 8/15/2006 | MH-11-CO-7 | 8/15/2006 | 209 | 97,500.00 |
| Invoice | 8/15/2006 | MH-13-CO-... | 8/15/2006 | 209 | 8,659.70 |
| Invoice | 8/15/2006 | MH-14-CO-... | 8/15/2006 | 209 | 6,543.75 |
| Invoice | 8/15/2006 | MH-15-CO-... | 8/15/2006 | 209 | 8,563.65 |
| Invoice | 8/15/2006 | MH-16-CO-... | 8/15/2006 | 209 | 5,810.46 |
| Invoice | 8/15/2006 | MH-17-CO-... | 8/15/2006 | 209 | 40,060.97 |
| Invoice | 8/15/2006 | MH-18-CO-... | 8/15/2006 | 209 | 11,434.65 |
| Invoice | 8/15/2006 | MH-20-CO-... | 8/15/2006 | 209 | 19,439.65 |
| Invoice | 8/15/2006 | MH-23-CO-... | 8/15/2006 | 209 | 4,313.68 |
| Invoice | 8/15/2006 | MH-24-CO-... | 8/15/2006 | 209 | 5,544.72 |
| Invoice | 8/15/2006 | MH-26-CO-... | 8/15/2006 | 209 | 31,962.73 |
| Invoice | 8/15/2006 | MH-10-CO-... | 8/15/2006 | 209 | 110,030.90 |
| Invoice | 8/15/2006 | MH-12-CO-... | 8/15/2006 | 209 | 175,969.50 |
| Invoice | 8/15/2006 | MH-22-CO-... | 8/15/2006 | 209 | 205,869.85 |
| Invoice | 8/15/2006 | MH-25-CO-... | 8/15/2006 | 209 | 437,500.00 |
| Invoice | 8/15/2006 | MH-27-CO-... | 8/15/2006 | 209 | 225,000.00 |
| Invoice | 9/15/2006 | MH-21 | 9/15/2006 | 178 | 127,026.88 |
| Invoice | 10/10/2006 | MH-28 | 10/10/2006 | 153 | 28,721.25 |
| Invoice | 10/15/2006 | MH-29-CO-... | 10/15/2006 | 148 | 5,071.00 |
| Invoice | 10/15/2006 | MH-30-CO-... | 10/15/2006 | 148 | 51,906.36 |
| Invoice | 3/12/2007 | FC 16 | 3/12/2007 | | 171,223.49 |
| Total Mott Haven Contract - Other | | | | | 1,875,649.52 |
| Total Mott Haven Contract | | | | | 2,274,264.75 |
| Total Coreslab | | | | | 2,274,264.75 |
| **TOTAL** | | | | | 2,274,264.75 |

Page 1

03/12/2007  04:13   508-876-2001         BRI PROJECT MANAGEMT                    PAGE  03/03

Builders Resource, Inc.

770 Douglas Turnpike
Harrisville, RI 02830-1609

# Finance Charge

| Date | Invoice # |
|------|-----------|
| 3/12/2007 | FC 16 |

| Bill To |
|---------|
| Coreslab, Inc.<br>1023 Waterbury Road<br>Thomaston, CT 06787 |

| | Terms |
|---|-------|
| | |

| Description | Amount |
|-------------|--------|
| Finance Charges on Overdue Balance | 171,223.49 |
| Invoice #MH-08-CO-04 for 97,496.33 on 08/15/2006 | |
| Invoice #MH-11-CO-7 for 97,500.00 on 08/15/2006 | |
| Invoice #MH-13-CO-09 for 8,659.70 on 08/15/2006 | |
| Invoice #MH-14-CO-10 for 6,543.75 on 08/15/2006 | |
| Invoice #MH-15-CO-11 for 8,563.65 on 08/15/2006 | |
| Invoice #MH-16-CO-12 for 5,810.46 on 08/15/2006 | |
| Invoice #MH-17-CO-13 for 40,060.97 on 08/15/2006 | |
| Invoice #MH-18-CO-14 for 11,434.65 on 08/15/2006 | |
| Invoice #MH-20-CO-16 for 19,439.65 on 08/15/2006 | |
| Invoice #MH-23-CO-18 for 4,313.68 on 08/15/2006 | |
| Invoice #MH-24-CO-19 for 5,544.72 on 08/15/2006 | |
| Invoice #MH-26-CO-21 for 31,962.73 on 08/15/2006 | |
| Invoice #MH-10-CO-06 for 110,030.90 on 08/15/2006 | |
| Invoice #MH-12-CO-08 for 175,969.50 on 08/15/2006 | |
| Invoice #MH-22-CO-17 for 205,869.85 on 08/15/2006 | |
| Invoice #MH-25-CO-20 for 437,500.00 on 08/15/2006 | |
| Invoice #MH-27-CO-22 for 225,000.00 on 08/15/2006 | |
| Invoice #MH-21 for 127,026.88 on 09/15/2006 | |
| Invoice #MH-28 for 28,721.25 on 10/10/2006 | |
| Invoice #MH-29-CO-23 for 5,071.00 on 10/15/2006 | |
| Invoice #MH-30-CO-24 for 51,906.36 on 10/15/2006 | |

| | | |
|---|---|---|
| | **Total** | $171,223.49 |
| | **Payments/Credits** | $0.00 |
| | **Balance Due** | $171,223.49 |

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only)_____

_____

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See local
rule 40.1(a)(1)).

    ☐    I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

    ☐    II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,    *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.            for patent, trademark or copyright cases

    ☑    III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.

    ☐    IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.

    ☐    V.    150, 152, 153.

3.  Title and number, if any, of related cases.  (See local rule 40.1(g)).  If more than one prior related case has been filed in this
district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

                                                    YES  ☐        NO  ☑

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC
    §2403)
                                                    YES  ☐        NO  ☑

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

                                                    YES  ☐        NO  ☑

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

                                                    YES  ☐        NO  ☑

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

                                                    YES  ☑        NO  ☐

    A.    If yes, in which division do all of the non-governmental parties reside?

          Eastern Division  ☐          Central Division  ☐          Western Division  ☐

    B.    If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies,
          residing in Massachusetts reside?

          Eastern Division  ☐          Central Division  ☐          Western Division  ☐

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes,
    submit a separate sheet identifying the motions)

                                                    YES  ☐        NO  ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME   _Ruben N McHzer  Mountain States Law Grp_
ADDRESS           _PO Box 1455, Fram MA 01701_
TELEPHONE NO.     _508 872 7116_

(CategoryForm.wpd - 5/2/05)

# 07-40057

**JS 44** (Rev. 11/04)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

### I. (a) PLAINTIFFS

*Builders Resource, Inc*

**(b)** County of Residence of First Listed Plaintiff *Worcester*
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*Rob Meltzer, POBox 1459
Fram MA 01701  508 872 7116*

### DEFENDANTS

*CORESLAB STRUCTURES, INC*

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☑ 4  Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | **PERSONAL INJURY** | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 362 Personal Injury - Med. Malpractice | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 365 Personal Injury - Product Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☑ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause: *failure to pay Subcontractor*

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE *3/13/09*

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

C. A. NO. 07-40057 FDS

| | |
|---|---|
| BUILDERS RESOURCE, INC., | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| CORESLAB STRUCTURES (CONN), | ) |
| INC., | ) |
| Defendant | ) |

---

**DEFENDANTS MOTION TO DISMISS PURSUANTO TO F.R. CIV. P.**
**12(b) (1),(2) AND (3)**
**OR, ALTERNATIVELY,**
**FOR A 28 U.S.C. §1404(A) "CONVENIENCE" TRANSFER**

Now comes the Defendant, Coreslab Structures (Conn.), Inc. (hereinafter "Coreslab") and moves for the dismissal of this action or, alternatively, for this action's transfer to the United States District Court for the Southern District of New York, on the grounds of lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and/or a "convenience" transfer.

Please take further notice that in support of this motion, the Defendant will rely upon the accompanying Affidavit of Leon Grant, with exhibits, and the Brief in Support of Defendant's F.R. Civ. P. 12(b)(1),(2) and (3) Motion to Dismiss or, Alternatively, for a 28 U.S.C. §1404(a) "Convenience" Transfer, as well as upon such oral argument as may be had.

<u>REQUEST FOR ORAL ARGUMENT</u>

Please take further notice that the Defendant requests oral argument of this motion, if any opposition to the same is filed.

- 1 -

LOCAL RULE 7.1(A)(2) CERTIFICATION

The undersigned hereby certify that they have conferred or attempted to confer with the above-named attorney for the Plaintiff in a good faith attempt to resolve or narrow the issues raised by this motion, but to no avail.

Respectfully submitted,

Defendant Coreslab Structures (Conn), Inc.
by its Attorneys (as local counsel)

        /s/ David T. Keenan
Edward J. Quinlan, Esq., BBO #409060
David T. Keenan, Esq., BBO # 567325
Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue, Suite 250
Norwood, MA  02062-5056
Phone: (781) 440-9909
Fax:    (781) 440-9979

Dated: June 29, 2007

## CERTIFICATE OF SERVICE

I, David T. Keenan, Esq., counsel for the Defendant, Coreslab Structures (CONN), it a, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this the 29th day of June, 2007.

        /s/ David T. Keenan
Edward J. Quinlan, Esq.
David T. Keenan, Esq..
Quinlan & Sadowski, P.C.
11 Vanderbilt Ave., Suite 250
Norwood, MA 02062
*Electronically*

- 2 -

EXHIBIT D

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

BUILDERS RESOURCE, INC.,                  :
                                          :
                      Plaintiff,          :        Civil Action No. 07-40057 FDS
                                          :
v.                                        :
                                          :
CORESLAB STRUCTURES                       :
 (CONN), INC.,                            :
                                          :
                      Defendant.          :
                                          :

BRIEF IN SUPPORT OF DEFENDANT'S F.R. CIV. P. 12(b)(1),(2) AND (3) MOTION TO
DISMISS OR, ALTERNATIVELY, FOR A 28 U.S.C. §1404(a) "CONVENIENCE"
TRANSFER

Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue, Suite 105
Norwood, MA 02062-5056
Attorneys for (as local counsel to)
Defendant Coreslab Structures (CONN), Inc.

- and -

Lindabury, McCormick, Estabrook & Cooper, P.A.
53 Cardinal Drive
P.O. Box 2369
Westfield, NJ 0709-2369
Attorneys for (as general counsel to)
Defendant Coreslab Structures (CONN), Inc.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

STATEMENT OF FACTS ...................................................................................................1

I.     The verified complaint should be dismissed because
       It fails to sufficiently plead subject matter jurisdiction. ........................................6

II.    The verified complaint should be dismissed because
       The court lacks personal jurisdiction over the Defendant. ......................................7

III.   This case also should be dismissed (or transferred) for
       Improper  venue. ....................................................................................................13

IV.    Alternatively, the Court should direct a §1404(a) "convenience" transfer of this
       case to the Southern District of New York. ...........................................................14

CONCLUSION....................................................................................................................20

i

## Cases

Arbaugh v. Y&H Corp., 546 U.S. 500, 126 S. Ct. 1235, 1240, 1244, 163 L.Ed. 2d 1097 (2006) . 6

Black & Veatch Construction, Inc. v. ABB Power Generation, Inc., 123 F. Supp. 2d, 569, 581 (D. Kan. 2000) ............................................................................................................ 15

Continental Grain Co. v. Barge FBL – 585, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed. 2d 1540, 1545 (1960)............................................................................................................ 16

Cunningham v. Ardrox, Inc. 40 Mass. App. Ct. 279, 283, 663 N.E.2d 577, 580 (Essx. 1996).... 10

Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 452-453 (W.D.N.C. 1989)...................................................................................................... 13

Dicken v. United States, 862 F. Supp. 91, 92 (D.Md. 1994) ....................................................... 19

Geo. W. Maltby & Sons, Inc. v. Chs. P. Boland Co., 152 A.D. 596, 137 N.Y.S. 470 (3rd Dept. 1912).................................................................................................................... 16

Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6, 389 N.E.2d 76 (1979). ................ 8, 9

Hall-Kimbrall Environmental Services, Inc. v. Archdiocese of Detroit, 878 F.Supp. 1414-1416 (D. Kan. 1995) ............................................................................................................ 15

Harlow v. Children's Hospital, 432 F.3d 50, 57 and fn. 3 (1st Cir. 2005)........................... 7, 10, 11

Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L.Ed. 2d 404, 411 and fns. 8, 9 (1984) .......................................................................................... 7

In Re Lupron Marketing & Sales Practices Litigation, supra (245 F.Supp. 2d at 300, fn. 43)....... 8

In re Lypon Marketing & Sales Practices Litigation, 245 F. Supp. 2d 280, 288 (D. Mass. 2003). 7

Intech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. 122, 125, 826 N.E.2d 194, 197 (Mass., 2005) ........................................................................................................ 8

Lamarche v. Lussier, 65 Mass. App. Ct. 887, 892, 844 N.E.2d 1115, 1120 (Mddlsx. 2006) ........ 7

LTX Corp. v. Daewoo Corp. 979 F. Supp. 51, 56-57 (D. Mass 1997)........................................... 8

Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997) ............................. 7

McDevitt & Street Co. v. Fid & Dep. Co. of Md., 737 F. Supp. 351, 355-356, 358 (W.D.N.C. 1990) ........................................................................................................................... 15

Mellen v. Athens Hotel Co., 149 A.D. 534, 133 N.Y.S. 1079 (1st Dept. 1912) ........................... 16

Midwest Mechanical Contractors, Inc. v. Tampa Constructors, Inc., 659 F. Supp. 526, 533 (W.D. Mo. 1987)................................................................................................................... 15

Milligan Elec. Co., Inc. v. Hudson Construction Co., Inc., 886 F. Supp. 845, 850-851 (N.D. Fla. 1995) ........................................................................................................................... 15

Noonan v. Winston Co., 135 F.3d 85, 93-94 (1st Cir. 1998)........................................................ 11

Perkins v. Benquet Consol. Mining Co., 342 U.S. 737, 72 S.Ct. 413, 96 L.Ed. 485 (1952)........ 10

Reading Metal Craft Co., Inc. v. Hopf Drive Assocs., 694 F. Supp. 98, 105-107 (E.D.Pa. 1988) ................................................................................................................................... 15

Roberts v. Legendary Marine Sales, 447 Mass, 860, 857 N.E. 2d 1089 (Mass. 2006) ........ 8, 9,10

Roy v. Roy, 47 Mass. App. Ct. 921, 715 N.E. 2d 70, 71-72 (1999)............................................... 9

Sparling v. Hoffman Constr. Co., Inc., 864 F.2d 635, 639 (9th Cir. 1988)................................... 15

Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 75 U.S.L.W. 4126, 127 S.Ct. 1184, ___L.Ed.2d ___ (2007). ............................................................................................... 6

Stanton v. AM General Corp., 50 Mass. App. Ct. 116, 120, 735 N.E.2d 407, 410-411 (Mddlsx. 2000) ..................................................................................................................... 11, 12

State v. Tabasso Homes, Inc., 42 Del. 110, 28 A.2d 248, 253 (1942).......................................... 17

Tatro v. Manor Care, Inc., 416 Mass. 763, 767, 625 N.E.2d 549, 551 (Mass.,1994)................... 9

Telco Communications, Inc. v. N.J. Firemen's Mut. Ben. Ass'n., 41 Mass. App. Ct. 225, 231, 669
    N.E. 2d 781, 785 (1996)................................................................................................................ 9

Timothy Coffey Nursery/Landscape Inc. v. Gatz, 304 A.D. 2d 652, 757 N.Y.S. 2d 596, 597-598
    (2nd Dept. 2003) ...................................................................................................................... 16

Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1174 (9th Cir. 2006)............................. 10

United States v. Swiss American Bank, Ltd., 274 F.3d 610, 617, 618-619 (1st Cir. 2001)...... 7, 10

Valentin v. Hospital Buena Vista, 254 F.3d 358, 363 (1st Cir. 2001)........................................... 6

Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945, 949-950 (1964) ............... 14

York Hunter Construction, Inc. v. Avalon Properties, Inc., 104 F.Supp. 2d 211, 217 (S.D.N.Y.
    2000) ................................................................................................................... 16, 18, 19

## Statutes

28 U.S.C. §1332(a)(1)................................................................................................. 5, 6, 14
28 U.S.C. §1332(c)(1)........................................................................................................ 5
28 U.S.C. §1391(a). ................................................................................................... 13, 14
28 U.S.C. §1391(c) ..................................................................................................... 13,14
28 U.S.C. §1404(a) ................................................................................... 14, 16, 18, 19
28 U.S.C. §1406(a) ............................................................................................... 14, 19
M.G.L. c. 223A, §2.................................................................................................. 7, 8, 11
M.G.L. c. 223A, §3................................................................................................... 7, 9

## Other Authorities

McKinney's N.Y Lien Law, §§43, 44. C.f. Id., §44-b.................................................... 16
McKinney's N.Y. Lien Law, §§ 70(1)-(3), (7), 71, 72. ...................................................... 17

## Rules

F.R.Civ.P. 12(h)(3) ................................................................................................................ 6
F.R.Civ.P. 4(k)(1)(a) ......................................................................................................... 7,10
F.R.Civ.P. 4(k)(1)(B)........................................................................................................... 12
F.R.Civ.P. 45(b)(2) ............................................................................................................. 12
F.R.Civ.P. 45(c)(3)(A)(ii) ................................................................................................... 12

## PRELIMINARY STATEMENT

This matter is before the court on the Defendant's F.R.Civ.P. 12(b)(1), (2), and (3) Motion (in advance of responsive pleading) to Dismiss the action for lack of subject matter jurisdiction, lack of personal jurisdiction, and/or improper venue.   In the alternative, the Defendant also moves for a 28 U.S.C. §1404(a) "convenience" transfer.

In brief, the Verified Complaint's allegations and exhibits do not show facts demonstrating either subject matter jurisdiction over the claim, personal jurisdiction over the Defendant, or proper venue in this court.   Further pertinent facts show that the jurisdictionally and/or prudentially proper locale for resolving the claim is in New York: New York is the site of the underlying construction project, the more convenient forum for all concerned, and the locale of two related suits.

One of those suits – originally filed in New Your state court and then removed to the Southern District of New York – is a New York mechanic's lien foreclosure action.   The S.D.N.Y. action includes and over laps certain of the issues asserted in this case. The S.D.N.Y. case includes other project participants – whose rights and obligations intertwine with the merits and issues asserted in this case.  Those additional parties, and other parties that may be joined to the S.D.N.Y. action in the future, would not be subject to this court's jurisdiction. This instant case therefore belongs in the S.D.N.Y, not in Massachusetts.

## STATEMENT OF FACTS

The Verified Complaint and the Affidavit of Leon Grant, with exhibits ("Grant Affid."), show the following:

1

The Defendant, Coreslab Structures, Inc. (hereinafter "Coreslab") is a Connecticut corporation with its principal place of business located in Connecticut. In or about January, 2006, Coreslab entered into a subcontract to perform certain precast concrete work on a construction project located in the Bronx, New York – sometimes known as the Mott Haven Substation project (hereinafter "the project"). (Grant Affid., ¶'s 3, 4, 31 and Ex. I)

The project (an electrical substation) was constructed for Consolidated Edison of New York, Inc. (hereinafter "Con Ed"), as the project/premises owner. The general contractor was D'Onofrio General Contractors Corp. (hereinafter "D'Onofrio"), of Brooklyn, New York. (Id., ¶3). D'Onofrio entered into a subcontract with Coreslab for a certain portion of the work under the General Contract. Neither Con Ed nor D'Onofrio is a party to this case, and Coreslab is not aware that either Con Ed or D'Onofrio would even be subject to personal jurisdiction in Massachusetts.

After subcontracting with D'Onofrio, Coreslab further subcontracted certain of the erection work for its precast concrete to the Builders Resource Inc. (hereinafter "BRI"). Coreslab understands that BRI in turn further subcontracted with or otherwise engaged others for parts of that erection work, (e.g. for crane load engineering, crane rentals, crane mats, etc.). (Id., ¶'s 4, 5, 26 and Exs. A, B)

Several of BRI's third tier subcontractors reportedly have not been paid in full by BRI. Some of these third tire subcontractors have asserted mechanic's liens; one of BRI's third tier subcontractors, Alf Rental Co. Inc. (hereinafter "Alf") has commenced a lien foreclosure action in New York. (Id., ¶'s 12-14 and Ex. C). As required by the New York Lien Law (see infra, pp. 16-17), the parties to that lien action have included others with liens from the project – such as

Coreslab and two other subcontractors of D'Onofrio, BRI (with whom Alf alleges it contracted) D'Onofrio, and Con Ed.

Alf filed its lien foreclosure action in New York state court, but BRI then removed that lien action to the Southern District of New York (the "S.D.N.Y. action"). BRI also impleaded a third party, Bay Crane, essentially asserting that it had received Alf's services through Bay Crane rather than directly. Coreslab recently filed its responsive pleading in the S.D.N.Y action, in part seeking foreclosure of its lien, as well as asserting Coreslab's own breach of contract claim against BRI. (Id., ¶'s 15-17 and Exs. D-G)

Coreslab's breach of contract claim against BRI derives from BRI's failure (so far) to establish that it has paid or satisfied all of BRI's obligations in connection with BRI's work on the project and BRI's failure to hold Coreslab harmless, etc. with respect thereto. Apart from BRI's obligees which have filed liens, BRI reportedly has additional suppliers and creditors who claim that they are owed monies for labor performed and/or materials supplied to the project. Among the resulting difficulties to Coreslab is that Coreslab's own right to payment from D'Onofrio is contractually conditioned upon BRI's payment (or other satisfaction) of BRI's project obligees. (e.g. Id., ¶'s 21-25 and Exs. A, I) Also, as described infra, p. 17, New York's Lien Law does or may impose trust obligations on D'Onofrio and Coreslab (as well as BRI) for the benefit of BRI's obligees.

Like Con Ed and D'Onofrio, the other lienors and the non-liening project obligees of BRI are not parties to this action, and Coreslab is not aware that any of these interested parties would be subject to personal jurisdiction in Massachusetts. By its instant action, BRI is essentially trying to isolate one small portion of interrelated claims; the majority of the claims

3

arise under N.Y. state law. Upon information and belief all of the parties necessary for the full adjudication of all claims arising out of the project are subject to personal jurisdiction in N.Y. The project is located in N.Y. and the vast majority of the witnesses are from the NY area.

Still, that is not to say that even the claims asserted in this case are properly before this court. The Verified Complaint's ¶1 allegation just that the Plaintiff has "a place of business … in … Massachusetts" is not only insufficient to show its state citizenship for diversity jurisdiction purposes, see infra, p. 6, but also is news to Coreslab. Apart from the New York job site, Coreslab - from its Connecticut office – dealt with BRI at BRI's Rhode Island office, not any office located in Massachusetts. (Id., ¶'s 5-11)

In particular, Coreslab's May, 2006 engagement of BRI was by a purchase order, with contract terms and other contract documents incorporated by reference. That Purchase Order was sent from Coreslab's Connecticut office to BRI's Rhode Island office, and presumably was accepted by BRI in Rhode Island. Coreslab did not have any contacts with BRI at any alleged BRI Massachusetts office or plant. (Id.)

BRI's project work was performed at the site in New York, with BRI's paperwork emanating from BRI's Rhode Island office. Coreslab's project work – the supply of the pre-cast concrete and the erection thereof (by BRI) - likewise was either at the site in N.Y. and/or emanating from Coreslab's Connecticut office. Coreslab's payments to BRI issued from Coreslab's Connecticut office. (Id.) Indeed, one Verified Complaint exhibit shows that as recently as one day before BRI filed this action, BRI invoiced Coreslab (for a purported "Finance Charge") from BRI's Rhode Island office.

4

The applicable state substantive law is not that of Massachusetts. It instead would be either that of New York – at least as to matters governed by the New York Lien Law, or at most between the instant parties, that of Connecticut (domicile of Coreslab) or Rhode Island (domicile of BRI).

Coreslab is **not** domiciled or incorporated in Massachusetts and Coreslab does not have its principal place of business in Massachusetts. See infra, p. 8. Moreover, BRI's purported service of process upon Coreslab was "long arm" (extraterritorial), i.e. by personal delivery at Coreslab's Connecticut office. (Grant Affid. ¶32) The Plaintiff thus has ineffectually attempted to invoke a type of personal jurisdiction which is not authorized by Massachusetts law.

On the constitutional aspect ("minimum contacts"), Coreslab does occasionally do work in Massachusetts. However, Coreslab's activities in Massachusetts do not rise to the level of contacts required to support general personal jurisdiction over Coreslab.

I.      THE VERIFIED COMPLAINT SHOULD BE DISMISSED BECAUSE
        IT FAILS TO SUFFICIENTLY PLEAD SUBJECT MATTER
        JURISDICTION.

In pertinent part, federal diversity subject matter jurisdiction requires a "matter in controversy … between … citizens of different States; …" 28 U.S.C. §1332(a)(1). In turn, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business … " 28 U.S.C. §1332(c)(1).

Here, the Verified Complaint's ¶1 alleges merely that the Plaintiff has "a place of business … in … Massachusetts." It thus fails to show the Plaintiff's §1332(c)(1) citizenship. The same is the case for the Defendant. The Verified Complaint's ¶2 simply asserts that it has "a place of business … in … Connecticut," without any allegation there or elsewhere as to its state(s) of

5

incorporation and "principal" place of business.  However all of Coreslab's dealings with BRI took place either in NY, Connecticut or Rhode Island, not in Massachusetts.

The Verified Complaint thus fails to allege facts demonstrating that this court has any §1332(a)(1) (or other) subject matter jurisdiction.  It therefore should be dismissed.  See e.g. Valentin v. Hospital Buena Vista, 254 F.3d 358, 363 (1st Cir. 2001) (sufficiency challenge).  See also F.R.Civ.P. 8(a) (complaint's need for "a short and plain statement of the grounds on which the court's jurisdiction depends, …").   Further among the reasons is that the Defendant should not be vexed with the later risk of losing a favorable judgment to a determination that this court lacked subject matter jurisdiction.  See e.g. Arbaugh v. Y&H Corp., 546 U.S. 500, 126 S. Ct. 1235, 1240, 1244, 163 L.Ed. 2d 1097 (2006); F.R.Civ.P. 12(h)(3).

Finally, even if the Plaintiff might be able to cure by amendment, the court need not await that before addressing the Defendant's other grounds for dismissal (or transfer).  See e.g. Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 75 U.S.L.W. 4126, 127 S.Ct. 1184, ___L.Ed.2d ___ (2007).

II.      THE VERIFIED COMPLAINT SHOULD BE DISMISSED BECAUSE
         THE COURT LACKS PERSONAL JURISDICTION OVER THE
         DEFENDANT.

"It is basic law that a court must have personal jurisdiction over the parties to hear a case, 'that is, the power to require the parties to obey its decrees.'" (citation omitted).  Also, under the "prima facie" standard for evaluating personal jurisdiction (short of an evidentiary hearing), "it is the Plaintiff's burden to demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution" (citation omitted) by "affirmative proof" and not mere "pleadings." (citation omitted)  United States v. Swiss

6

American Bank, Ltd., 274 F.3d 610, 617, 618-619 (1st Cir. 2001).  See also Harlow v. Children's

Hospital, 432 F.3d 50, 57 and fn. 3 (1st Cir. 2005).

     Here, the pertinent type of jurisdiction is "general", rather than "specific" jurisdiction,

i.e. when the claim "does not arise out of or relate to the [Defendant] foreign corporation's

activities in the forum state, ..." (fn. omitted).

See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 104 S. Ct. 1868, 80 L.Ed.

2d 404, 411 and fns. 8, 9 (1984).  BRI's claim has nothing to do with Massachusetts, and the

Verified Complaint's ¶5 essentially is an attempted allegation of "general" personal jurisdiction.

However, it is insufficient on both of the relevant analytic prongs.

     "In a diversity case, personal jurisdiction over a non-resident Defendant is constrained

both by the long-arm statute of the forum state and the Due Process Clause of the Fourteenth

Amendment." (citation omitted) Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112

(1st Cir. 1997).  Accord e.g. In re Lypon Marketing & Sales Practices Litigation, 245 F. Supp. 2d

280, 288 (D. Mass. 2003).  State long arm statute compliance is first required, because of

F.R.Civ.P.  4(k)(1)(a)'s "borrowing" thereof for effective service of process in a non-federal

question case.  Id.  See also Lamarche v. Lussier, 65 Mass. App. Ct. 887, 892, 844 N.E.2d 1115,

1120 (Mddlsx. 2006) (same dual constraints in Mass. Commonwealth court litigation).

The pertinent statute is M.G.L. c. 223A, §§2 and 3.  M.G.L. c. 223A, §2, states: "A court may

exercise personal jurisdiction over a person domiciled in, organized under the laws of, or

maintaining his or its principal place of business in, this commonwealth as to any cause of

action."  M.G.L. c. 223A, §3, more restrictively permits "A court to exercise personal

jurisdiction over a person who acts directly or by agent, as to a cause of action in law or equity

arising from the person's "(a) transacting any business in this commonwealth; ..."[1]

The Verified Complaint's allegations trigger neither of these two sections. With respect

to M.G.L. c. 223A, §2, there is no allegation that Coreslab is incorporated in Massachusetts or

has its principal place of business in Massachusetts. Coreslab is a Connecticut Corporation with

its principal place of business in Connecticut. With respect to M.G.L. c. 223A, §3, there is no

allegation that the claim "aris[es] from" any pertinent §3 activity, i.e. "(a) transacting any

business ...; [or] (b) contracting to supply [anything here] ..."

In a recent case, Intech, Inc. v. Triple "C" Marine Salvage, Inc., 444 Mass. 122, 125,

826 N.E.2d 194, 197 (Mass., 2005) the Massachusetts Supreme Judicial Court stated:

"A Massachusetts court may acquire personal jurisdiction over a nonresident "when some basis
for jurisdiction enumerated in the statute has been established." Good Hope Indus., Inc. v. Ryder
Scott Co., 378 Mass. 1, 6, 389 N.E.2d 76 (1979). The long-arm statute provides, insofar as
relevant here, the following:

> 'A [Massachusetts] court may exercise personal jurisdiction over a person,
> who acts directly or by an agent, as to a cause of action in law or equity
> arising from the person's ( *a* ) transacting any business in this
> commonwealth; ( *b* ) contracting to supply services or things in this
> commonwealth....'

In an even more recent case, Roberts v. Legendary Marine Sales, 447 Mass, 860, 857

N.E. 2d. 1089 (Mass. 2006) the Massachusetts Supreme Judicial Court stated that "For

jurisdiction to exist under [M.G.L. c. 223A] § 3( *a* ), the facts must satisfy two requirements-the

---

[1] A possible third, but properly rejected as such, is M.G.L.A. 223, §38. It "is not a
long-arm statute" permitting extraterritorial service, but rather just an
authorization of various methods of domestic service as to certain foreign
corporations. See LTX Corp. v. Daewoo Corp. 979 F. Supp. 51, 56-57 (D. Mass
1997). Accord. In Re Lupron Marketing & Sales Practices Litigation, supra (245
F.Supp. 2d at 300, fn. 43).

8

defendant must have transacted business in Massachusetts, and **the plaintiff's claim must have arisen from the transaction of business by the defendant**. See Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6, 389 N.E.2d 76 (1979) at 10 n. 17, 389 N.E.2d 76." Roberts, *supra* quoting Tatro v. Manor Care, Inc.,  416 Mass. 763, 767, 625 N.E.2d 549, 551 (Mass.,1994) (emphasis added).

"A plaintiff has the burden of establishing facts to show that the ground relied on under § 3 is present." Id "If the literal requirements of the statute are satisfied, it also must be established that 'the exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution.' " Id., quoting Good Hope Indus., Inc. v. Ryder Scott Co., *supra* at 5-6, 389 N.E.2d 76.

Absent the M.G.L. c. 223A, §3 "arising from" connection, it is statutorily irrelevant whether the other business done by Coreslab in Massachusetts is similar to that work done elsewhere and from which the claim emanates.  See e.g. Roy v. Roy, 47 Mass. App. Ct. 921, 715 N.E. 2d 70, 71-72 (1999) (Defendant's publication here of allegedly libelous letter had "nothing to do with" the "contract claim" against him).  See also Telco Communications, Inc. v. N.J. Firemen's Mut. Ben. Ass'n., 41 Mass. App. Ct. 225, 231, 669 N.E. 2d 781, 785 (1996) (contracting with one "ha[ving] a place of business in Massachusetts is itself hardly enough to satisfy §3(a), ..."). BRI is "grasping at straws" when it alleges that Coreslab is "... engaged in construction of the same type and nature within the Commonwealth ..." when BRI's claims do not arise from the transaction of business by Coreslab.   Such an allegation is insufficient to subject Coreslab to personal jurisdiction in Massachusetts.

Consequently, the Plaintiff has failed to hurdle even the first constraint on personal jurisdiction, i.e. the need for valid state long arm service in order to trigger effective F.R.Civ.P.(k)(1)(a) service. The second, federal constitutional constraint therefore need not be reached. See e.g. Roberts v. Legendary Marine Sales, 447 Mass. 860, 865, 857 N.E.2d 1089, 1092-1093 (2006); Lamarche v. Lussier, supra (844 N.E.2d at 1121); Cunningham v. Ardrox, Inc. 40 Mass. App. Ct. 279, 283, 663 N.E.2d 577, 580 (Essx. 1996).

Nevertheless (and in the alternative), the Fourteenth Amendment due process requires for general personal jurisdiction that: "[f]irst, the Defendant must have sufficient 'minimum contacts' with the state [,] ... [of a] continuous and systematic [character;] [s]econd, ... the Defendant's contacts with the state must be purposeful[;] [a]nd third, the exercise of jurisdiction must be reasonable under the circumstances." (citations omitted) Harlow v. Children's Hospital supra, (432 F.3d at 57). "'The standard for evaluating whether ... contacts satisfy the constitutional general jurisdiction test' is considerably more stringent than that applied to specific jurisdiction questions.'" (citation omitted) Id., at 64.

Here, the Verified Complaint makes no allegation that Coreslab's construction activities in Massachusetts are continuous and systematic at all, let alone substantially enough so as to make the Commonwealth its "home away from home ..." See Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1174 (9th Cir. 2006), characterizing Perkins v. Benquet Consol. Mining Co., 342 U.S. 737, 72 S.Ct. 413, 96 L.Ed. 485 (1952). It is BRI's burden to prove facts needed to show jurisdiction, e.g. United States v. Swiss American Bank, Ltd., supra (274 F.3d at 610), and allegations of no more than essentially "limited and intermittent contacts" do not suffice, see Id.

10

at 620.  See also Harlow, supra (432 F.3d at 66); Noonan v. Winston Co., 135 F.3d 85, 93-94 (1st Cir. 1998).

Lastly, even if the Plaintiff could show sufficient contacts, any jurisdiction in Massachusetts still would not satisfy the reasonableness requirement.  The factors thereon (the "Gestalt factors") include:  "(1) the Defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the Plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies."  (citations omitted)  See Harlow, supra (432 F.3d at 66-67).

Regarding factors (2) and (5), Massachusetts has "a long standing concern about interpreting [its] long-arm statute so broadly as to lead to the 'unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts."  (citations omitted)  Stanton v. AM General Corp., 50 Mass. App. Ct. 116, 120, 735 N.E.2d 407, 410-411 (Mddlsx. 2000).  That unwanted result would be detrimental to the economic health of its residents.

Presumably including for such reason, the state policy reflected in the Massachusetts long arm statute is to not extend both arms to the fullest possible constitutional reach.  The one arm of M.G.L. c. 223A, §3 "cause of action … arising from" jurisdiction may so extend; however M.G.L. c. 223A, §2 "any cause of action" jurisdiction does not.  In turn, such state policy detracts from Massachusetts' "interest in adjudicating the dispute" - including as a matter of its own "substantive social policies."

11

Further detracting from its interest is the fact that the Plaintiff appears to be (or have been) principally conducting business in Rhode Island - including as the place where the Defendant's Purchase Order was sent and presumably accepted. Massachusetts could have but little, if any interest in hosting disputes between foreigners just because one allegedly has "a place of business" in Massachusetts.

Even the Plaintiff does not claim Massachusetts as the most convenient or effective form for relief. Supra, p. 5. That shows relatively diminished interests of the Plaintiff in a Massachusetts forum and of Massachusetts in hosting the merits of this dispute.

Further regarding convenience - as well as "the most effective resolution of the controversy," consideration must be given to the "100 mile bulge" rules of F.R.Civ.P. 4(k)(1)(B) (process to effect joinder of added parties) and F.R.Civ.P. 45(b)(2) (subpoenas for discovery or trial), and the 100 mile travel limits of F.R.Civ.P. 45(c)(3)(A)(ii) and (B)(iii) (limits on travel obligations of non-party discovery and trial witnesses). This court is more than 100 miles from the New York City, the locale of the project site; this court is also more than 100 miles from most of the interested party and non-party project participants. Their joinder as necessary parties or even their compulsion to be non-party witnesses thus could be impeded by using a forum in Massachusetts.

Yet another convenience, burden, and efficiency consideration is the choice of law. The applicable law in this matter appears to be that of New York, and clearly is not that of Massachusetts. Beyond contract law, moreover, a proper and complete resolution of the entire controversy necessary will involve the New York Lien Law (infra, pp.16-17) and the participation of numerous second and third tier subcontractors from the project.

12

The S.D.N.Y. action already has the several further necessary parties which Coreslab would have to try to join in the instant suit if this suit remains in Massachusetts. Those parties would most probably raise further jurisdictional disputes - adding to the legal expense and judicial effort needed just to get to the resolution of this and other matters on the merits rather than jurisdictional matters.

Presumably, neither Massachusetts, New York, nor any other state favors the incursion of such societal costs from readily avoidable litigation complexity. C.f. Datasouth Computer Corp. v. Three Dimensional Technologies, Inc., 719 F. Supp. 446, 452-453 (W.D.N.C. 1989) (avoidance of disputes over personal jurisdiction as factor favoring §1404(a) transfer).

Thus, the reasonableness factors too show that this court lacks general personal jurisdiction over the Defendant. The Verified Complaint therefore should be dismissed.

### III.    THIS CASE ALSO SHOULD BE DISMISSED (OR TRANSFERRED) FOR IMPROPER VENUE.

In pertinent part, a diversity case may be venued "only in (1) a judicial district where any Defendant resides, …, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …, or (3) a judicial district in which any Defendant is subject to personal jurisdiction at the time the action is commenced, if there is no other district in which the action may otherwise be brought." 28 U.S.C. §1391(a). For these purposes, a corporate Defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c).

Here, the Verified Complaint's ¶4 asserts that "[t]his suit is brought in the venue of the residence of the Plaintiff." However, it is no longer the Plaintiff's residence, but rather now the Defendant's residence, which triggers §1391(a)(1).

13

The Verified Complaint's ¶'s 7-10 and exhibits then show that the claim is for monies allegedly due on a contract - a purchase order from Coreslab in Connecticut to BRI in Rhode Island, for BRI's pre-cast concrete erection work in New York. "[T]he events or omissions giving rise to the claim [thus] occurred ...," elsewhere than in Massachusetts, precluding resort to §1391(a)(2) for venue here in Massachusetts.

Finally, with respect to §1391(a)(3), as well as the §1391(c) equation of personal jurisdiction with the residence of the Defendant for §1391(a)(1) venue, the preceding discussion has shown that such jurisdiction does not exist in Massachusetts. Supra, pp. 7-12. Accordingly, this case has been venued "in the wrong ... district," requiring the court to "dismiss, or if it be in the interest of justice, transfer [it] to [one] in which it could have been brought." 28 U.S.C. §1406(a).

IV.    ALTERNATIVELY, THE COURT SHOULD DIRECT A §1404(a)
       "CONVENIENCE" TRANSFER OF THIS CASE TO THE SOUTHERN
       DISTRICT OF NEW YORK.

Pursuant to 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." This provision "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." (fn. omitted) Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945, 949-950 (1964).

In the construction project dispute-type cases under §1404(a), the key considerations include such things as:

- the relative amenability to process (in the districts in question) of project participants other than the immediate litigation parties and whose joinder

14

would be necessary or beneficial to a complete resolution, <u>see</u> <u>Sparling v. Hoffman Constr. Co., Inc.</u>, 864 F.2d 635, 639 (9th Cir. 1988) (transfer to district where project owner could be impleaded);

- the relative amenability to process of likely witnesses, <u>see</u> <u>e.g.</u> <u>McDevitt & Street Co. v. Fid & Dep. Co. of Md.</u>, 737 F. Supp. 351, 355-356, 358 (W.D.N.C. 1990); <u>Midwest Mechanical Contractors, Inc. v. Tampa Constructors, Inc.</u>, 659 F. Supp. 526, 533 (W.D. Mo. 1987); and

- the pendancy of related litigation in the proposed transferee district or the state courts there (often also the site of the project), <u>see</u> <u>Reading Metal Craft Co., Inc. v. Hopf Drive Assocs.</u>, 694 F. Supp. 98, 105-107 (E.D.Pa. 1988) (N.Y. mechanics lien foreclosure actions by the Plaintiff's own subcontractors). <u>See also</u> <u>Hall-Kimbrall Environmental Services, Inc. v. Archdiocese of Detroit</u>, 878 F.Supp. 1414-1416 (D. Kan. 1995).[2]

Some further considerations include:

- the "'local interest in having localized controversies decided at home'" (citations omitted), such as that of the residents of the area to be served by (or ultimately having to pay for) the project in question, <u>see</u> <u>Midwest Mechanical Contractors, Inc. v. Tampa Constructors, Inc.</u>, <u>supra</u> (659 F. Supp. at 534);

- the applicable state substantive law, <u>see</u> <u>e.g.</u> <u>Black & Veatch Construction, Inc. v. ABB Power Generation, Inc</u>, 123 F. Supp. 2d, 569, 581 (D. Kan. 2000); and

- conduct of either party amounting to the waiver of an argument for the convenience or inconvenience of a particular district - such as by having agreed to a forum selection - type contract clause, <u>see</u> <u>e.g.</u> <u>Id</u>.

Here, the applicable state substantive law is the New York Lien Law, which includes the

Plaintiff's overly simplistic, contract-based claims.  It shows that there are necessary parties who

could readily be impleaded in New York, but not likely here in Massachusetts.  Indeed, Coreslab

and BRI are already involved in the S.D.N.Y. action, such that this case's transfer there and

consolidation with that action would be the most convenient, efficient, and just course of action.

<u>See</u> <u>e.g.</u> <u>Continental Grain Co. v. Barge FBL – 585</u>, 364 U.S. 19, 26, 80 S.Ct. 1470, 4 L.Ed. 2d

---

[2] <u>C.f.</u> <u>Milligan Elec. Co., Inc. v. Hudson Construction Co., Inc.</u>, 886 F. Supp. 845, 850-851 (N.D. Fla. 1995) (§1406(a) transfer).

15

1540, 1545 (1960) (§1404(a)) "designed to prevent" inefficiency of duplicative suits); <u>Reading Metal Craft Co., Inc. v. Hopf Drive Assocs.</u>, <u>supra</u> (694 F. Supp. at 107).

More particularly, "[u]nder New York's Lien Law, [a mechanics lien foreclosure] brings down the whole house of cards – <u>i.e.</u>, all the other liens on the property – and requires an adjudication of who owed what to whom in connection with th[e] particular project." <u>See</u> <u>York Hunter Construction, Inc. v. Avalon Properties, Inc.</u>, 104 F.Supp. 2d 211, 217 (S.D.N.Y. 2000). Thus, all others on the project with liens became necessary parties to the action, as do the general contractor and the project/premises owner. <u>See</u> <u>Id.</u>, at 213. <u>See also</u> <u>Geo. W. Maltby & Sons, Inc. v. Chs. P. Boland Co.</u>, 152 A.D. 596, 137 N.Y.S. 470 (3rd Dept. 1912); <u>Mellen v. Athens Hotel Co.</u>, 149 A.D. 534, 133 N.Y.S. 1079 (1st Dept. 1912); McKinney's N.Y Lien Law, §§43, 44. <u>C.f.</u> <u>Id.</u>, §44-b (owner no longer necessary party if liens all bonded off).

Among the reasons is the close interdependence of the lienors' and the other project participants' lien rights and obligations. The general rule for distribution among the lienors is one of "parity" among them, <u>Id.</u> at §13(1), so all need be joined in order to assure a conclusive resolution. By the same token, vertically duplicative liens (<u>e.g.</u> those for the same work by the one doing it and by the one engaging him to do it) must be netted out – to yield "but one payment of the claim …" <u>Id.</u>, at §56.

That single satisfaction rule also is consistent with the more general, derivative (or subrogation-like) nature of New York's lien system – that a lienor cannot recover more than remains due and owing contractually upstream of him (<u>i.e.</u> from the owner to the general contractor, from the latter to the sub, etc.). <u>See e.g.</u> <u>Timothy Coffey Nursery/Landscape Inc. v. Gatz</u>, 304 A.D. 2d 652, 757 N.Y.S. 2d 596, 597-598 (2nd Dept. 2003). <u>See also</u> <u>State v. Tabasso</u>

16

Homes, Inc., 42 Del. 110, 28 A.2d 248, 253 (1942). The upstream participants thus become necessary parties at least in the practical sense that a conclusive resolution must extend to their respective defenses of payment (or other non-liability) down the contractual stream.

Further complexity then arises from the availability of two types of lienable res – the improved realty and the contract funds (and rights or claims thereto) impressed with a trust at each link of the contractual chain. See McKinney's N.Y. Lien Law, §§ 70(1)-(3), (7), 71, 72. Regarding the latter, each project participant from the owner on down to a subcontractor (including a subcontractor to a subcontractor, see Id. §2(10)) holds its rights to and receipts of contract funds in trust for the benefit of downstream participants, e.g. Id., §§ 70, 72, and each has a "duty … to defend [such] trust" against misapplication, Id., §72 (3)(a). Thus, while a downstream participant still has his contract claim for non-payment against his immediately upstream one, see Id., §24, he holds and can receive payment of such claim only in trust for those downstream of him, as well as subject to the upstream participant's own trust obligations to those downstream.

Here, the Verified Complaint's simplistic claims of alleged breach by nonpayment and on an alleged account stated totally ignore these complexities of New York's Lien Law – a law to which BRI voluntarily subjected itself by agreeing to perform work and then actually performing the work on a New York project. Such claims themselves are trust assets held by BRI for the benefit of those downstream of BRI who are not parties and who have not been shown to be joinable as parties herein. They also are subject to the trust obligations of Coreslab to those others, and with Coreslab's own future receipts of funds subject to the similar trust

17

obligations and other lien defenses of those upstream – who also are not parties or apparently joinable as such herein.

Additionally, the liens on the improved realty implicate still others who are not parties nor apparently joinable, such as competing lienors in other contractual chains down from the general contractor, and those with prior encumbrances on the realty (e.g. mortgagees). Thus, while a New York lien foreclosure is supposed to "bring[] down the whole house of cards," supra, p. 16, BRI by the instant action is improperly trying to play with a partial deck – with the requisite full deck not even available in Massachusetts.

Moreover, if the S.D.N.Y. action proceeds to judgment first, that would make proceedings here a waste of time. If not, it nevertheless would be "a tricky proposition" at best to fashion and qualify a judgment in Massachusetts which protects the interests of all concerned – so that "all … get exactly what they ought to receive, without any double recovery." See York Hunter Construction, Inc. v. Avalon Properties, Inc., supra (104 F.Supp. 2d at 216).

Further regarding the §1404(a) considerations, several here overlap with the "reasonableness" factors for personal jurisdiction purposes, as discussed supra, pp. 9-12. For instance, the local interest in deciding localized controversies locally reflects the fact that a foreign forum state can have a scant interest in adjudicating the dispute relative to the interest of the home state of the operative events and resulting controversies. Also, the home state's local interest can extend to the application of its substantive law – reflecting its social policies, and as applied by local courts relatively better versed in such law's complexities. Here, New York by its Lien Law has evinced a policy that the resolution of a New York construction project

18

payment disputes should encompass "the whole house of cards," supra, p. 16, and not just a partial deck.

In a related vein, a "Plaintiff's interest in obtaining convenient and effective relief" and the courts' "interest in obtaining the most effective resolution …," supra, p. 10, not only overlap on "effective[ness]," but also dovetail with the New York Lien Law's policy for a project-wide resolution – presumably including as the most effective. In turn, such effectiveness furthers the §1404(a) "interest of justice."

Finally, the Plaintiff does not even claim this court to be a more convenient forum for itself or anyone else, but rather only that it supposedly is "as convenient as any other, …" supra, p. 5. Its choice of this forum therefore carries lesser weight than otherwise. (So too because the operative events occurred elsewhere. See e.g. Dicken v. United States, 862 F. Supp. 91, 92 (D.Md. 1994).

Its choice then is ultimately overborne by the other considerations discussed above. Consequently, if this case were not to be dismissed on any of the grounds argued above, it should be transferred to the Southern District of New York pursuant to §1404(a) (or §1406(a)).

<u>CONCLUSION</u>

For the reasons and authorities previously advanced, the Defendant respectfully requests that the court dismiss this action for lack of subject mater jurisdiction, lack of personal jurisdiction, and/or improper venue. Alternatively, the action should be transferred to the Southern District of New York pursuant to 28 U.S.C. §1404(a) (and/or §1406(a)).

Respectfully submitted,

Defendant Coreslab Structures (Conn), Inc.
by its Attorneys (as local counsel)


_____/s/ David T. Keenan_____
Edward J. Quinlan, Esq., BBO #409060
David T. Keenan, Esq., BBO # 567325
Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue, Suite 250
Norwood, MA  02062-5056
Phone: (781) 440-9909
Fax:     (781) 440-9979


Dated: June 29, 2007


## CERTIFICATE OF SERVICE

I, David T. Keenan, Esq., counsel for the Defendant, Coreslab Structures
(CONN), it a, hereby certify that this document filed through the ECF system will
be sent electronically to the registered participants as identified on the Notice of
Electronic Filing and paper copies will be sent to those indicated as non-registered
participants on this the 29th day of June, 2007.


__/s/ David T. Keenan_____
Edward J. Quinlan, Esq.
David T. Keenan, Esq..
Quinlan & Sadowski, P.C.
11 Vanderbilt Ave., Suite 250
Norwood, MA 02062
*Electronically*


20

EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

|  |  |  |
|---|---|---|
| BUILDERS RESOURCE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 07-40057 FDS |
| | ) | |
| -vs.- | ) | |
| | ) | Affidavit of Leon Grant |
| CORESLAB STRUCTURES CONN, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Leon H. Grant, of full age, having been duly sworn according to law, deposes and says:

1.    I am the Vice President/General Manager of Coreslab Structures (Conn.), Inc. ("Coreslab"), the defendant in this action.  As such, I am authorized to make this Affidavit and have personal knowledge of the matters herein stated.

2.    This Affidavit is submitted in support of Coreslab's motion to dismiss or to transfer this action - for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and/or inconvenient forum.

3.    This matter arose out of a construction project - the Mott Haven Substation project - located in the Bronx, New York.  The project owner is Consolidated Edison of New York, Inc. ("Con Ed").  The general contractor is D'Onofrio General Contractors Corp. ("D'Onofrio"), of Brooklyn, New York.

4.    In or about January, 2006, D'Onofrio subcontracted certain of the project's pre-cast concrete work to Coreslab.  In turn, in or about May, 2006, Coreslab sub-

1

subcontracted certain of the pre-cast concrete erection work to Builders Resource, Inc. ("BRI"), the plaintiff in this action.

5.     I note that an exhibit to the Verified Complaint herein is a copy of Coreslab's May 10, 2006 purchase order to BRI for such work. It stated in part "[a]s per attach[ed] contract & Quotation." Annexed hereto at Exhibit A is a copy of that contract and at Exhibit B, that quote (with transmittal).

6.     Coreslab had issued the purchase order at its Thomaston, Connecticut office and sent it to BRI at the latter's Harrisville, Rhode Island office - as addressed on the purchase order. Coreslab then received the purchase order back from BRI - as accepted by BRI (in the bottom right corner) - at Coreslab's Connecticut office.

7.     Subsequent communications between the parties, apart from those at or around the New York project site, likewise were between their aforesaid Connecticut and Rhode Island offices.

8.     For instance, another Verified Complaint exhibit is a copy of an October, 2006 change order, from Coreslab to BRI and addressed from and to those respective offices.

9.     Also, a further Verified Complaint exhibit is a copy of a March 12, 2007 invoice for a purported "Finance Charge," from BRI in "Harrisville RI" (albeit at a different street address), to Coreslab at its Connecticut office. I note that such invoice postdates the March 6, 2007 date of the Verified Complaint and predates the latter's March 13, 2007 filing date by one day.

10.    In a similar vein, Coreslab's payments to BRI issued from Connecticut to Rhode Island. (Also, D'Onofrio reportedly had paid some of BRI's project vendors (e.g.

for labor) in order to keep them working - with such payments apparently having been made in New York.)

11.    Consequently, and to Coreslab's knowledge, none of the parties' dealings with respect to their contract occurred in or otherwise involved Massachusetts. The involved states instead were New York, Connecticut and Rhode Island.

12.    Further, several of BRI's own project vendors claim still to have not been fully paid by it, and they have filed claims, mechanics liens, and/or lawsuits, in New York.

13.    For instance, annexed hereto at Exhibit C is a copy of a March 14, 2007 Summons and Verified Complaint for an action filed the next day in the New York State Supreme Court - Bronx County, by Alf Rental Company, Inc. ("Alf") against BRI, Coreslab, D'Onofrio, Con Ed, and others.

14.    In it, Alf essentially seeks payment for certain crane mats which it says it supplied to BRI on the project, and to foreclose on a New York mechanics lien therefor.

15.    As I understand it, BRI then removed that action to the United States District Court for the Southern District of New York on or about April 19, 2007, and BRI thereafter filed responsive and other pleadings therein - copied hereto at Exhibit D and E.

16.    Also, another defendant in the Alf action, Terra Dinamica LLC, filed a responsive pleading, copied hereto with related discovery items at Exhibit F. In part, Terra Dinamica, LLC seeks the foreclosure of its alleged mechanics lien on the project and asserts the priority of its lien over others.

17.    Coreslab too has appeared therein, with its recent responsive pleading copied hereto at Exhibit G. In it, Coreslab seeks the foreclosure of its own mechanics

lien on the project, and it also asserts contract breach claims against BRI.

18.    Yet another pending action against BRI from the project is one also in the United States District Court for the Southern District of New York, a true copy of the Complaint in which (dated December 15, 2006) is annexed at Exhibit H. It essentially is a suit for union benefits contributions due from and unpaid by BRI with respect to certain of BRI's project labor.

19.    Of note, that Complaint's ¶6 alleged that BRI is a Rhode Island corporation with its principal place of business at its aforesaid Harrisville, Rhode Island office.    It further alleged that BRI transacts business in New York, including in connection with this project.

20.    BRI's responses to those allegations are not yet known to Coreslab. I believe that those allegations are not inconsistent with any made in its Verified Complaint in the instant case.

21.    Also regarding BRI's unpaid project vendors, Coreslab's contract with BRI (Exhibit A) provided at ¶3 that, "[b]efore issuance of the final payment, [BRI] if required, shall submit evidence satisfactory to [Coreslab] that all bills for materials and equipment, and all known indebtedness connected with [BRI's] work have been satisfied."

22.    In a like vein, the contract's ¶2 was a "flow down" type of provision - essentially that BRI was obliged to Coreslab the same as Coreslab was obliged to D'Onofrio under the Coreslab-D'Onofrio subcontract.

23.    A true copy of the latter is annexed at Exhibit I.    Its here pertinent provisions included those at:

- Art. IV (p. 2, at "Final Payment") that, "[f]inal payment shall not become due and payable until ...; (2) provision by the Subcontractor of evidence satisfactory to [D'Onofrio] that there are no claims, obligations or liens outstanding or unsatisfied for ... [any components of its work]; ...;"

- Art. IV (p. 2, at "Payments Withheld") in part essentially that, "[i]f any claim or lien is made or filed with or against [D'Onofrio], the Owner, the Project or the Premises by ..." one down the contractual chain from Coreslab, then D'Onofrio could withhold from and/or backcharge against any payment otherwise due the amounts needed to defend or resolve such claim or lien (including legal fees), as well as recover any "insufficienc[y] ...;" and

- Art. XVIII (at p. 6, "Mechanic's Liens or Claims"), like the aforesaid provision, essentially that if anyone down the contractual chain from Coreslab asserts a mechanic's lien or other claim, then Coreslab is obliged to take care of it, or else D'Onofrio could do so at Coreslab's expense (including legal fees), as well as that Coreslab is obliged to "protect and save harmless" D'Onofrio and the Owner "against ... all loss ... in connection therewith."

24.     By virtue of the Coreslab - BRI flow down clause, BRI has those same obligations to Coreslab, which has those same rights against BRI in the event of claims or liens asserted by BRI's own project vendors.

25.     Also, the aforesaid conditions to payment-type provisions in the respective contracts essentially mean that BRI is not entitled to the monies claimed in the Verified Complaint, unless and until it satisfies or otherwise resolves the claims and liens of its

own vendors. Indeed, Coreslab itself cannot get its own payments due from D'Onorfrio, which it would need in order to pay BRI, unless and until BRI does so.

26.     Additionally, Coreslab's ongoing investigation and analysis so far has shown the following further claims and/or liens asserted by BRI's own vendors (or vendors to vendors), and with some further pertinent information:

- Bay Crane Service, Inc. and Bay Crane Service of Long Island, of Long Island City, New York, claiming $428,996;

- New York Crane & Equipment Co., of Brooklyn, New York, claiming $249,111 (apparently disputed by BRI, but as yet not resolved to Coreslab's knowledge);

- Garden State Engineering, Surveying & Planning, Inc., of Maywood, New Jersey, claiming $201,158 (with BRI later asserting a partial payment of $40,000);

- Howard I. Shapiro & Assocs., of Lynbrook, New York, claiming $13,575; and

- Sunbelt Rentals, of unknown location, claim amount to be determined (and with BRI disputing it, but as yet to furnish any release).

27.     I am not aware that any of the aforesaid project creditors of BRI would be amenable to suit in Massachusetts, such as by being added to this case.

28.     Further, other monies in dispute between Coreslab and BRI involve D'Onofrio's claims/backcharges against Coreslab with respect to BRI's project work for:

- $182,991, for union dues and benefits advanced on behalf of BRI to the latter's labor supplier;

- $152,500, for certain deficiencies or non-conformities in BRI's work; and

- an estimated $14,735 (so far) for lien bond and legal costs in addressing mechanic's liens.

29.     The above lists and amounts are not necessarily exhaustive or final, since Coreslab's investigation and analysis is continuing.

30.     Also pertinent to the present motion are the following further facts.

31.     Coreslab is a Connecticut corporation, with its principal place of business at its aforesaid Connecticut office.

32.     It was (purportedly) served with copies of the Summons and Verified Complaint herein, by hand delivery to its Connecticut office.

33.     During the past five years, it has: not had any office or plant location in Massachusetts; not had any other non-job specific presence there; not held any license or permit issued by Massachusetts; not paid Massachusetts taxes (save for fuel taxes for trucks and job-specific sales taxes); not been involved in any government regulatory proceedings there; and not been involved in Massachusetts state politics.

34.     It is registered as a foreign corporation authorized to do business there, and it does occasionally do work on particular jobs or projects there. Again for the past five years, its sales/revenues from Massachusetts jobs have been about only seven percent (7%) of its total sales/revenues.


Sworn to and subscribed
before me, this 21 day of
June, 2007

_Angela C. Kackowski_

**ANGELA C. KACKOWSKI**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES AUG. 31, 2008

Leon H. Grant

# EXHIBIT A

PAGE 5 of 23

# STANDARD SUB-CONTRACT
## Job #CS-0110
## Mott Haven Sub-Station and Bronx, NY

This agreement made this 10 day of May and 2006 by and between Builders Resource Inc, herein called the Sub-Contractor, and Coreslab Structures (CONN) Inc., P.O. Box 279, 1023 Waterbury Rd, Thomaston, Connecticut, herein called the Contractor.

## WITNESSETH

That the parties hereto for the consideration hereinafter named do hereby agree as follows:

1. The Sub-Contractor and the Contractor hereby especially agree that the materials and services to be furnished and work to be done by the Sub-Contractor are:

    a) Furnish all equipment, supervision and labor required to unload, erect, shore, brace, properly bolt/weld and/or otherwise fasten all Precast Concrete Materials as required by contract documents and/or detailed on Coreslab's shop drawings.
    b) All work shall be performed by qualified craftsmen. Welders (if required) shall be certified within the current calendar year that work is performed.
    c) All work shall be done to the full satisfaction of the Contractor, General Contractor, Architect, Engineer and Owner.
    d) Furnish all warrantees and other requirements in the fulfillment of this sub-contract and in accordance with the sub-contract between Contractor and General Contractor.
    e) Submit a copy of company's Affirmative Action Program prior to starting work.
    f) Furnish Coreslab with an erection sequence a minimum of two weeks prior to the erection start date. 72-hour advance written notice is required prior to arrival onsite, 24 hour for actual deliveries.
    g) Furnish Coreslab with crane type and sizes as well as set-up location(s) and access requirements..
    h) Return with signed Sub-Contract, Sub-Contractor's Certificate of Insurance & Safety Program.
    i) Any extra work performed by Sub-Contractor shall be signed for by the Contractor at the time such work is performed. Failure to do so is grounds to reject claims for extras.
    j) Erector must provide written notification and documentation of damage observed upon receipt of product at truck's arrival and unloaded.
    k) Escalation costs for project timeframe included.
    l) Deck all empty trailers as required.
    m) EMR of 1.0 or less.
    n) Cut off any lifting cables, shipping and handling rebar.
    o) Daily cleanup associated with this work shall be placed in dumpsters provided by General Contractor.
    p) Standard operating hours for the project will be from 7:00am to 3:30pm, Monday thru Friday.
    q) Protect and avoid damage to materials furnished and/or installed by other trades.
    r) Restore, repair and replace any portion of the job site fence damaged or relocated as a result of your work.

PAGE L of 23

s) Remove only necessary fireproofing in order to make connections. Subcontractor will be held responsible for repair of excessive removal of fireproofing.

t) Prior to start of work, meet at the project site to conduct a pre-installation meeting with the Contractor and General Contractor.

u) Sub-Contractor's Superintendent and key personnel or representatives shall attend job meetings scheduled, and will properly coordinate the work with other trades in the presence of the Contractor to resolve any matters related to the completion of work on schedule.

v) While workers are onsite, attend weekly project manager's meetings, weekly foreman's meetings, weekly and monthly safety meetings and all coordination meetings as required.

w) All personnel shall park in the designated areas.

x) Survey the C.I.P embeds installed by the Steel and/or C.I.P. Sub-Contractors prior to the start of erection. Allow ample time for corrections to be made. The Subcontractor will inspect and verify, at least two (2) weeks prior to the start of erection that all requirements for precast erection are complete and acceptable as required for erection to begin. This verification shall be submitted to Coreslab in writing. The survey shall include, but not be limited to, a detailed review of all work in place furnished & installed by others, as well as all site logistics for precast erection to commence. Items that do not meet the erection requirements must be identified accordingly. No claims are to be made for remedial work performed if the problem areas are not identified prior to the start of work.

y) Bearing and tieback hardware layout and installation by this Subcontractor, based on Drawings and Details issued by Coreslab Structures (Conn) Inc., for Construction.

z) All welds, where required, must be chipped of slag and touch up painted.

aa) Maintain rough opening dimensions as required to meet windows, etc. caulk joint tolerances.

bb) Hold shims back at least 0'-1" from Face of Panels.

cc) Layout and install all loose attachment hardware as shown on latest Contractor's documents and details one week prior to start of installation of panels.

dd) Layout all necessary work lines and benchmarks off of X-Y axis lines and benchmark provided on the Each Floor by the General Contractor, as established as Control Points one week prior to start of installation of panels.

ee) Provide MSDS Sheets for anything brought onto the site. Spill kits for truck, cranes, equipment, lifts, welders, etc. must be on hand at all times.

ff) Crane permits, certificates, FAA approval and site placement plan to be provided, two weeks prior to start.

gg) Staging, rigging, hoisting, distribution and erection are to be coordinated solely with Contractor. At no time will the Sub-Contractor coordinate with the General Contractor without the presence of the Contractor.

hh) Use gas welders. Site equipped with only 110V-power source on General Contractor's discretion.

ii) All welders' certificates shall be provided two weeks prior to the start of erection. Provide necessary fire watch when performing work as required by the Project Safety Program.

jj) All personnel to be equipped with full body harnesses. Supply Fall Protection Plan.

kk) General Contractor will have OSHA perimeter steel angle posts and cables installed around the building perimeter, openings and setbacks on all floors. Coordinate work with railings to ensure 100% perimeter protection.

ll) Ensure all erected components are left attached in a safe and secure manner, and any incomplete openings are temporarily closed at the end of each workday. Sub-Contractor is responsible for the removing and/or maintaining the safety cables installed by others at the precast panels installed.

mm)    Perform work in best effort so as not to chip, damage, scrape, stain or soil panels. If, in the view of the Contractor, excessive damage or miss handling results in corrective work

Page 3

over and above normal installation, the Sub-Contractor will be held responsible for the corrective measure required.

nn) A copy of the "punch list" will be forwarded upon receipt. All items pertaining to the installation requiring follow-up corrective measures will require immediate attention so as not to delay other trades or the project schedule. Work performed shall meet all Quality Control and Quality Assurance stated and PCI Installation Tolerances

In connection with a contract between Contractor and D'Onofrio General Contractors., pursuant to plans, specifications and addenda prepared by Coreslab Structures (CONN) Inc. and Con Edison, for the Mott Haven Sub-Station; for which the Contract was executed between Coreslab Structures (CONN) Inc. and D'Onofrio General Contractors., January 6, 2006.

2. The Sub-Contractor agrees that time is of the essence of this contract and that work under this contract shall be provided for immediately and shall be started when construction shall have reached the point where the Sub-Contractor can start work, and shall be carried on promptly with dispatch and coordinated with other work on the project to the satisfaction of the Contractor's representative. It is further agreed that the work will be carried on as required by the Contractor, promptly, and efficiently and without delaying other branches of work, and if necessary, on orders from the Contractor, Owner or Architect, certain parts of the work shall be prosecuted in performance to others.

3. The Sub-Contractor hereby especially agrees to be bound to the Contractor by the terms of the contract documents, shop drawings, specifications and addenda, and to assume toward Contractor all the obligations and responsibility that Contractor, by the documents in writing, assumed toward the General Contractor, and the Contractor shall have the same power of terminating this Sub-Contract that the General Contractor may exercise of the Contractor under the provision of its contract documents.

4. The Contractor agrees to pay the Sub-Contractor for the furnishing of materials and services and the performance of work hereunder the sum of; Three Million Four Hundred Seventy Eight Thousand Dollars ($3,478,000.00) for One Thousand One Hundred and Four (1,104) precast panels, subject to additions and deductions for changes as may be agreed upon, in writing, and to make monthly payments on account thereof upon written requests for payment by Sub-Contractor, and approved by Contractor. Such requests for payment shall be Ninety percent (90%) of the value of the work done and the materials and services furnished at the date of such written request, less previous payments, such values to be the same proportion of the contract price herein as the work done and materials and services to be furnished hereunder. The remaining Ten percent (10%) is to be paid after Contractor's contract is completed and Owner/General Contractor has made final settlement with Contractor.

Before issuance of the final payment, the Sub-Contractor if required, shall submit evidence satisfactory to the Contractor that all bills for material and equipment, and all known indebtedness connected with the Sub-Contractors work have been satisfied.

5. No payment of compensation of any kind shall be made by the Contractor to the Sub-Contractor for damages because of hindrance, delay or disruption in the work from any cause, whether such hindrance, delay or disruption be avoidable or unavoidable, unless Contractor is properly notified of same at the time of such hindrance, delay or disruption and given the option to make necessary corrections with Contractor's own forces or with Sub-Contractor's forces. If Sub-Contractor is to perform corrective work or is due any other compensation due to damages as stated above, said compensation shall be previously agreed to in writing by both parties.

Page 4

PAGE 8 of 23

Contractor shall not be liable to Sub-Contractor for any delay to Sub-Contractor's work resulting from the act, negligence or fault of the Owner or Architect by reason of fire or other casualty, or on account of any acts of God or any other causes beyond Contractor's control, or on account of any circumstances caused or contributed to by Sub-Contractor.

6. The Sub-Contractor will obtain and submit to the Contractor, before any work is performed under this contract, certificates from Sub-Contractor's insurance carrier showing that the Sub-Contractor is covered by Workmen's Compensation Insurance as required by law, and Public Liability, with Coreslab Structures (CONN) Inc. named of the project for which the work is being subcontracted on the face of the certificate.

Further, such certificates of insurance must (1) be originals, showing Coreslab Structures (CONN) Inc. as certificate holder, (2) name Coreslab Structures (CONN) Inc. as a primary additional insured on the General Liability Policy, (3) provide a waiver of subrogation in favor of Coreslab Structures (CONN) Inc., (4) show 30 days notice of cancellation of policy on face of the certificate, and (5) show the name of the project for which the work is being subcontracted on the face of the certificate.

The Sub-Contractor agrees and covenants to comply with all Federal, State and Municipal Laws, including Workmen's Compensation Insurance, Unemployment Compensation and Social Security Laws and tax on transportation of property, and the price of the contract includes the cost of such insurance, taxes, permits, etc. In the event of the Sub-Contract's failure to comply with such laws, the Contractor may deduct costs incurred from amounts due Sub-Contractor immediately upon payment of same by Contractor. The Sub-Contractor agrees to comply with the safety requirements of the State of Connecticut, OSHA and Federal Government. Sub-Contractor agrees by the execution of this contract, that no hazardous substances are to be discharged into or at any location designated by the General Contractor. Title of such substances will remain the property of the Sub-Contractor and never revert to Contractor. Sub-Contractor will be required to properly dispose of all hazardous substances. All costs for any such disposal or reclamation operations are to be borne by the Sub-Contractor.

In the connection with the performance of work under this Subcontract, Sub-Contractor agrees not to discriminate against any employee or applicant for employment because of race, religion, sex or national origin. The aforesaid provision shall include, but not limited to, the following; employment, upgrading, demotion or transfer; recruitment or recruitment advertising, layoff or termination, rates of pay or other forms of compensation, and selection for training, including apprenticeship. Sub-Contractor agrees to post hereafter, in conspicuous places, available for employees and applicants for employment, notices, prepared by Sub-Contractor, approved by the government when required, and setting forth the provisions of this article.

In the event of Sub-Contractor's noncompliance with the equal opportunity provisions of this Subcontract, this Subcontract may be terminated for default.

7. Sub-Contract agrees that the General Contractor's equipment will be available to the Sub-Contractor only at the General Contractor's discretion and on mutually agreed upon and satisfactory terms.

8. Sub-Contractor hereby agree to do own cleaning up as necessary during process of job and upon completion, to the satisfaction of the Contractor, and agrees hereby, especially to honor backcharges if Contractor and/or General Contractor is required to do any cleaning up for Sub-

Contractor for which charge Sub-Contractor agrees to pay Contractor said charges and hereby authorizes Contractor to withhold said charge of any monies due Sub-Contractor. As per Sub-Contract Section 1 regarding notification in an adequate and timely fashion of any potential problems/issues, which may result in additional work.

9. Contractor shall not honor or agree to pay any charges from the Sub-Contractor unless proper and adequate notification is made to Contractor and approved by an authorized representative in writing.

10. This contract cannot be assigned without the written consent of the Contractor.

11. The Sub-Contractor further agrees that he will use no labor that will cause conflict with other labor employed at the site and thereby result in delay or cessation of work on the job, or permit any of his Sub-Contractors or Material Suppliers to use labor that may conflict with other labor employed on the work.

12. The Sub-Contractor agrees to indemnify and hold harmless the Contractor and Owner/General Contractor from all manner of claims or suits for infringements of patents or violation of patent rights, including all costs and expenses to which the Contractor and Owner may be put in defending any actions that may arise under this clause of the contract.

13. In the event of any lawsuit between Contractor and Sub-Contractor, arising out of the work of this Subcontract in which either party shall obtain a judgement, the unavailing party shall pay costs and reasonable attorney's fees to be fixed by the Court.

14. In the event Sub-Contractor shall at any time when this Subcontract is in effect be adjudicated as bankrupt, makes an assignment for the benefit of creditors, commit any act of insolvency or fail to pay promptly when due bills and charges for labor, materials and rental of equipment used in the performance of this Subcontract, or required by this Subcontract to be paid, and/or in the event of Sub-Contractor's failure to perform promptly each and every obligation required hereunder, including failing to supply a sufficient number of qualified workmen or a sufficient quantity of materials of proper quality, Contractor may, after forty-eight (48) hours written notice to Sub-Contractor, take over work or any separate part thereof, and complete the same, or have the same completed at the Sub-Contractor's expense and in taking over shall have the right for the purpose of completing the work hereunder to take possession of all drawings, materials, tools and appliances. Such taking over shall not constitute or be construed as a waiver by Contractor of any action, claim or demand Contractor may have against Sub-Contractor by reason of injury or damage resulting to Contractor because of Sub-Contractor's failure of performance hereunder.

15. This Subcontract shall not be affected by any increase in labor rates, freight increases, cost of material or any other costs. Sub-Contractor agrees to accept full and exclusive liability for the payment of all sales, use and similar taxes, transportation taxes, and all contributions and taxes for unemployment insurance or old age retirement benefits, annuities or pensions now or hereafter imposed by the United States or any state or government subdivision thereof or labor organization measured by the wages, salaries or other renumeration paid persons employed by Sub-Contractor and engaged on the performance of said work, and Sub-Contractor further agrees to comply with all rules and regulations applicable thereto. In the event Owner or General Contractor is held liable to pay any taxes or contributions owed by Sub-Contractor, Sub-Contractor agrees to supply Owner or General Contractor with all records necessary to compute the same and to fully reimburse Owner or General Contractor upon demand for the amount thereof (including penalties and interest) paid by Owner or General Contractor, and Owner,

Page 6                                              PAGE 10 of 23

General Contractor or Contractor shall have right to deduct any amount so paid from any sums due Sub-Contractor hereunder.

16. The Sub-Contractor agrees to coordinate all field measurements, elevations and grades involved in the performance of this Subcontract with the Contractor's representative and the General Contractor's Field Engineer, to provide a true plumb installation, furnish all required permits and licenses, in accordance with the City, State and Federal Laws, Rules and Regulations, where the same apply, for the execution of the work.

17. Reasonable access will be provided for equipment and delivery trucks to the point of erection, however, should crane mats be required to facilitate erection, these are to be provided by the erection Sub-Contractor at no cost to the Contractor.

EXECUTED THIS THE 10/May/2006

SUB-SUBCONTRACTOR:                    SUBCONTRACTOR:
Builders Resource, Inc               Coreslab Structures (Conn) Inc.
_____      _____

BY  _____    BY  _____

Title  _____            Title    Mr. Leon H. Grant
                                                  VP/General Manager

## SCHEDULE B
## INSURANCE and BONDS

## SUB-SUBCONTRACTOR'S LIABILITY INSURANCE

**B.1   INSURED LIABILITES**

The Sub-Subcontractor, Insert Name, shall purchase and maintain, as primary and non-contributory Insurance, minimum limits of Insurance as set forth below, to protect himself from any claim arising out of or resulting from the Sub-Subcontractor's operations under Subcontract, whether such operations are undertaken by the Sub-Subcontractor, or by a Sub-subcontractor.

The Subcontractor's insurance shall be written for no less than any limits of liability specified in the Contract Documents or as required by law, or the minimum limits set forth below, whichever is greater, and by a company or companies licensed to do business in the city, town, county, state and/or district where the Work is located, having an "A" or better policyholder's rating and a "Class XI" or better financial rating as listed in the most current edition of A.M. Best's Insurance Guide available on the date of execution of the Subcontract. The Subcontractor shall procure, deposit and maintain for the benefit of Coreslab Structures (CONN) Inc., hereafter known as Coreslab, the following insurance, satisfactory to Coreslab:

1.  Claims under workers compensation, disability benefit and other similar employee benefit acts;
2.  Claims for damages because of bodily injury, occupational sickness or disease, or the death of any Sub-Subcontractor, and/or his subcontractor, employee;
3.  Claims for damages because of bodily injury, occupational sickness or disease, or the death of any person other than a Sub-Subcontractor employee;
4.  Claims for damages insured by usual personal injury liability coverage which are:
    a.   Sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Sub-Subcontractor, and/or,
    b.   Sustained by any other person;
5.  Claims for damages, other than to the Work itself, because of injury to or destruction of tangible property, including loss of use resulting therefrom; and/or
6.  Claims for damages because of bodily injury or death of any person or because of property damage arising out of any motor vehicle, machinery or equipment.

**B.1.1**  Worker's Compensation and Employer's Liability Insurance as required by all applicable local, state and/or federal laws, and including a Voluntary Employers Liability Rider. All certificates of insurance must specifically note that the statutory provisions of the state be written for no less than One Million dollars ($1,000,000.00). Example

**B.1.2**  Comprehensive General Liability Insurance (broad form), written on an "occurrence" basis, including a per-project/per-location amendment to the general aggregate limit if a simplified liability form is used, covering Bodily Injury and Property Damage as follows:
   1.  Minimum Limits of Liability:
       a.   Commercial General Liability Coverage:

Page 8                                                          PAGE 12 of 23

- General Aggregate: Two Million Dollars ($2,000,000). Example
- Products/Completed Operations Aggregate Two Million Dollars ($2,000,000) Example

2.    The Comprehensive General Liability shall provide insurance for the Sub-Subcontractor for Bodily Injury to third parties, Personal Injury to third parties and Property Damage to third parties' property, other than to the Work, arising out of or resulting from:

a) Work performed by the Sub-Subcontractor himself with his own employees, called "Premises Operations";
b) Work performed by any of the Sub-Subcontractors, called "Sublet Work" or "Independent Contractors";
c) Broad Form Contractor's Liability, assumed under the Contract Documents, called "Hold Harmless Clauses" or "Indemnity Agreements";
d) Products Liability Insurance covering the completed work;
e) Coverage for explosion, collapse and underground hazards (XCU)

The coverage under this insurance shall include a broad form Property Damage Endorsement.

Work performed by the Sub-Subcontractor himself with his own employees, called "Premises Operations";
Work performed by any of the Sub-subcontractors, called "Sublet Work" or "Independent Contractors";
Broad Form Contractor's Liability, assumed under the Contract Documents, called "Hold Harmless Clauses" or "Indemnity Agreements";
Products Liability Insurance covering the completed work;
Coverage for explosion, collapse, and underground hazards (XCU)

The coverage under this insurance shall include a broad form Property Damage endorsement.

**B.1.3**  Comprehensive Automobile Liability insurance coverage, Bodily Injury, and Property Damage insurance, as follows:

1.  Limits of Liability
    a.  The Combined Single Limit for Bodily Injury and Property Damage, per person /occurrence: One Million dollars ($1,000,000) Example; and
    b.  Bodily Injury, each accident: One million dollars ($1,000,000) Example;

**B.1.4**  Excess or Umbrella Liability Insurance in an amount not less than four million dollars ($4,000,000) Example following the forms and amounts of primary General Liability, Automobile, and Workers' Compensation and Employers Liability Insurance as described in Paragraphs B.1 through B.1.3 hereof.

**B.2    CONTINUATION OF INSURANCE**

All Liability coverages must remain in full force and effect for two years after final payment unless specified for a longer period of time in the Prime Contract. If any information concerning reduction of coverage is not furnished by the insurer, it shall be

PAGE 15 of 23

furnished by the Sub-Subcontractor with reasonable promptness according to the Sub-Subcontractor's information and belief.

**B.3    ADDITIONAL INSURED AND WAIVER OF SUBROGATION**

Coreslab shall be included in the Subcontractor insurance policies as an "additional insured".

All insurances maintained by the Subcontractor shall provide that:

1.  Coreslab, the Owner, and the General Contractor shall be named as additional insureds on Subcontractor's insurance policy using the current ISO Additional Insured endorsement form CG 20 10 or An endorsement providing equivalent coverage to additional insureds, with the understanding that any obligation imposed upon the insured parties, including, but not limited to, the liability to pay premiums, shall be the sole obligations of the Subcontractor and not of any other insured.

2.  All insurers referenced hereunder waive all rights of subrogation, or set-off and counterclaim, and of any other right to deduction, whether by attachment or otherwise, against Coreslab, the Owner, and the General Contractor.

**B.4    INDEMNITIES**

Coreslab, the Contractor, and all the parties to be indemnified as stated in the Prime Contract between the Owner and the Contractor, shall be included in the Sub-Subcontractor insurance policies as "additional insurers", and shall be heretofore together known as the "Indemnities."

All insurance's maintained by the Sub-Subcontractor shall provide that:

1.  The "Indemnities" shall be included in the policies as additional insurers, as their interest may appear, with the understanding that any obligation imposed upon the insured parties, including, but not limited to, the liability to pay premiums, shall be the sole obligations of the Sub-Subcontractor and not of any other insured;

2.  All insurers referenced hereunder waive all rights of subrogation, or set-off and counterclaim, and of any other right to deduction, whether by attachment or otherwise, against the "Indemnities";

3.  All losses shall be payable, notwithstanding the provision of the Work, the occupation or use of the Work and/or Site, or portion(s) thereof, for purposes more hazardous than permitted under the terms of such insurance policy(s).

**B.5    SUB-SUBCONTRACTOR INSURANCE**

The Sub-Subcontractor shall require each of his subcontractors to procure and maintain, until the approved completion of such subcontractor's portion of the Work, Insurance of the types and limits set forth in Paragraphs B.1 through B.1.4. The Sub-Subcontractor shall be solely responsible for ensuring that each such subcontractor complies with all of the insurance requirements.

The Subcontractor shall be responsible for providing an insurance certificate from the Sub-subcontractor's insurer that names Coreslab, the Owner, and the General Contractor as additional insureds.

**B.6    CERTIFICATES of INSURANCE**

A certificate signed by the insurance carrier or the carrier's authorized agent stating the limits of the liability and the expiration date of each coverage shall be delivered to Coreslab prior to the commencement of the Work. Should the initial insurance policy expire prior to the Final Completion of the Work, a renewal certificate and additional affidavit shall be furnished to Coreslab not later than the first business day of the week prior to such expiration date.   All certificates shall contain a provision that coverage shall not be canceled, materially amended, or allowed to expire until at least sixty (60) day prior written notice has been given by the Sub-Subcontractor to Coreslab.   All disclaimers shall be deleted from the certificate.

**B.7    POLICY ENDORSEMENTS**

The Sub-Subcontractor's liability policies shall be endorsed so as to indicate that his policies provide primary coverage for all claims of any type or nature against Coreslab, arising out of or resulting from the provision of the Work by the Subcontractor, and/or any of his Sub-subcontractor(s). Subcontractor shall provide a copy of all endorsements relating to Coreslab, including the appropriate additional insured endorsement, to Coreslab prior to the commencement of the Work. These policies shall further be endorsed to Cross-Claim and Severability of Interest Endorsements for losses due to the actions and/or inaction's of the Sub-Subcontractor, and/or any of his subcontractors.

**B.8    SUBCONTRACTOR ASSETS**

The Subcontractor shall at all times through Final Completion of the Work, carry and maintain, at the Subcontractor's sole expense, full replacement cost coverage's for damages to or loss of the Subcontractor's assets, including tools, equipment, material, and facilities required for his provision of the Work.

**B.9    INDEMNITY UNDER CONTRACT DOCUMENTS**

Compliance by the Sub-Subcontractor with the insurance requirements set forth in Schedule B shall not relieve the Sub-Subcontractor of liability under any indemnity or other agreement set forth in the Contract Documents.

Initials: _____    _____

Name of Subcontractor Here.            Coreslab Structures (Conn) Inc.

Page 11

PAGE 15 of 23

## SCHEDULE A
## INDEMNIFICATION

A.1    Coreslab, the Contractor, and all the parties to be indemnified as stated in the Prime Contract between the Owner and the Contractor, shall be included in the Sub-Subcontractor insurance policies as "additional insured", and shall be heretofore together known as the "Indemnities."

To the fullest extent permitted by law, the Subcontractor, Subcontractors Name., shall indemnify, defend and hold harmless Coreslab Structures (CONN) Inc., the Owner, the Architect/Engineer, Architect's/Engineer's consultants, and agents and employees of any of item from and against all claims, demands, damages, losses, expenses, including, but in no limited to, attorney's fees, arising out of or resulting from the performance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of Subcontractors Name.., anyone directly or indirectly employed by Subcontractors Name. or anyone for whose acts Subcontractors Name. may be liable, regardless of whether or not caused in part by negligence or omission of a party indemnified hereunder. Such obligation shall not be construed to negate, abridge or otherwise reduce any other right of indemnity which would otherwise exist for the "Indemnities" and shall survive indefinitely beyond Final Completion of all the Work, beyond the expiration or earlier termination of the Subcontract, and/or beyond the earlier termination of the Subcontract and/or beyond the termination of the Sub-Subcontractor's, and/or its subcontractor's, right to proceed with any part of the Work.

A.2    In any and all claims against Coreslab, the Owner, or the General Contractor, by any of the Subcontractors, or anyone for whose acts any of them may be liable, or may be construed to be liable, the indemnification obligations of the Subcontractor under Paragraph A.1 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor, and/or his subcontractor, under workers' compensation acts, disability benefit acts, or any other employee benefits acts.

A.3    The requirements of the Paragraph A.1 shall survive indefinitely beyond Final Completion of all the Work, beyond the expiration or earlier termination of the Subcontract, and/or beyond the termination of the Subcontractor's, and/or his subcontractor's, right to proceed with his provision of the Work.

Initials: _____    _____

*Subcontractors Name Here*    Coreslab Structures (Conn.) Inc.

**EXHIBIT B**

# BUILDERS RESOURCE INC.

Tuesday, April 18, 2006

| | |
|---|---|
| Job Name: | Mott Haven Substation |
| From: | Steven Allard |
| Company: | Coreslab Structures (Conn) inc |
| Deliver To: | **Leon Grant** |
| Fax Number: | 860-283-0165 |
| No. of Pages | (14) Including cover |
| Regarding: | Erection quote |

Message:   Leon, please find attached our erection quote for the Mott Haven Project, located in Bronx, NY. We have included the current surge engineering and the next two additional surge requirements. Our quote for the installation of 1104 pieces is all inclusive as per our standard terms and conditions attached. This quotation does not include the precast perimeter fence.

We look forward to working with you on this project.

Sincerely

**Builders Resource Inc.**

Steven M Allard   CFO

# BUILDERS RESOURCE INC.

Page 1 of 2

## ** PRE-CAST CONCRETE BID PROPOSAL **

Company: **CORESLAB STRUCTURES**
Attn: **Leon H. Grant**
From: **John Nirk**
Date: **05-05-2006**

| | | |
|---|---|---|
| **Con Edison / Mott Haven** | $ | **3,478,000.00** |
| **Bronx,NY** | $ | |
| | $ | |
| | $ | |

## Qualifications:

1. Bid based on a 40/hr workweek.
2. Price shown on this quote shall be valid for 60 days from bid date.
3. Labor Wage Designation: <u>UNION</u>.
4. Erection Scope of Work: <u>Hoist and Set (1104) pieces of Pre-Cast direct from truck.</u>
5. Retainage of 5% of total contract amount.
6. Retainage will be paid within 30 days after completion of our work.
7. Any back charges against B.R.I. must be either signed by our on-site Foreman or we must be notified by phone and a written copy of charges must be sent to our office as soon as the work is completed.
8. Crane set up locations as per B.R.I. / Howard I. Shapiro & Associates Crane surge engineered locations..
9. In the event of non-payment, we may suspend work and remove our forces and equipment from the project. Any and all cost including, attorney fees, lost profits and interest incurred by B.R.I. will be the responsibility of the contractor.
10. Project quoted as continuous and the Pre-Cast is to be sequenced prior to start, and delivered in sequences ordered by B.R.I.
11. General Contractor is responsible for 24 hour security of Crane, Equipment, etc. (If required)
12. All welding performed per A.W.S D1.1
13. All safety per PCI and OSHA Subpart M
14. B.R.I. will not be responsible for Pre-Cast and or accessories that is moved or damaged by others.
15. Any extra cost, including waiting time for men and equipment due to faulty fabrication, late deliveries, shortages and / or missing pieces, is not included in this estimate.
16. Delivery of Pre-Cast product shall be enough to keep each crane productive for 8 hour day.
17. Patching and Grouting is included to ½" of finished surface, <u>final finish is by others</u>. (See exclusions #14)
18. This Quote is not Valid if O.C.I.P. Insurance is Required ( Other Charges may apply) Any deduct given for O.C.I.P. insurance is a final credit and any other additional premiums will not be the responsibility of B.R.I.
19. Surveying included
20. Clean and touch up welds
21. Temporary power by G.C.

Drawing No.'s:   <u>SEE ATTACHED DRAWING LOG</u>

# BUILDERS RESOURCE INC.

Page 2 of 2

## ** PRE-CAST CONCRETE BID PROPOSAL **

Project: <u>Con Edison  Mott Haven</u>

Date: <u>05-05-2006</u>

Exclusions:

1. All hoisting for other trades.
2. All Permits – Construction, Traffic, Fire…Etc.
3. All Traffic Control.
4. Special Lifting Devices. (if required)
5. Manpower needed for Fire Watches.
6. Maintenance and Removal of Safety Cables.
7. Skim Coating, Sealants and Caulking.
8. Removal of Debris from site. (we will place debris in dumpster or designated area on site provided by others).
9. Cutting of Pre-Cast or any kind..
10. Concrete Core Drilling or cutting of any kind.
11. Snow and / or Ice Plowing, Shoveling or removal.
12. Bollards
13. Stair Rails
14. Grouting of Butt Joints, Shear Keys of Floor slabs and or Hollow core.

Note: Please fill out bottom portion and remit to Builders Resource Inc., at time of jobs award.
This document is to be used as an exhibit in the contract between the Fabricator and Erector.

Date: _____

Company: _____

Authorized Signature of Acceptance: _____

Title: _____

**EXHIBIT C**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No. 89/0/07
Date Purchased: 3/15/07

------------------------------------------x

ALF RENTAL COMPANY, INC.,

                    Plaintiff,

              - against -

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES and NICOLSON
CONSTRUCTION CO.,

                    Defendant.

------------------------------------------x

**SUMMONS**

Plaintiff designates
Bronx County as
the place of trial.

The basis of venue is
the location of the
subject property

To the above named Defendant(s):

YOU ARE HEREBY SUMMONED to answer the complaint in this action and serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT

THE OBJECT of the above captioned action is to foreclose mechanics liens totaling $77,149 recorded in the office of the Clerk of the County of the Bronx, covering the premises known as Mott Haven Substation, located at 415 Bruckner Blvd., Bronx, NY, Bronx County, City and State of New York, Block 2599, Lot 5, and a judgment for moneys due and owing.

The relief sought in the within action is a final judgment directing the sale of the premises described above to satisfy the debt secured by the mechanics lien and a judgment for moneys due and owing.

Dated:  New York, New York
        March 14, 2007

                              Bahn, Herzfeld & Multer, LLP,

                              By: RICHARD L. HERZFELD
                              Attorneys for Plaintiffs
                              555 Fifth Avenue
                              New York, N.Y. 10017
                              (212) 818-9019

CORESLAB CT.

☑003

To:  BUILDERS RESOURCE, INC.
     101 Nasonville Road
     Nasonville RI 02830

     D'ONOFRIO GENERAL CONTRACTORS CORP.
     202 28th Street
     Brooklyn, NY 11232

     CONSOLIDATED EDISON OF NEW YORK, INC.
     4 Irving Place
     NY NY 10003

     TERRA DINAMICA, LLC
     5 Meadowbrook Road
     Granby Ct.  06035

     CORESLAB STRUCTURES
     1023 Waterbury Rd.
     Thomaston, Ct.

     NICOLSON CONSTRUCTION CO.
     12 McClane Street
     Cuddy, Pa. 15031

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
ALF RENTAL COMPANY, INC.                          :
                                                  :    VERIFIED
                                Plaintiff,         :    COMPLAINT
                                                  :
        -against-                                 :    Index No.
                                                  :
BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL        :
CONTRACTORS CORP., CONSOLIDATED EDISON OF
NEW YORK, INC., TERRA DINAMICA, LLC, CORESLAB     :
STRUCTURES and NICOLSON CONSTRUCTION CO.,
                                Defendants        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Plaintiff, ALF RENTAL COMPANY, INC., by its attorneys, BAHN,
HERZFELD & MULTER, LLP, for its complaint, alleges as follows:

        1.    Plaintiff, ALF RENTAL COMPANY, INC. ("ALF"), is and at
all times hereinafter mentioned was, a corporation organized and
existing pursuant to the laws of the State of New Jersey.

        2.    Upon information and belief, defendant Builders Resource,
Inc. ("Builders") is, and at all times hereinafter mentioned was,
a corporation organized and exiting under the laws of the State of
Rhode Island, doing business within the State of New York.

        3.    Upon information and belief, defendant D'Onofrio General
Contractors Corp. ("D'Onofrio"), is, and at all times hereinafter
mentioned was,  a corporation, organized under and existing
pursuant to the laws of the State of New York.

        4. Upon information and belief, defendant Consolidated Edison
of New York, Inc. ("Con Ed") is, and at all times hereinafter
mentioned was, is the fee owner of premises known as Mott Haven
Substation, located at 415 Bruckner Blvd., Bronx, NY, Bronx County,
City and State of New York, Block 2599, Lot 5 (Exhibit A) (the

1

"Property").

5.   Upon information and belief, defendants Terra Dinamica, LLC, Coreslab Structures and Nicolson Construction Co. are parties claiming to have some interest in the Property by the filing of a Mechanic's Lien and/or a lis pendens in the Office of the Clerk of the County of the Bronx.

6.   Upon information and belief, D'Onofrio was the general contractor on a project for the improvement of the Property on behalf of Con Ed (the "Project").

7.   Upon information and belief, Builders was a subcontractor to D'Onofrio on the Project.

FIRST CAUSE OF ACTION AGAINST BUILDERS

8.   On or about May 1, 2006, plaintiff and Builders entered into an agreement whereby plaintiff agreed to furnish certain hardwood crane mats to Builders for use in connection with the Project.

9.   The terms of the agreement were as set forth in the confirmation provided by plaintiff and provided to Builders, annexed as Exhibit B.

10.   Plaintiff's compensation was agreed to as set forth in the confirmation.

11.   Thereafter, plaintiff delivered the mats which were used in connection with the Project.

12.   Rental charges were paid by Builders pursuant to the agreement, but in or about June 1, 2006, Builders failed and refused to pay the monthly charges as they accrued.

13.   Unpaid rental charges as of October 1, 2006 totaled $58,538.

14.   Additional rental charges of $13,746.30 accrued through March 1, 2007 and continue to accrue at approximately $84 per diem.

15.   In addition, in accordance with the parties' agreement, any mats which were not returned were to be paid for at a rate set forth in Exhibit B.

16.   12 mats were not returned and Builders has claimed it cannot locate them. Based upon the parties' agreement, there is due and owing an additional $17,200.

17.   Pursuant to the parties' agreement, there is due and owing from Builders to plaintiff, the sum of $89,484.41.

SECOND CASE OF ACTION AGAINST BUILDERS

18.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 17 of the complaint as if fully set forth herein.

19.   Plaintiff invoiced Builders for the periodic rentals in the total amount of $72,284.41 to date.

20.   Builders made no complaint with respect to the amount of the invoices.

21.   By reason of the foregoing, there is an account stated and there is due and owing from Builders to plaintiff the sum of $72,284.41.

THIRD CAUSE OF ACTION AGAINST BUILDERS

22.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 21 of the complaint as if fully

3

set forth herein.

23.   The amounts set forth above are a fair and reasonable value for the materials supplied by the Plaintiff.

24.   By reason of the foregoing, there is due and owing from Builders to plaintiff the sum of $89,484.41.

FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

25.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of the complaint as if fully set forth herein.

26.     On or about October 5, 2006 and March 5, 2007, each within eight (8) months after the last items of work and materials were furnished to the premises, plaintiff filed Notices of Lien in writing in the Office of the Clerk of the County of Bronx against the Property in the respective amounts of $58,538.11 and $18,611, for an aggregate of $77,149.11 (Exhibit C).

27.   Said Notices contained all of the information required by the appropriate sections of the N.Y. Lien Law.

28.   Said Liens have not been paid, cancelled or discharged of record, and no other proceeding has heretofore been brought in law or in equity to recover the amount claimed therein.

WHEREFORE, Plaintiff demands judgment as follows:

(1) On the first and third causes of action against BUILDERS, for the sum of $89,484.41, with interest thereon from the June 1, 2006;

(2) On the second cause of action against BUILDERS, for the sum of $72,284.41, with interest thereon from the June 1, 2006;

4

CORESLAB CT.

(3) On the fourth cause of action against Defendants, adjudging and determining that the Notices of Lien filed by Plaintiff are good, valid and subsisting liens in the total amount of $77,149.11 against the interest of the Defendants in the real property above described;

(4) That the Defendants and all persons claiming under them or either of them or any of them subsequent to the filing of the Notice of Pendency in this action in the office of the Clerk of the County of the Bronx in which said real property is situate, and every person whose conveyance or encumbrance is subsequent or subsequently recorded, filed, or docketed, be forever barred and foreclosed of all right, claim, lien, and equity of redemption in said real property or any part thereof;

(5) That the interest of the Defendants as of the date of filing of said Notices of Lien may be decreed to be sold according to law:

(6) That the moneys arising from said sale may be brought into court;

(7) That Plaintiff may be paid therefrom the amount adjudged to be due to the Plaintiff, with interest thereon to the time of such payment, together with the costs and expenses of this action and the expenses of such sale, so far as the amount of such money properly applicable thereto will pay the same;

(8) That Builders may be adjudged to pay any deficiency which may remain after applying all of such moneys so applicable thereto;

(9) That, in case it be determined and adjudged that Plaintiff

5

does not have a valid and subsisting lien upon said real property, the Plaintiff may have a personal judgment against Builders for the sum of $89,484.41 with interest thereon from the June 1, 2006; and

(10) That Plaintiff have such other and further relief, or both, as shall be equitable, just and proper.

Dated: New York, New York
March 14, 2007

BAHN, HERZFELD & MULTER, LLP
Attorneys for Plaintiff


By: RICHARD L. HERZFELD
555 Fifth Avenue
New York, N.Y.   10017
(212) 918-9019

6

<u>VERIFICATION</u>

STATE OF NEW YORK:

s.s.:

COUNTY OF NEW YORK:

RICHARD L. HERZFELD, being duly sworn, deposes and says:

I am the attorney for plaintiff in this action and the foregoing complaint is true to my own knowledge, except as to matters therein stated on information and belief and as to those matters I believe to be true; the grounds of my belief as to all matters not stated upon my knowledge are correspondence and other writings furnished to me by plaintiff and interviews with officers and employees of plaintiff; and the reason why the verification is not made by plaintiff is that the plaintiff is not in the county where I maintain my office.

_____
RICHARD L. HERZFELD

Sworn to before me this
14 day of March, 2007
_____
Notary Public

ANDREW JAY MULTER
Notary Public, State of New York
No. 02MU5066724
Qualified in New York County
Commission Expires 09/30/20 10

7

EXHIBIT A

# HARVEY-GEARY ASSOCIATES, INC.
### 387 Sixth Avenue
### Brooklyn, New York 11215

(718)768-3500.                                    Fax: (718)768-2550

## SCHEDULE "A"

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of The Bronx, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northwesterly side of Bruckner Boulevard with the southerly side of East 144th Street;

RUNNING THENCE westerly along the southerly side of East 144th Street, 360.45 feet to a point;

RUNNING THENCE southerly along a line forming an angle of 90 degrees 17 minutes 00 seconds on the southwest with the southerly side of East 144th Street, part of the distance through a party wall, 37.56 feet to a point;

RUNNING THENCE easterly at right angles to the last mentioned course, part of the distance through a party wall, 14.67 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, part of a distance through a party wall, 220.07 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, part of a distance through a party wall, 30.00 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, part of a distance through a party wall, 1.16 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, 259.55 feet to the easterly side of Southern Boulevard;

RUNNING THENCE southerly along the easterly side of Southern Boulevard, 378.19 feet to the land now or formerly of New York and Harlem Rail Road;

RUNNING THENCE southeasterly along the land now or formerly of New York and Harlem Rail Road along a line forming an angle of 122 degrees 41 minutes 38 seconds on the northeast with the easterly side of Southern Boulevard, 138.78 feet to the northwesterly side of Bruckner Boulevard;

# HARVEY-GEARY ASSOCIATES, INC.
### 387 Sixth Avenue
### Brooklyn, New York 11215

(718)768-3500                                          Fax: (718)768-2550

## SCHEDULE "A" (continued)

RUNNING THENCE northeasterly along the northwesterly side of Bruckner Boulevard, along a curve bearing to the left having a radius of 1000 feet an arc length of 362.88 feet to a point of tangency;

RUNNING THENCE northeasterly along the northwesterly side of Bruckner Boulevard, 521.94 feet to the corner the point or place of BEGINNING.

EXHIBIT B

# ALF RENTAL COMPANY INC.

122 W. Sheffield Avenue
Englewood, New Jersey 07631
(201) 871-9859 • Fax (201) 871-9858

## EQUIPMENT
## RENTAL AGREEMENT

ILDERS RESOURCE INC.
Nasonville Road
onville, RI 02830

Tel.#401-762-0262
Fax#401-762-0312

ntion:  Steve Allard (Cell#401-623-6135)

PROPOSE to rent you the following equipment subject to terms and conditions hereinafter stated:
nty Eight (78) Hardwood Crane Mats:  (50) 24'x4'x1', (20) 26'x4'x1' & (8) 30'x4'x1'.
nted equipment is not returned or returned in a damaged condition, you are responsible for the amount of
00.00 per 24' Mat. $1,450 per 26' Mat. & $1,700 per 30' Mat.

TAL is to be at the rate of $6.00 per 24' Mat/Day, $7.50 per 26' Mat/Day & $9.00 per 30' Mat/Day from the date of delivery
equipment is returned to us.  Rental rate based on (7) day work week with a minimum of a (7) day rental.

MS:  NET 30 DAYS FOB OUR YARD.

IVERY of equipment is to be made to you on:  Rental on all Mats began on May 1, 2006 (Mats held for this job), for use at
Haven (Bronx).
   ALL TRANSPORTATION CHARGES from point of delivery to destination and return charges to point of delivery are to be
y you.  Loading Charge of $150 per trailer and an Unloading Charge of $150 per trailer in our yard.

   YOU ARE TO ASSUME full responsibility for equipment during rental period, and are to return it to us in as good condition as
d less wear incident to normal use.  An $80 per Unit cleaning and/or maintenance charge will be incurred if the item is returned
with debris (dirt, garbage, steel, etc.).  If wood dunnage (spacers) are not returned, a charge of $6.00 per unit will be incurred.

   WE ASSUME NO LIABILITY for loss or damage on account of accidents, delays due to defective material or delays in the
ry or removal of equipment.
   YOU REPRESENT THAT YOU ARE FULLY RESPONSIBLE with proper methods for installation, use and maintenance of
uipment.  You are solely responsible for its installation, use and maintenance and agree to do so in a proper and safe manner.
   YOU SHALL INDEMNIFY US AND HOLD US HARMLESS against all losses, claims, suits, damages, expenses and/or
es, including attorney's fees, arising out of any matter concerning the equipment occurring during the rental period or while the
ment is otherwise in your possession, including but not limited to claims of personal injury or property damage.
   YOU SHALL SECURE general liability insurance policy, naming us as a coinsured, to afford protection with limits, for each
nce, of not less than Two Million Dollars ($2,000,000.00) with respect to personal injury and death, and Five Hundred
nd Dollars ($500,000.00) with respect to property damage.

   WE RESERVE THE RIGHT, if rental is in default under the terms of this agreement, or if in our opinion equipment is being
d in excess of ordinary wear and tear, to take possession of our property at once.

NTIRE AGREEMENT.  This agreement sets forth the entire agreement and understanding between the parties on the subject
hereof, and merges all prior discussions and negotiations between them.  Neither of the parties shall be bound by any
ns, definitions, representatives or warranties with respect to the subject matter of this agreement other than as expressly
d herein or as duly set forth on or subsequent to the date hereof in a writing signed by a duly authorized representative of the
be bound thereby.

TTORNEYS FEES.  In the event of a breach of this agreement, the injured party shall be entitled to recover reasonable
s' fees and costs of collection.

3: - If shipment of this equipment is ordered by Lessee who neglects to return this contract signed, It shall be considered as in
t when such shipment is made.

Please sign copy of this contract & return to.  ALF RENTAL COMPANY, INC.

By:  _Robert L. Geromy_

VICE PRESIDENT

## ACCEPTANCE

this, on the 1st. day of May, 2006.
   Accepted by (Builders Resource Inc.):

_____
Signature

_____
Print Name

_____
Title

EXHIBIT C

 107 - Notice of mechanic's lien, affidavit of service, individual, partnership or corporation, New York City... to Civil with County Clerk. Law Lien, 1 of ..., RPL

Julius Blumberg, Publisher, NYC 10013
www.blumberg.com

### NOTICE OF MECHANIC'S LIEN

To the Clerk of the County of Bronx

and all others whom it may concern:

**Please Take Notice,** that ALF Rental Company, Inc.

as lienor(s) have and claim a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor(s) are
ALF Rental Company, Inc.

being a (partnership) ☒ (corporation) composed of 3 shareholders

whose business address is at 122 W. Sheffield Avenue, Englewood, NJ 07531
and whose principal place of business is at same

(1a) The name and address of lienor's attorney, if any Babn Herzfeld & Multer, LLP
555 Fifth Avenue, NY NY 10017

(2) The owner of the real property is Consolidated Edison Co. of NY, Inc.
and the interest of the owner as far as known to the lienor(s) is fee

(3) The name of the person by whom the lienor(s) was (were) employed is Builders Resource, Inc.
The name of the person to whom the lienor(s) furnished or is (are) to furnish material or for whom the lienor(s)
performed or is (are) to perform professional services is Builders Resource Inc.
The name of the person with whom the contract was made is Builders Resource
The labor performed was

The material furnished was timber mats to support cranes

The materials actually manufactured for but not delivered to the real property are

The agreed price and value of the labor performed is $
The agreed price and value of the material furnished is $
The agreed price and value of the material actually mfd. for but not delivered to the real prop. is $
Total agreed price and value   $

(5) The amount unpaid to the lienor(s) for said labor performed is $
The amount unpaid to the lienor(s) for said material furnished is $ 58,538 to 10/1/06
The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is $
Total amount unpaid   $

The total amount claimed for which this lien is filed is $58,538

(6) The time when the first item of work was performed was
The time when the first item of material was furnished is 5/9/06
The time when the last item of work was performed was
The time when the last item of material was furnished was open

(7) The property subject to the lien is situated in the Borough of Bronx    County of Bronx
City of New York, on the                side of                                       , being                        feet and
inches                 of                                                                                                feet
and                    inches wide, front and rear by                    feet and                    inches deep on each side,
and known as Number 415 Bruckner Blvd., Bronx, NY, Lot 5, Block 2599

That said labor and materials were performed and furnished for and used in the improvement of the real property
hereinbefore described. That 8 months (4 months if a single family dwelling) have not elapsed since the last item of work
performed, or from the last items of materials furnished, or since the completion of the contract, or since the final performance
of the work, or since the final furnishing of the materials for which this lien is claimed.

Dated 10/5/~~05~~ 06

The name signed must be printed beneath
Robert L. Gerosa, Jr.

Verification

STATE OF NEW YORK, COUNTY OF                                    ss.:                    INDIVIDUAL OR PARTNER

that deponent is (one of the co-partnership named in the within notice of lien and) the lienor(s) mentioned in the foregoing notice of lien; that deponent has read the said notice and knows the contents thereof; and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

Sworn to before me on

STATE OF NEW ~~YORK~~ *Jersey*, COUNTY OF *Bergen*                ss.:                    CORPORATION

Robert L. Gerosa, Jr.                                           being duly sworn, says that deponent is the ~~President~~ *VICE PRESIDENT* of ALF Rental Company, Inc. herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is an officer, to wit, the ~~President~~ *VICE PRESIDENT* of ALF Rental Co, Inc. which is a New Jersey                                corporation, and deponent is familiar with the facts and circumstances herein.
The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon deponent's knowledge are as follows:
personal knowledge and books and records

Sworn to before me on  10-12-06                    *Bonnie P. Jackson*

OFFICIAL SEAL
BONNIE P. JACKSON
NOTARY PUBLIC-NEW JERSEY
My Commission Expires Oct. 28, 2008

Editor's note: Notice of Mechanic's Lien may be filed at any time during progress of the work and the furnishing of the materials, or, within eight months (four months if a single family dwelling) after the completion of the contract, or the final performance of the work, or the final furnishing of the materials. The Notice of Mechanic's Lien must be filed in the Clerk's office of the county where the property is situated. If such property is situated in two or more counties, file the Notice of Mechanic's Lien in the office of the Clerk of each county. See Lien Law § 10.

'77 10:08a   Richard L. Herzfeld          212-986-5316          P.2

167 - Notice of mechanic's lien, affidavit of service, individual, partnership or corporation, New York City to be filed with County Clerk, Lien Law, § et seq. AM

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

## NOTICE OF MECHANIC'S LIEN

To the Clerk of the County of Bronx                                    and all others whom it may concern:

**Please Take Notice**, that ALF Rental Company, Inc.

as lienor(s) have and claim a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor(s) are
    ALF Rental Company, Inc.

being a (partnership) ⊠ (corporation) composed of 3 shareholders

whose business address is at 122 W. Sheffield Avenue, Englewood, NJ 07631
and whose principal place of business is at   same

(1a) The name and address of lienor's attorney, if any Bahn Herzfeld & Multer, LLP
     555 Fifth Avenue, NY NY 10017
(2) The owner of the real property is Consolidated Edison Co. of NY, Inc.
    and the interest of the owner as far as known to the lienor(s) is   fee
(3) The name of the person by whom the lienor(s) was (were) employed is Builders Resource, Inc.
    The name of the person to whom the lienor(s) furnished or is (are) to furnish material or for whom the lienor(s)
    performed or is (are) to perform professional services is Builders Resource Inc.
    The name of the person with whom the contract was made is Builders Resource
    The labor performed was

    The material furnished was timber mats to support cranes

    The materials actually manufactured for but not delivered to the real property are

    The agreed price and value of the labor performed is $
    The agreed price and value of the material furnished is $
    The agreed price and value of the material actually mfd. for but not delivered to the real prop. is $
                                    Total agreed price and value   $
(5) The amount unpaid to the lienor(s) for said labor performed is $
    The amount unpaid to the lienor(s) for said material furnished is $   18,611
    The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is $
                                    Total amount unpaid   $

    The total amount claimed for which this lien is filed is $!  18,611
(6) The time when the first item of work was performed was
    The time when the first item of material was furnished was   10/1/06
    The time when the last item of work was performed was
    The time when the last item of material was furnished was   10/16/06
(7) The property subject to the lien is situated in the Borough of Bronx          County of Bronx
    City of New York, on the           side of                                    feet and
                    inches wide,     of                              , being           feet
    and              inches wide, front and rear by              feet and     inches deep on each side,
    and known as Number 415 Bruckner Blvd., Bronx, NY          Lot 5, block 2599

    That said labor and materials were performed and furnished for and used in the improvement of the real property
hereinbefore described. That 8 months (4 months if a single family dwelling) have not elapsed dating from the last item of work
performed, or from the last item of materials furnished, or since the completion of the contract, or since the final performance
of the work, or since the final furnishing of the materials for which this lien is claimed.

Dated: 3/1/07

                                        _Robert L. Gerosa, Jr._
                                        The name signed must be printed beneath
                                        Robert L. Gerosa, Jr.

2007 MAR -5  AM 10: 21
COUNTY CLERK
BRONX COUNTY
DOCKET DEPARTMENT

FILED

Verification

STATE OF NEW YORK, COUNTY OF                                    ss.:                    INDIVIDUAL OR PARTNER

being duly sworn, says
that deponent is (one of the co-partnership named in the within notice of lien and) the lienor(s) mentioned in the foregoing
notice of lien; that deponent has read the said notice and knows the contents thereof; and that the same is true to deponent's own
knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent
believes it to be true.

Sworn to before me on    *1st March 2007*

STATE OF NEW JERSEY    COUNTY OF BERGEN                        CORPORATION

Robert L. Gerosa, Jr.                                    being duly sworn, says
that deponent is the         Vice President        of ALF Rental Company, Inc.
herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to
deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to
those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is an officer,
to wit, the    Vice President        of Alf Rental Co, Inc.
which is a New Jersey    corporation, and deponent is familiar with the facts and circumstances herein.
The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon
deponent's knowledge are as follows:
personal knowledge and books and records

Sworn to before me on  1st

March 2007

Bonnie P. Jackson

OFFICIAL SEAL
BONNIE P. JACKSON
NOTARY PUBLIC-NEW JERSEY
My Commission Expires Oct. 26, 2008

Editor's note: Notice of Mechanic's Lien may be filed at any time during progress of the work and the furnishing of the materials,
or, within eight months (four months if a single family dwelling) after the completion of the contract, or the final performance of
the work, or the final furnishing of the materials. The Notice of Mechanic's Lien must be filed in the Clerk's office of the county
where the property is situated. If such property is situated in two or more counties, file the Notice of Mechanic's Lien in the office
of the Clerk of each county. See Lien Law § 10.

**EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALF RENTAL COMPANY, INC.,

                        Plaintiff,

            -against-

BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL
CONTRACTORS CORP., CONSOLIDATED EDISON
OF NEW YORK, INC., TERRA DINAMICA, LLC,
CORESLAB    STRUCTURES,    and    NICOLSON
CONSTRUCTION CO.,

                        Defendants.
-------------------------------------------------------------------X

Docket No.:  07 CV 3148 (KMK)

**ANSWER AND
DEMAND FOR JURY**

DEFENDANT BUILDING RESOURCES, INC., by its attorneys, Lambert & Weiss, as

for its answer to the complaint alleges as follows:

    1.    Denies having knowledge or information sufficient to form a belief as to the truth

thereof of the allegations contained in paragraph "1" of the complaint.

    2.    Denies the allegations contained in paragraph "2" of the complaint, except admits

that at certain times it did business within the State of New York.

    3.    Denies having knowledge or information sufficient to form a belief as to the truth

thereof of the allegations contained in paragraph "3" of the complaint.

    4.    Denies having knowledge or information sufficient to form a belief as to the truth

thereof of the allegations contained in paragraph "4" of the complaint.

    5.    Denies having knowledge or information sufficient to form a belief as to the truth

thereof of the allegations contained in paragraph "5" of the complaint.

    6.    Denies having knowledge or information sufficient to form a belief as to the truth

thereof of the allegations contained in paragraph "6" of the complaint, except alleges upon

information and belief that D'Onofrio was believed to be the general contractor for a certain project.

7.    Denies the allegations contained in Paragraph "7" of the complaint.

## IN ANSWER TO THE FIRST CAUSE OF ACTION

8.    Denies the allegations contained in paragraph "8" of the complaint.

9.    Denies the allegations contained in paragraph "9" of the complaint.

10.    Denies the allegations contained in paragraph "10" of the complaint.

11.    Denies the allegations contained in paragraph "11" of the complaint.

12.    Denies the allegations contained in paragraph "12" of the complaint.

13.    Denies the allegations contained in paragraph "13" of the complaint.

14.    Denies the allegations contained in paragraph "14" of the complaint.

15.    Denies the allegations contained in paragraph "15" of the complaint.

16.    Denies the allegations contained in paragraph "16" of the complaint.

17.    Denies the allegations contained in paragraph "17" of the complaint.

## IN ANSWER TO THE SECOND CAUSE OF ACTION

18.    In response to paragraph "18" of the complaint, this defendant repeats and realleges each and every allegation contained herein in response to paragraphs "1" through "17" of the complaint, as though fully set forth at length herein.

19.    Denies the allegations contained in paragraph "19" of the complaint.

20.    Denies the allegations contained in paragraph "20" of the complaint.

21.    Denies the allegations contained in paragraph "21" of the complaint.

## IN ANSWER TO THE THIRD CAUSE OF ACTION

22. In response to paragraph "22" of the complaint, defendant repeats and realleges each and every allegation contained herein in response to paragraphs "1" through "21" of the complaint, as though fully set forth at length herein.

23. Denies the allegations contained in paragraph "23" of the complaint.

24. Denies the allegations contained in paragraph "24" of the complaint.

## IN ANSWER TO THE FOURTH CAUSE OF ACTION

25. In response to Paragraph "25" of the complaint, defendant repeats and realleges each and every allegation contained herein in response to paragraphs "1" through "24" of the complaint, as though fully set forth at length herein.

26. Denies having knowledge or information sufficient to form a belief as to the truth thereof of the allegations contained in paragraph "26" of the complaint.

27. Denies having knowledge or information sufficient to form a belief as to the truth thereof of the allegations contained in paragraph "27" of the complaint.

28. Denies having knowledge or information sufficient to form a belief as to the truth thereof of the allegations contained in paragraph "28" of the complaint.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

29. The complaint fails to state a claim for which relief may be granted as against this defendant.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

30. Plaintiff has waived any and all claims asserted in its complaint and is estopped from asserting those claims.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

31.   To the extent that any alleged loss occurred, such loss directly and proximately resulted from plaintiff's own independent mishandling of its own affairs and any purported damage caused to plaintiff is wholly unrelated to any purported acts, statements or alleged obligations of defendant.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

32.   Plaintiff has failed to mitigate its damages.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

33.   Plaintiff's claims are barred by release, payment and/or waiver.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

34.   Plaintiff's claims, or portions thereof, are barred by plaintiff's failure to satisfy statutory and/or contractual conditions precedent and/or requirements.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

35.   Upon information and belief, any monies due or owing to plaintiff, if any, are less than pleaded and/or improperly calculated.

36.   By reason of the foregoing, defendant is not liable to plaintiff, or in the alternative, plaintiff's claim should be reduced and defendant is entitled to a set off.

## AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

37.   Plaintiff's claims, or portions thereof, are barred by the applicable statutes of limitations.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

38.   Upon information and belief, plaintiff does not have a valid mechanic's lien under the laws of the State of New York.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

39.    There was no privity between plaintiff and this defendant.

### DEMAND FOR JURY

Defendant requests a jury for all counts that are triable before a jury.

**WHEREFORE,** defendant Building Resources, Inc. demands judgment dismissing plaintiff's complaint with costs, fees and disbursements.

Dated: New York, New York
       April 26, 2007

Yours, etc.

LAMBERT & WEISS
*Attorneys for Defendant*

By: _____
STEPHEN H. MARCUS (SHM 2370)
61 Broadway, Suite 2020
New York, New York 10006
(212) 344-3100

To:    BAHN, HERZFELD & MUTLER, LLP
       *Attorneys for Plaintiff*
       555 Fifth Avenue
       New York, New York 10017
       Attn: Richard L. Herzfeld

       Thomas W. Moore, III
       TREACY SCHAFFEL MOORE & MUELLER
       *Attorneys for Defendant*
       *D'Onofrio General Contractors Corp.*
       111 Broadway, Suite 402
       New York, New York 10006

       CONSOLIDATED EDISON COMPANY
       4 Irving Place
       New York, New York 10003

- 5 -

**EXHIBIT E**

## LAMBERT & WEISS
### COUNSELORS AT LAW

ARTHUR N. LAMBERT *
MONROE WEISS * * * * *
MARC LEPELSTAT * *
RICHARD A. LAMBERT * *
DENNIS O'NEIL COWLING *
M. DIANE DUSZAK *
ALAN M. GOLDBERG *
LAWRENCE B. LAMBERT * *
DANIEL W. WHITE *
————
COUNSEL
STEPHEN H. MARCUS * * *

CHRISTIE M. BIRD *
ERIC M. EUSANIO *
VICTOR KAO *
ALAN C. KELHOFFER * * * *
DANIEL S. KRAMER *
ROBERT NIZEWITZ * *
BRENDAN W. NOLAN *
JEFFREY RUBINSTEIN *
* MEMBER N.Y. BAR
† MEMBER N.Y. AND N.J. BARS
* * MEMBER N.Y. N.J. AND CT. BARS
* * * MEMBER N.Y. N.J. AND CA. BARS
* * * * * MEMBER N.Y., N.J. AND FL. BARS

61 BROADWAY
NEW YORK, NEW YORK 10006
TEL: (212) 344-3100
(800) 536-6805
FAX: (212) 422-4047
E-MAIL: GENERAL@LAMBERTWEISS.COM

NEW JERSEY OFFICE
301 ROUTE 17 NORTH
SUITE 800
RUTHERFORD, NEW JERSEY 07070
(201) 939-0191

May 8, 2007

Hon. Kenneth M. Karas
United States District Court
Southern District of New York
500 Pearl Street, Room 920
New York, New York 10007

Re:    *ALF Rental Company, Inc. v. Builders Resource, Inc., et al.*
Docket No.:  07 CV 3148 (KMK)
Our File No.:  5790

Dear Judge Karas:

We are counsel for the defendant/third-party plaintiff Builders Resource, Inc.   We enclose two copies of the third-party summons and third-party complaint which we have filed in the above action.

Respectfully,

LAMBERT & WEISS

STEPHEN H. MARCUS

SHM sp
Enc.

cc:    Richard L. Herzfeld (w. enc.)
Thomas W. Moore, III (w. enc.)
Consolidated Edison Company (w. enc.)
Terra Dinamica, LLC (w. enc.)
Coreslab Structures, Inc. (w. enc.)
Nicholson Construction Co. (wenc.)

AO 441 (Rev. 5/85) Third Party Summons in a Civil Action - SDNY WEB 5/99

# United States District Court

SOUTHERN _____ DISTRICT OF ___NEW YORK___

PLAINTIFF

ALF RENTAL COMPANY INC.

**THIRD PARTY SUMMONS IN A CIVIL ACTION**

V. DEFENDANT AND THIRD PARTY PLAINTIFF

BUILDERS RESOURCE INC.

CASE NUMBER:   07 CV 3148 (KMK)

V  THIRD PARTY DEFENDANT

BAY CRANE SERVICES  INC.
To: (Name and Address of Third Party Defendant)

Bay Crane Services Inc.
11-02 43rd Avenue
Long Island City, NY 11101

**YOU ARE HEREBY SUMMONED** and required to file with the Clerk of this court upon

PLAINTIFF'S ATTORNEY (name and address)

Bahn, Herzfeld & Mutler, LLP
555 Fifth Avenue
New York, New York 10017
(212) 818-9019

DEFENDANT AND THIRD-PARTY PLAINTIFF'S ATTORNEY (name and address)

Lambert & Weiss
61 Broadway, Suite 2020
New York, New York 10006
(212) 344-3100

an answer to the third-party complaint which is herewith served upon you within ____20____ days after the service of this summons upon you exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the third-party complaint.  There is also served upon you herewith a copy of the complaint of the plaintiff.  You have the option of answering or not answering the plaintiff's complaint, *unless* (1) this is a case within Rule 9(h) Federal Rules of Civil Procedure, *and* (2) the third-party plaintiff is demanding judgment against *you* in favor of the original plaintiff under the circumstances described in Rule 14(c) Federal Rules of Civil Procedure, in which situation you are required to make your defenses, if any, to the claim of plaintiff as well as to the claim of the third-party plaintiff.

J. MICHAEL McMAHON

CLERK

(BY) DEPUTY CLERK

MAY 0 4 2007

May     , 2007

DATE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ALF RENTAL COMPANY, INC.,

                              Plaintiff,                          Docket No.: 07 CV 3148 (KMK)

            -against-                                             **THIRD-PARTY COMPLAINT**

BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL
CONTRACTORS CORP., CONSOLIDATED EDISON
OF NEW YORK, INC., TERRA DINAMICA, LLC,
CORESLAB    STRUCTURES,    and    NICOLSON
CONSTRUCTION CO.,

                              Defendants.
------------------------------------------------------------------X

BUILDERS RESOURCE, INC.,

                              Third-Party Plaintiff,

            -against-

BAY CRANE SERVICE INC.,

                              Third-Party Defendant.
------------------------------------------------------------------X

DEFENDANT AND THIRD-PARTY PLAINTIFF Builders Resource, Inc., as and for its

third-party complaint, by its attorneys Lambert & Weiss, alleges upon information and belief as

follows:

    1.    Defendant and third-party plaintiff Builders Resource, Inc. is a Massachusetts

corporation with offices at 180 Main Street, Blackstone, Massachusetts.

    2.    Upon information and belief, third-party plaintiff Bay Crane Service Inc. is a New

York corporation with offices located at 11-02 43rd Avenue, Long Island City, New York 11101.

    3.    Starting in or about May, 2006, third-party plaintiff entered into certain rental

agreements with third-party defendant whereby third-party defendant provided certain cranes to

the defendant and third-party plaintiff, along with timber crane mats, at a certain construction site located in Bronx County, City and State of New York.

4.    In or about March, 2007, plaintiff ALF Rental Company, Inc. commenced an action against defendant and third-party plaintiff Builders Resource, Inc. and other defendants in the Supreme Court, Bronx County, alleging that defendant and third-party plaintiff owed the plaintiff a certain sum for the rental of hardwood crane mats.  A copy of ALF's complaint is annexed hereto as Exhibit "A".

5.    Thereafter, on or about April 19, 2007, defendant and third-party plaintiff filed   a notice of removal in the U.S. District Court, Southern District of New York to remove the ALF action from the Supreme Court, Bronx County to the U.S. District Court, Southern District of New York.

6.    Thereafter, defendant and third-party plaintiff interposed an answer to the complaint, a copy of which is annexed hereto as Exhibit "B".

7.    In its answer, the defendant and third-party plaintiff alleged that it had no privity of contract with the plaintiff ALF Rental Company, Inc., and that the third-party plaintiff did not owe any money to the plaintiff for the timber crane mats.

8.    The obligation, if any, to pay the plaintiff for the timber crane mats is the obligation of the third-party defendant and not of the third-party plaintiff.

9.    In the event that the plaintiff ALF recovers a judgment against the third-party plaintiff in this action by reason of the allegations set forth in its complaint, such responsibility on the part of the third-party defendant by operation of law or otherwise, would have been caused and brought about by the failure of the third-party defendant to pay the plaintiff for the timber crane mats.

19.    Accordingly, the third-party defendant would be liable to the third-party plaintiff, Builders Resource, Inc. for any amounts recoverable upon the claims made against the third-party plaintiff in this action.

**WHEREFORE**, in the event that plaintiff recovers judgment against defendant Builders Resource, Inc., said defendant and third-party plaintiff demands judgment over and against third-party defendant Bay Crane Services Inc. for full indemnification, or, in the alternative, for contribution, awarding defendant and third-party plaintiff Builders Resource, Inc. such other, and further relief as may be just and proper, and awarding defendant and third-party plaintiff Builders Resource, Inc., fees, costs and disbursements.

Dated: New York, New York
         May 4, 2007

Yours, etc.

LAMBERT & WEISS
*Attorneys for Defendant and
Third-Party Plaintiff Builders Resource, Inc.*

By: _____
       STEPHEN H. MARCUS (SHM 2370)
       61 Broadway, Suite 2020
       New York, New York 10006
       (212) 344-3100

**Exhibit "A"**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

Index No. 89/0/07
Date Purchased: 3/15/07

----------------------------------------x

ALF RENTAL COMPANY, INC. ,

**SUMMONS**

Plaintiff,

Plaintiff designates
Bronx County as
the place of trial.

- against -

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES and NICOLSON
CONSTRUCTION CO.,

The basis of venue is
the location of the
subject property

Defendant.

----------------------------------------x

To the above named Defendant(s):

YOU ARE HEREBY SUMMONED to answer the complaint in this action
and serve a copy of your answer, or, if the complaint is not served
with this summons, to serve a notice of appearance, on the
plaintiff's attorneys within 20 days after the service of this
summons, exclusive of the day of service (or within 30 days after
the service is complete if this summons is not personally delivered
to you within the State of New York); and in case of your failure
to appear or answer, judgment will be taken against you by default
for the relief demanded in the complaint.

NOTICE OF NATURE OF ACTION AND RELIEF SOUGHT

THE OBJECT of the above captioned action is to foreclose
mechanics liens totaling $77,149 recorded in the office of the
Clerk of the County of the Bronx, covering the premises known as
Mott Haven Substation, located at 415 Bruckner Blvd., Bronx, NY,
Bronx County, City and State of New York, Block 2599, Lot 5, and a
judgment for moneys due and owing.

The relief sought in the within action is a final judgment
directing the sale of the premises described above to satisfy the
debt secured by the mechanics lien and a judgment for moneys due
and owing.

Dated:  New York, New York
        March 14, 2007

To:  BUILDERS RESOURCE, INC.
     101 Nasonville Road
     Nasonville RI 02830

     D'ONOFRIO GENERAL CONTRACTORS CORP.
     202 28th Street
     Brooklyn, NY 11232

     CONSOLIDATED EDISON OF NEW YORK, INC.
     4 Irving Place
     NY NY 10003

     TERRA DINAMICA, LLC
     5 Meadowbrook Road
     Granby Ct.  06035

     CORESLAB STRUCTURES
     1023 Waterbury Rd.
     Thomaston, Ct.

     NICOLSON CONSTRUCTION CO.
     12 McClane Street
     Cuddy, Pa. 15031

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------x
ALF RENTAL COMPANY, INC.                         :
                            Plaintiff,           :   VERIFIED
                                                 :   COMPLAINT
        -against-                                :
                                                 :   Index No.
BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL       :
CONTRACTORS CORP., CONSOLIDATED EDISON OF        :
NEW YORK, INC., TERRA DINAMICA, LLC, CORESLAB    :
STRUCTURES and NICOLSON CONSTRUCTION CO.,        :
                            Defendants           :
-----------------------------------------------x

Plaintiff, ALF RENTAL COMPANY, INC., by its attorneys, BAHN, HERZFELD & MULTER, LLP, for its complaint, alleges as follows:

1.    Plaintiff, ALF RENTAL COMPANY, INC. ("ALF"), is and at all times hereinafter mentioned was, a corporation organized and existing pursuant to the laws of the State of New Jersey.

2.    Upon information and belief, defendant Builders Resource, Inc. ("Builders") is, and at all times hereinafter mentioned was, a corporation organized and exiting under the laws of the State of Rhode Island, doing business within the State of New York.

3.    Upon information and belief, defendant D'Onofrio General Contractors Corp. ("D'Onofrio"), is, and at all times hereinafter mentioned was,   a corporation, organized under and existing pursuant to the laws of the State of New York.

4. Upon information and belief, defendant Consolidated Edison of New York, Inc. ("Con Ed") is, and at all times hereinafter mentioned was, is the fee owner of premises known as York Haven

"Property").

5.    Upon information and belief, defendants Terra Dinamica, LLC, Coreslab Structures and Nicolson Construction Co. are parties claiming to have some interest in the Property by the filing of a Mechanic's Lien and/or a lis pendens in the Office of the Clerk of the County of the Bronx.

6.    Upon information and belief, D'Onofrio was the general contractor on a project for the improvement of the Property on behalf of Con Ed (the "Project").

7.    Upon information and belief, Builders was a subcontractor to D'Onofrio on the Project.

### FIRST CAUSE OF ACTION AGAINST BUILDERS

8.    On or about May 1, 2006, plaintiff and Builders entered into an agreement whereby plaintiff agreed to furnish certain hardwood crane mats to Builders for use in connection with the Project.

9.    The terms of the agreement were as set forth in the confirmation provided by plaintiff and provided to Builders, annexed as Exhibit B.

10.    Plaintiff's compensation was agreed to as set forth in the confirmation.

11.    Thereafter, plaintiff delivered the mats which were used in connection with the Project.

13. Unpaid rental charges as of October 1, 2006 totaled $58,538.

14. Additional rental charges of $13,746.30 accrued through March 1, 2007 and continue to accrue at approximately $84 per diem.

15. In addition, in accordance with the parties' agreement, any mats which were not returned were to be paid for at a rate set forth in Exhibit B.

16. 12 mats were not returned and Builders has claimed it cannot locate them. Based upon the parties' agreement, there is due and owing an additional $17,200.

17. Pursuant to the parties' agreement, there is due and owing from Builders to plaintiff, the sum of $89,484.41.

SECOND CASE OF ACTION AGAINST BUILDERS

18. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 17 of the complaint as if fully set forth herein.

19. Plaintiff invoiced Builders for the periodic rentals in the total amount of $72,284.41 to date.

20. Builders made no complaint with respect to the amount of the invoices.

21. By reason of the foregoing, there is an account stated and there is due and owing from Builders to plaintiff the sum of $72,284.41.

set forth herein.

23. The amounts set forth above are a fair and reasonable value for the materials supplied by the Plaintiff.

24. By reason of the foregoing, there is due and owing from Builders to plaintiff the sum of $89,484.41.

FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

25. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 24 of the complaint as if fully set forth herein.

26. On or about October 5, 2006 and March 5, 2007, each within eight (8) months after the last items of work and materials were furnished to the premises, plaintiff filed Notices of Lien in writing in the Office of the Clerk of the County of Bronx against the Property in the respective amounts of $58,538.11 and $18,611, for an aggregate of $77,149.11 (Exhibit C).

27. Said Notices contained all of the information required by the appropriate sections of the N.Y. Lien Law.

28. Said Liens have not been paid, cancelled or discharged of record, and no other proceeding has heretofore been brought in law or in equity to recover the amount claimed therein.

WHEREFORE, Plaintiff demands judgment as follows:

(1) On the first and third causes of action against BUILDERS, in the sum of $89,484.41, with interest thereon from the June 1,
2007,

(3) On the fourth cause of action against Defendants, adjudging and determining that the Notices of Lien filed by Plaintiff are good, valid and subsisting liens in the total amount of $77,149.11 against the interest of the Defendants in the real property above described;

(4) That the Defendants and all persons claiming under them or either of them or any of them subsequent to the filing of the Notice of Pendency in this action in the office of the Clerk of the County of the Bronx in which said real property is situate, and every person whose conveyance or encumbrance is subsequent or subsequently recorded, filed, or docketed, be forever barred and foreclosed of all right, claim, lien, and equity of redemption in said real property or any part thereof;

(5) That the interest of the Defendants as of the date of filing of said Notices of Lien may be decreed to be sold according to law;

(6) That the moneys arising from said sale may be brought into court;

(7) That Plaintiff may be paid therefrom the amount adjudged to be due to the Plaintiff, with interest thereon to the time of such payment, together with the costs and expenses of this action and the expenses of such sale, so far as the amount of such money properly applicable thereto will pay the same;

does not have a valid and subsisting lien upon said real property,
the Plaintiff may have a personal judgment against Builders for the
sum of $89,484.41 with interest thereon from the June 1, 2006; and

(10) That Plaintiff have such other and further relief, or
both, as shall be equitable, just and proper.

Dated:    New York, New York
          March 14, 2007

                              BAHN, HERZFELD & MULTER, LLP
                              Attorneys for Plaintiff


                              By: RICHARD L. HERZFELD
                              555 Fifth Avenue
                              New York, N.Y.  10017
                              (212) 818-9019

<u>VERIFICATION</u>

STATE OF NEW YORK:
                          s.s.:
COUNTY OF NEW YORK:

RICHARD L. HERZFELD, being duly sworn, deposes and says:

I am the attorney for plaintiff in this action and the foregoing complaint is true to my own knowledge, except as to matters therein stated on information and belief and as to those matters I believe to be true; the grounds of my belief as to all matters not stated upon my knowledge are correspondence and other writings furnished to me by plaintiff and interviews with officers and employees of plaintiff; and the reason why the verification is not made by plaintiff is that the plaintiff is not in the county where I maintain my office.

_____
RICHARD L. HERZFELD

Sworn to before me this
14ᵗʰ day of March, 2007

_____
Notary Public

ANDREW JAY MULTER
Notary Public, State of New York
No. 02MU5066734
Qualified in New York County
Commission Expires 09.30.20 / 0

EXHIBIT A

# HARVEY-GEARY ASSOCIATES, INC.
### 387 Sixth Avenue
### Brooklyn, New York 11215

(718)768-3500

Fax: (718)768-2550

## SCHEDULE "A"

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of The Bronx, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the northwesterly side of Bruckner Boulevard with the southerly side of East 144th Street;

RUNNING THENCE westerly along the southerly side of East 144th Street, 360.45 feet to a point;

RUNNING THENCE southerly along a line forming an angle of 90 degrees 17 minutes 00 seconds on the southwest with the southerly side of East 144th Street, part of the distance through a party wall, 37.56 feet to a point;

RUNNING THENCE easterly at right angles to the last mentioned course, part of the distance through a party wall, 14.67 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, part of a distance through a party wall, 220.07 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, part of a distance through a party wall, 30.00 feet to a point;

RUNNING THENCE southerly at right angles to the last mentioned course, part of a distance through a party wall, 1.16 feet to a point;

RUNNING THENCE westerly at right angles to the last mentioned course, 259.55 feet to the easterly side of Southern Boulevard;

RUNNING THENCE southerly along the easterly side of Southern Boulevard, 378.19 feet to the land now or formerly of New York and Harlem Rail Road;

RUNNING THENCE southeasterly along the land now or formerly of New York and Harlem Rail Road along a line forming an angle of 122 degrees 41 minutes 38 seconds on the northeast with the easterly side of Southern Boulevard, 130.13 feet to the northwesterly side of Bruckner Boulevard;

HARVEY GEARY ASSOC INC Fax.1-718-768-2550    Mar 13 2007  14.23    P 05

**HARVEY-GEARY ASSOCIATES, INC.**
387 Sixth Avenue
Brooklyn, New York 11215

(718)768-3500

Fax: (718)768-2550

SCHEDULE "A" (continued)

**RUNNING THENCE** northeasterly along the northwesterly side of Bruckner Boulevard, along a curve bearing to the left having a radius of 1000 feet an arc length of 362.88 feet to a point of tangency;

**RUNNING THENCE** northeasterly along the northwesterly side of Bruckner Boulevard, 521.94 feet to the corner the point or place of BEGINNING.

EXHIBIT 8

# ALF RENTAL COMPANY INC.

122 W. Sheffield Avenue
Englewood, New Jersey 07631
(201) 871-9889 • Fax (201) 871-9858

## EQUIPMENT
## RENTAL AGREEMENT

BUILDERS RESOURCE INC.
101 Nasonville Road
Nasonville, RI 02830

Tel.#401-762-0262
Fax#401-762-0312

Attention: Steve Allard (Cell#401-623-6135)

WE PROPOSE to rent you the following equipment subject to terms and conditions hereinafter stated:
Seventy Eight (78) Hardwood Crane Mats: (50) 24'x4'x1', (20) 26'x4'x1' & (8) 30'x4'x1'.
If rented equipment is not returned or returned in a damaged condition, you are responsible for the amount of
$1,300.00 per 24' Mat, $1,450 per 26' Mat & $1,700 per 30' Mat.

RENTAL is to be at the rate of $6.00 per 24' Mat/Day, $7.50 per 26' Mat/Day & $9.00 per 30' Mat/Day from the date of delivery
until equipment is returned to us. Rental rate based on (7) day work week with a minimum of a (7) day rental.

TERMS: NET 30 DAYS FOB OUR YARD.

DELIVERY of equipment is to be made to you on: Rental on all Mats began on May 1, 2006 (Mats held for this job), for use at
Mott Haven (Bronx).
    ALL TRANSPORTATION CHARGES from point of delivery to destination and return charges to point of delivery are to be
paid by you. Loading Charge of $150 per trailer and an Unloading Charge of $150 per trailer in our yard.

    YOU ARE TO ASSUME full responsibility for equipment during rental period, and are to return it to us in as good condition as
received less wear incident to normal use. An $80 per Unit cleaning and/or maintenance charge will be incurred if the item is returned
to us with debris (dirt, garbage, steel, etc.). If wood dunnage (spacers) are not returned, a charge of $6.00 per unit will be incurred.
    WE ASSUME NO LIABILITY for loss or damage on account of accidents, delays due to defective material or delays in the
delivery or removal of equipment.
    YOU REPRESENT THAT YOU ARE FULLY RESPONSIBLE with proper methods for installation, use and maintenance of
the equipment. You are solely responsible for its installation, use and maintenance and agree to do so in a proper and safe manner.
    YOU SHALL INDEMNIFY US AND HOLD US HARMLESS against all losses, claims, suits, damages, expenses and/or
penalties, including attorney's fees, arising out of any matter concerning the equipment occurring during the rental period or while the
equipment is otherwise in your possession, including but not limited to claims of personal injury or property damage.
    YOU SHALL SECURE general liability insurance policy, naming us as a coinsured, to afford protection with limits, for each
occurrence, of not less than Two Million Dollars ($2,000,000.00) with respect to personal injury and death, and Five Hundred
Thousand Dollars ($500,000.00) with respect to property damage.
    WE RESERVE THE RIGHT, if rental is in default under the terms of this agreement, or if in our opinion equipment is being
damaged in excess of ordinary wear and tear, to take possession of our property at once

    ENTIRE AGREEMENT. This agreement sets forth the entire agreement and understanding between the parties on the subject
matter thereof, and merges all prior discussions and negotiations between them. Neither of the parties shall be bound by any
conditions, definitions, representatives or warranties with respect to the subject matter of this agreement other than as expressly
provided herein or as duly set forth on or subsequent to the date hereof in a writing signed by a duly authorized representative of the
party to be bound thereby.

    ATTORNEYS FEES. In the event of a breach of this agreement, the injured party shall be entitled to recover reasonable
attorneys' fees and costs of collection.

NOTICE - If shipment of this equipment is ordered by Lessee who neglects to return this contract signed, it shall be considered as in
full effect when such shipment is made.

NOTE: Please sign copy of this contract & return to. ALF RENTAL COMPANY, INC

By _____
VICE PRESIDENT

ACCEPTANCE

Accepted this on the 1st day of May, 2006.
Accepted by: Builders Resource Inc.

EXHIBIT C


107 - Notice of mechanic's lien, affidavits of service, individual, partnership or corporation, New York City, to be filed with County Clerk, Lien Law, § et seq. §.94.

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

## NOTICE OF MECHANIC'S LIEN

To the Clerk of the County of Bronx

**Please Take Notice,** that ALF Rental Company, Inc.

and all others whom it may concern:

as lienor(s) have and claim a lien on the real property hereinafter described as follows:

(1) The names and residences of the lienor(s) are
ALF Rental Company, Inc.

being a (partnership) ☒ (corporation) composed of 3 shareholders

whose business address is at 122 W. Sheffield Avenue, Englewood, NJ 07631
and whose principal place of business is at same

(1a) The name and address of lienor's attorney, if any Bahn Herzfeld & Multer, LLP
555 Fifth Avenue, NY NY 10017

(2) The owner of the real property is Consolidated Edison Co. of NY, Inc.
and the interest of the owner as far as known to the lienor(s) is fee

(3) The name of the person by whom the lienor(s) was (were) employed is Builders Resource, Inc.
The name of the person to whom the lienor(s) furnished or is (are) to furnish material or for whom the lienor(s)
performed or is (are) to perform professional services is Builders Resource Inc.
The name of the person with whom the contract was made is Builders Resource
The labor performed was

The material furnished was timber mats to support cranes

The materials actually manufactured for but not delivered to the real property are

The agreed price and value of the labor performed is $
The agreed price and value of the material furnished is $
The agreed price and value of the material actually mfd. for but not delivered to the real prop. is $
                                                        Total agreed price and value   $

(5) The amount unpaid to the lienor(s) for said labor performed is $
The amount unpaid to the lienor(s) for said material furnished is $ 58,538 to 10/1/06
The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is $
                                                        Total amount unpaid   $

The total amount claimed for which this lien is filed is $58,538

(6) The time when the first item of work was performed was
The time when the first item of material was furnished was 5/9/06
The time when the last item of work was performed was
The time when the last item of material was furnished was open

(7) The property subject to the lien is situated in the Borough of Bronx
City of New York, on the                    side of                        County of Bronx
            inches
and            inches wide, front and rear by                   feet and          being          feet and
                                                                                               feet
and known as Number 415 Bruckner Blvd.. Bronx, NY   645 3/4 C 2577      inches deep on each side.

That said labor and materials were performed and furnished for and used in the improvement of the real property
hereinbefore described. That 8 months (4 months if a single family dwelling) have not elapsed dating from the last item of work
performed, or from the last items of materials furnished, or since the completion of the contract, or since the last item of work
of the work, or since the final furnishing of the materials for which this lien is claimed.

Dated

Verification

STATE OF NEW YORK, COUNTY OF

ss.:

INDIVIDUAL OR PARTNER

that deponent is (one of the co-partnership named in the within notice of lien and) the lienor(s) mentioned in the foregoing notice of lien; that deponent has read the said notice and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

being duly sworn, says

Sworn to before me on

STATE OF NEW YORK, COUNTY OF *Jersey* *Bergen*

ss.:

CORPORATION

Robert L. Gerosa, Jr.

that deponent is the ~~President~~ *VICE PRESIDENT* of ALF Rental Company, Inc. being duly sworn, says herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is an officer, to wit, the ~~President~~ *VICE PRESIDENT* of ALF Rental Co, Inc. which is a New Jersey corporation, and deponent is familiar with the facts and circumstances herein.

The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon deponent's knowledge are as follows:

personal knowledge and books and records

Sworn to before me on *10-12-06*

*Bonnie P. Jackson*

OFFICIAL SEAL
**BONNIE P. JACKSON**
NOTARY PUBLIC-NEW JERSEY
My Commission Expires Oct. 28, 2008

Editor's note: Notice of Mechanic's Lien may be filed at any time during progress of the work and the furnishing of the materials, or, within eight months (four months if a single family dwelling) after the completion of the contract or the final performance of the work, or the final furnishing of the materials. The Notice of Mechanic's Lien must be filed in the Clerk's office of the county where the property is situated. If such property is situated in two or more counties file the Notice of Mechanic's Lien in the office of the Clerk of each county. See Lien Law §10

 167 - Notice of mechanic's lien, affidavit of term'n, individual, partnership or corporation, New York City to be filed with County Clerk. Law Law, 3 at sep 9.96

Blumberg Excelsior, Publisher, NYC 10013
www.blumberg.com

## NOTICE OF MECHANIC'S LIEN

To the Clerk of the County of Bronx

**Please Take Notice,** that ALF Rental Company, Inc.    and all others whom it may concern:

(1) The names and residences of the lienor(s) are    as lienor(s) have and claim a lien on the real property hereinafter described as follows:
ALF Rental Company, Inc.

being a (partnership) ☒ (corporation) composed of  3 shareholders

whose business address is at 122 W. Sheffield Avenue, Englewood, NJ 07631
and whose principal place of business is at    same

(1a) The name and address of lienor's attorney, if any Bahn Herzfeld & Multer, LLP
555 Fifth Avenue, NY NY 10017

(2) The owner of the real property is Consolidated Edison Co. of NY, Inc.
and the interest of the owner as far as known to the lienor(s) is fee

(3) The name of the person by whom the lienor(s) was (were) employed is Builders Resource, Inc.
The name of the person to whom the lienor(s) furnished or is (are) to furnish material or for whom the lienor(s)
performed or is (are) to perform professional services is Builders Resource Inc.
The name of the person with whom the contract was made is Builders Resource
The labor performed was

The material furnished was timber mats to support cranes

The materials actually manufactured for but not delivered to the real property are

The agreed price and value of the labor performed is $
The agreed price and value of the material furnished is $
The agreed price and value of the material actually mfd. for but not delivered to the real prop. is $
Total agreed price and value    $

(5) The amount unpaid to the lienor(s) for said labor performed is $
The amount unpaid to the lienor(s) for said material furnished is $  18,611
The amount unpaid to lienor(s) for material actually mfd. for but not delivered to the real prop. is $
Total amount unpaid    $

The total amount claimed for which this lien is filed is $  18,611

(6) The time when the first item of work was performed was
The time when the first item of material was furnished was  10/1/06
The time when the last item of work was performed was
The time when the last item of material was furnished was  10/16/06

(7) The property subject to the lien is situated in the Borough of Bronx    County of Bronx
City of New York, on the    side of
inches    of
wide, front and rear by    inches    , being    feet and
and    feet and    feet
and known as Number 415 Bruckner Blvd., Bronx, NY    inches deep on each side,

Lot 5, block 2599

That said labor and materials were performed and furnished for and used in the improvement of the real property
hereinbefore described. That 8 months (4 months if a single family dwelling) have not elapsed during from the last item of work
performed, or from the last items of materials furnished, or since the completion of the contract, or since the final performance
of the work, or since the final furnishing of the materials for which this lien is claimed.

Dated  3/1/07

2007 MAR -5 AM 10: 21
COUNTY CLERK
BRONX COUNTY
DOCKET DEPARTMENT

FILED

'7 10:08a     Richard L. Herzfeld          212-986-5316          p.3

Verification

STATE OF NEW YORK, COUNTY OF                                 ss.:                    INDIVIDUAL OR PARTNER

that deponent is (one of the co-partnership named in the within notice of lien and) the lienor(s)                    being duly sworn, says
mentioned in the foregoing
notice of lien; that deponent has read the said notice and knows the contents thereof, and that the same is true to deponent's own
knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those matters deponent
believes it to be true.

Sworn to before me on 1st March 2007

STATE OF NEW JERSEY     COUNTY OF BERGEN:                              CORPORATION

     Robert L. Gerosa. Jr.                                                being duly sworn, says
that deponent is the _ _ _ _ _     Vice President     of ALF Rental Company, Inc.
herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to
deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to
those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is an officer,
to wit, the Vice President     of Alf Rental Co, Inc.
which is a New Jersey     corporation, and deponent is familiar with the facts and circumstances herein.
     The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon
deponent's knowledge are as follows:
personal knowledge and books and records

Sworn to before me on 1st

March 2007

Bonnie P. Jackson

OFFICIAL SEAL
BONNIE P. JACKSON
NOTARY PUBLIC-NEW JERSEY
My Commission Expires Oct. 28, 2008

Editor's note: Notice of Mechanic's Lien may be filed at any time during progress of the work, or the furnishing of the materials,
or, within eight months (four months) (for single family dwelling) after the completion of the contract, or the final performance of
the work, or the final furnishing of the materials. The Notice of Mechanic's Lien must be filed in the Clerk's office of the county
where the property is situated. If such property is situated in two or more counties, file the Notice of Mechanic's Lien in the office
of the Clerk of each County. See Lien Law §10.

**EXHIBIT F**

04/20/2007 11:03 FAX 860 283 0165              CORESLAB CT.                                      ☒002

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------ X

ALF RENTAL COMPANY, INC.,                        Index No. 8910/2007

                  Plaintiff,

    - against -                                **VERIFIED ANSWER**
                                        **COUNTERCLAIMS AND**
                                        **CROSS-CLAIMS**

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES AND NICOLSON
CONSTRUCTION CO.,

                  Defendants.

------------------------------------------------------------ X

The defendant, TERRA DINAMICA, LLC, as and for their answer and counterclaims, allege as follows:

1.      Defendant admits paragraphs 3, 4 and 6 of the plaintiff's verified complaint.

2.      Defendants deny knowledge and information sufficient to form a belief as to the truth or falsity of the allegations contained in paragraphs 1, 2, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27 and 28 of the complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

3.      The mechanic's lien of the defendant, TERRA DINAMICA, LLC is superior to, and takes precedence over, any other mechanic's lien on the premises filed by any party.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

4.      Improper service as per CPLR.

04/24/2007 11:03 FAX 860 283 0165                                                    CORESLAB CT.                                                      ☑003

## I.  AS AND FOR A FIRST COUNTERCLAIM AND CROSS-CLAIM

5. Defendant TERRA DINAMICA, LLC counterclaims against the plaintiff ALF RENTAL COMPANY, INC. and cross-claims against the co-defendants BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL CONTRACTORS CORP., CONSOLIDATED EDISON OF NEW YORK, INC., CORESLAB STRUCTURES AND NICOLSON CONSTRUCTION CO. on the foreclosure of its mechanic's lien in the sum of $148,601.25, filed on or about December 6, 2005, as set forth in the lien foreclosure action brought in the Supreme Court of the State of New York, County of Bronx, under index number 6525/2006.

## II.  AS AND FOR A SECOND CROSS-CLAIM

6.    Defendant TERRA DINAMICA, LLC, cross-claims against the co-defendant D'ONOFRIO GENERAL CONTRACTORS CORP. on action for work, labor and services, and materials provided, and action for breach of contract for damages in the agreed and reasonable sum of $148,601.25, no portion of which has been paid although duly demanded.

**WHEREFORE**, the defendant Terra Dinamica requests that plaintiff's complaint be dismissed, for the relief requested in this counter-claim and cross-claims, and for the costs and disbursements of this action, and for whatever other and further relief this court deems just and proper.

Dated:         New York, New York
               April 24, 2007

                              Yours, etc.

                              LEONARD J. CATANZARO
                              Attorney for Defendant
                              Terra Dinamica
                              434 Broadway, Suite 900
                              New York, New York 10013
                              (212) 226-1234

04/27/2007 11:03 FAX 860 283 0165                CORESLAB CT.                                    ☒004

## VERIFICATION

STATE OF NEW YORK        )        ss.:

COUNTY OF NEW YORK      )

I, LEONARD J. CATANZARO, the undersigned, being duly sworn, deposes and says I am the attorney for co-defendant TERRA DINAMICA, LLC in this action and the foregoing complaint is true to my own knowledge, except as to matters therein stated on information and belief and as to those matters I believe them to be true; the grounds of my belief as to all matters not stated upon my knowledge are correspondence and other writings furnished to me by plaintiff and interviews with officers and employees of plaintiff; and the reason why the verification is not made by plaintiff is that the plaintiff is not in the county where I maintain my office.

By: _____

LEONARD J. CATANZARO

Sworn to before me on this
24th day of April, 2007

_____
NOTARY PUBLIC

STANLEY B. KATZ
Notary Public, State of New York
No. 31-4630171
Qualified in New York County
Commission Expires 2/28/2011 SK

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX
------------------------------------------------ X
ALF RENTAL COMPANY, INC.,                                Index No. 8910/2007

                              Plaintiff,

                                                          <u>INTERROGATORIES</u>

             - against -

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES AND NICOLSON
CONSTRUCTION CO.,

                              Defendants.
------------------------------------------------ X

S I R S :

         PLEASE TAKE NOTICE that the co-defendant TERRA DINAMICA,
LLC, demands that the plaintiff ALF RENTAL COMPANY, INC. and co-defendants
BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL CONTRACTORS CORP.,
CONSOLIDATED EDISON OF NEW YORK, INC., CORESLAB STRUCTURES AND
NICOLSON CONSTRUCTION CO. serve upon their attorney, LEONARD J. CATANZARO,
at their office, 434 Broadway, Suite 900, New York, New York 10013 within twenty (20) days
after service hereof, responses to interrogatories to the following:

         1.(a) Did  TERRA DINAMICA, LLC provide work, labor, services, and
materials pursuant to a written contract, an oral contract, or both?

         1.(b) If in writing, please state the entire contents of said contract and/or
purchase order(s).

         1.(c) If oral, please state the terms.

         2.(a) Were there any change orders added to the contract?

         2.(b) If so, were the change orders in writing, oral, or both?

2.(c) If in writing, please state the entire content of said change order(s).

2.(d) If oral, please state the terms of the change order(s).

3.(a) Was the contract ever modified in writing, orally, or both?

3.(b) If so, and if in writing, please state the entire content of said modification.

3.(c) If orally, please state the terms of said modification.

4. Please state on what dates TERRA DINAMICA, LLC provided work, labor, services and materials for the aforementioned project.

5. (a) Please describe the work, labor, services and materials provided.

5. (b) Please describe the locations in the premises where the work, labor, services and materials was provided.

6. (a) Did defendants, D'ONOFRIO GENERAL CONTRACTORS CORP., and CONSOLIDATED EDISON OF NEW YORK, INC., their servants, agents, and/or employees, observe TERRA DINAMICA, LLC providing work, labor services and materials at the aforementioned project?

6.(b) If so, please state the name, address and job title of D'ONOFRIO GENERAL CONTRACTORS CORP., and CONSOLIDATED EDISON OF NEW YORK, INC., their servants, agents and/or employees who observed TERRA DINAMICA, LLC provide work, labor, services and materials and the dates and times when said observation occurred.

7.(a) Did D'ONOFRIO GENERAL CONTRACTORS CORP. pay TERRA DINAMICA, LLC for any of the work, labor, services and materials provided?

7.(b) If so, please state the amount of each payment, and the date said payment was made.

8.(a)  Was any of the work, labor, services and materials provided by TERRA DINAMICA, LLC unsatisfactory, and/or not provided in a good and workmanlike manner?

8.(b) If so, please state specifically each and every item, if any, that was not provided in a good and workmanlike manner?

8.(c) Please state the monetary value of each and every item set forth in 8.(b).

9.(a) Please state the name and address of each every witness who the plaintiff and co-defendants claim observed co-defendant TERRA DINAMICA, LLC's work.

9.(b) Please state the name, and address, and provide the resume, of each and every expert the plaintiff and co-defendants intend to give testimony at trial of this matter.

10.(a)  During TERRA DINAMICA, LLC providing of the work, labor, services and material, did D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. orally or in writing notify TERRA DINAMICA, LLC that their work, labor, services and materials were not satisfactory?

10.(b) If so, state the name, address and job title of the person on behalf of D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. who so notified TERRA DINAMICA, LLC, orally or in writing that their work, labor, services and materials was not satisfactory?

10.(c) If so, state the name, address and job title of the person or persons on behalf of TERRA DINAMICA, LLC, who received notification orally or in writing that their work, labor, services and materials were not satisfactory.

10.(d) Please state the dates when such notifications, if any, were made.

10.(e) Was such notification made in writing?

10.(f) If in writing, what was the entire content of said written notification?

11.(a)  Did D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC., or their agents, employees, ever receive telephone calls from TERRA DINAMICA, LLC, requesting payment?

11.(b)  If so, state the dates, times and person's name and address who received said requests for payment.

11.(c)  If so, what was co-defendants' D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC.'s response to TERRA DINAMICA, LLC, telephone requests for payment?

12.(a)  Please describe any damages, if any, to CONSOLIDATED EDISON OF NEW YORK, INC.'s premises or property that D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. claim were caused by the defendant TERRA DINAMICA, LLC, indicating the monetary amount of the alleged damages.

12.(b)  Please state the name of any contractor or business, if any, that was hired by D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. to repair, complete, and/or replace any work, labor, services and materials provided by TERRA DINAMICA, LLC

12.(c)  If so, how much was paid to said business or contractor for said replaced work, labor, services and materials?

12.(d)  If so, who on behalf of co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. hired said contractor or business?

13.(a)  Are the co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. claiming that TERRA DINAMICA, LLC abandoned the job?

13.(b) If so, on what date did said abandonment occur?

14.(a) What contract items has TERRA DINAMICA, LLC not completed to date regarding the project?

14.(b) What is the monetary value of the above items in 14(a).

15.(a) Is there any amount co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. concede is due and owing to co-defendant TERRA DINAMICA, LLC at the time?

15.(b) If so, what monetary amount?

16.(a) Are co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. claiming that TERRA DINAMICA, LLC performed the work in an untimely manner?

16.(b) If so, on what date was the work to be performed, and on what date was the work performed?

Please note that these demands are to be complied with prior to the taking of depositions of any party.

Dated:        New York, New York
              April 24, 2007

Yours, etc.

LEONARD J. CATANZARO
Attorney for Defendants
434 Broadway, Suite 900
New York, New York 10013
(212) 226-1234

TO:

BAHN, HERZFELD & MULTER, LLP
Attorneys for Plaintiffs
555 Fifth Avenue
New York, New York 10017
(212) 818-9019

BUILDERS RESOURCE, INC.
101 Nasonville Road
Nasonville, RI 02830

D'ONOFRIO GENERAL CONTRACTORS CORP.
202 28th Street
Brooklyn, New York 11232

CONSOLIDATED EDISON OF NEW YORK, INC.
4 Irving Place
New York, New York 10003

CORESLAB STRUCTURES
1023 Waterbury Road
Thomaston, CT 06787

NICOLSON CONSTRUCTION CO.
12 McClane Street
Cuddy, PA 15031

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------- X     Index No. 8910/2007

ALF RENTAL COMPANY, INC.,

              Plaintiff,                                    <u>NOTICE FOR DISCOVERY</u>
<u>AND INSPECTION</u>

    - against -

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES AND NICOLSON
CONSTRUCTION CO.,

              Defendants.

-------------------------------------------------- X

      PLEASE TAKE NOTICE that the co-defendant TERRA DINAMICA, LLC,
hereby demands pursuant to the CPLR that the plaintiff ALF RENTAL COMPANY, INC., and
the co-defendants BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL
CONTRACTORS CORP., CONSOLIDATED EDISON OF NEW YORK, INC., CORESLAB
STRUCTURES AND NICOLSON CONSTRUCTION CO., serve upon the undersigned
within twenty (20) days, copies of the following documents regarding to the following projects:

      1. All written contracts, change orders, modifications to the contract if any, by
and between the parties.

      2. All documents between the parties such as correspondence, invoices, bills,
complaints, regarding the project, in the possession of all defendants.

      3. All written modifications to the contract, if any.

4.  Copies of all payments from BUILDERS RESOURCE, INC. to ALF RENTAL COMPANY, INC.

5.  Copies of all payments from D'ONOFRIO GENERAL CONTRACTORS CORP. to BUILDERS RESOURCE, INC.

6.  Copies of all payments from CONSOLIDATED EDISON OF NEW YORK, INC. to D'ONOFRIO GENERAL CONTRACTORS CORP.

7.  Copies of all blue prints, schematics, drawings, plans, architectural drawings.

8.(a)  With respect to any contractor or business that was hired by the co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. to correct, repair, and/or complete the work, labor, services and materials provided by the defendants, please provide copies of all contracts, change orders, and correspondence with any contractors or material suppliers who replaced, repaired, corrected, and/or completed any of TERRA DINAMICA, LLC, work, labor, services and materials, if any.

8.(b)  Please provide copies of all bills, invoices, proposals, given to co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. from any other contractor or material supplier who replaced, corrected, and/or repairs, any of TERRA DINAMICA, LLC's, work, labor, services and materials, if any.

8.(c)  Please provide copies of all payments (if checks front and back) from co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. to any other contractor or material supplier who replaced, corrected, and/or repairs, any of TERRA DINAMICA, LLC, work, labor, services and materials, if any.

9.  Copies of all photographs and/or videotape(s) of the project in question.

10.  Copies of any and all written complaints from co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and/or CONSOLIDATED EDISON OF NEW YORK, INC. regarding TERRA DINAMICA, LLC's, work, labor, services and materials, if any.

11.  Copies of all inspection reports regarding TERRA DINAMICA, LLC, work, labor, services and materials of the projects.

12.  Copies of all permits.

13.  Copies of all correspondence with the town and/or building department in which the property is located regarding this contract.

14.  The name(s), address(es), and job title(s) of the witnesses plaintiff and co-defendants, intend to have testify at the trial of this matter, who observed the work, labor, services and materials provided by TERRA DINAMICA, LLC.

15.  Copies of all sign offs, approvals, logs, journals, kept by plaintiffs regarding the projects.

16.(a)  Copies of documents plaintiff and co-defendants intend to introduce into evidence at the trial of this matter.

17.(b)  The resume and/or curriculum vitae of any expert plaintiff and co-defendants intend to have testify at the trial of this matter.

18.(c)  Copies of any expert's reports, including photographs, exhibits, diagrams, charts and any other material prepared by this expert in connection with this matter.

19. A copy of each insurance contract and/or agreement under which any person carrying on insurance business may be liable to satisfy part or all of a judgment which may be entered in this action against the party you represent or may be responsible to indemnify or

reimburse the party you represent, in whole or in part, for any payment made to satisfy the judgment which may be entered herein against the party you represent, including but not limited to excess and additional coverage.

20. Copies of all documents regarding how the co-defendants D'ONOFRIO GENERAL CONTRACTORS CORP., and CONSOLIDATED EDISON OF NEW YORK, INC. financed and/or obtained financing for this contract.

Please note that these demands are to be complied with prior to the taking of depositions of any party.

Dated:    New York, New York
          April 24, 2007

                                        Yours, etc.

                                        LEONARD J. CATANZARO
                                        Attorney for Defendants
                                        434 Broadway, Suite 900
                                        New York, New York 10013
                                        (212) 226-1234

TO:

BAHN, HERZFELD & MULTER, LLP
Attorneys for Plaintiffs
555 Fifth Avenue
New York, New York 10017
(212) 818-9019

BUILDERS RESOURCE, INC.
101 Nasonville Road
Nasonville, RI 02830

D'ONOFRIO GENERAL CONTRACTORS CORP.
202 28th Street
Brooklyn, New York 11232

CONSOLIDATED EDISON OF NEW YORK, INC.
4 Irving Place
New York, New York 10003

CORESLAB STRUCTURES
1023 Waterbury Road
Thomaston, CT 06787

NICOLSON CONSTRUCTION CO.
12 McClane Street
Cuddy, PA 15031

CERTIFIED LUMBER & HOME CENTER
470 Kent Avenue
Brooklyn, New York 11211

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX

ALF RENTAL COMPANY, INC., ————————————— X    Index No. 8910/2007

Plaintiff,

**NOTICE TO TAKE**
**ORAL DEPOSITION**

- against -

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES AND NICOLSON
CONSTRUCTION CO.,

Defendants.

————————————————————— X

**PLEASE TAKE NOTICE** that pursuant to Article 31 of the Civil Practice Law and Rules the testimony, upon oral examination of the plaintiff herein ALF RENTAL COMPANY, INC. and co-defendants BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL CONTRACTORS CORP., CONSOLIDATED EDISON OF NEW YORK, INC., CORESLAB STRUCTURES AND NICOLSON CONSTRUCTION CO., will be taken before a notary public who is not an attorney, or employee of any attorney, for any party or prospective party herein and is not a person who would be disqualified to act as a juror because of interest or because of consanguinity or affinity to any party herein, at the office of LEONARD J. CATANZARO, 434 Broadway, Suite 900, New York, New York 10013 on the 15th day of May, 2007, at 10:00 o'clock in the forenoon of that day with respect to evidence material and necessary in the defense of this action.

That the said person to be examined is required to produce at such examination the following:

All records, books, papers, documents, correspondence and copies thereof and other writings and papers as relate to the matters in controversy herein, or the matters in which the parties are to be examined under this notice.

**PLEASE TAKE FURTHER NOTICE,** that the Interrogatories and Notice for Discovery and Inspection annexed hereto must be responded to prior to defendants taking the deposition of plaintiff.

Dated:          New York, New York
               April 24, 2007

                                        Yours, etc.,

                                        LEONARD J. CATANZARO
                                        Attorney for Defendants
                                        434 Broadway, Suite 900
                                        New York, New York 10013
                                        (212) 226-1234

TO:

BAHN, HERZFELD & MULTER, LLP
Attorneys for Plaintiffs
555 Fifth Avenue
New York, New York 10017
(212) 818-9019

BUILDERS RESOURCE, INC.
101 Nasonville Road
Nasonville, RI 02830

D'ONOFRIO GENERAL CONTRACTORS CORP.
202 28th Street
Brooklyn, New York 11232

CONSOLIDATED EDISON OF NEW YORK, INC.
4 Irving Place
New York, New York 10003

CORESLAB STRUCTURES
1023 Waterbury Road
Thomaston, CT 06787

27 2001 11:08 FAX 860 283 0165        CORESLAB CT.                                          ☑018

NICOLSON CONSTRUCTION CO.
12 McClane Street
Cuddy, PA 15031

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX

-------------------------------------------------- X     Index No. 8910/2007

ALF RENTAL COMPANY, INC.,

               Plaintiff,

      - against -                                              <u>AFFIRMATION</u>
                                          <u>OF SERVICE</u>

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES AND NICOLSON
CONSTRUCTION CO.,

               Defendants.

-------------------------------------------------- X

LEONARD J. CATANZARO, ESQ., an attorney duly admitted to practice law in the State of
New York affirms under penalties of perjury that on:

                       April ____ , 2007

Deponent served upon plaintiffs a true copy of the defendants' VERIFIED ANSWER,
COUNTERCLAIM, CROSS-CLAIMS, INTERROGATORIES, NOTICE FOR DISCOVERY
AND INSPECTION and NOTICE TO TAKE ORAL DEPOSITION, by mailing a copy via the
U.S. Postal Service postpaid First-Class Mail and by fax to defendant's counsel at the following
address:

BAHN, HERZFELD & MULTER, LLP
Attorneys for Plaintiffs
555 Fifth Avenue
New York, New York 10017
(212) 818-9019

BUILDERS RESOURCE, INC.
101 Nasonville Road
Nasonville, RI 02830

D'ONOFRIO GENERAL CONTRACTORS CORP.
202 28th Street
Brooklyn, New York 11232

CONSOLIDATED EDISON OF NEW YORK, INC.
4 Irving Place
New York, New York 10003

CORESLAB STRUCTURES
1023 Waterbury Road
Thomaston, CT 06787

27/2007 11:09 FAX 860 283 0185    CORESLAB CT.    ☐ 020

NICOLSON CONSTRUCTION CO.
12 McClane Street
Cuddy, PA 15031

Dated:        New York, New York
              April 24, 2007

LEONARD J. CATANZARO, ESQ.

APR 27 2007 11:09 FAX 860 283 0165    CORESLAB CT.    ☑021



SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX
--------------------------------------------------- X    Index No. 8910/2007

ALF RENTAL COMPANY, INC.,

Plaintiff,

- against -

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP., CONSOLIDATED
EDISON OF NEW YORK, INC., TERRA DINAMICA,
LLC, CORESLAB STRUCTURES AND NICOLSON
CONSTRUCTION CO.,

Defendants.
--------------------------------------------------- X

**VERIFIED ANSWER, COUNTERCLAIM, CROSS-CLAIMS
INTERROGATORIES, NOTICE FOR DISCOVERY AND INSPECTION
NOTICE TO TAKE ORAL DEPOSITION**

LEONARD J. CATANZARO, ESQ.
*Attorney for* DEFENDANTS
*Office and Post office Address, Telephone*
434 Broadway, Suite 900
New York, New York 10013
(212) 226-1234

<u>SIGNING REQUIREMENT</u>

I, the undersigned, duly admitted to practice law in New York State, plaintiff's attorney of record in the above action, under penalty of perjury do affirm that the following statement is true:

That, pursuant to section 130 - 1.1-a of the Rules of the Chief Administrator (22 NYCRR), by signing the papers herein certify that to the best of my knowledge, information and belief, formed under an inquiry reasonable under the circumstances, the presentation of the papers or the contentions herein are not frivolous as defined in subsection (c) of section 150-1.1.

Dated:        New York, New York
              April 24, 2007

LEONARD J. CATANZARO, ESQ.

**EXHIBIT G**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALF RENTAL COMPANY, INC.,                                    Docket No.:  07 CV 3148 (KMK)

        Plaintiff,

vs.

BUILDERS RESOURCE, INC., D'ONOFRIO
GENERAL CONTRACTORS CORP.,                          **ANSWER, COUNTERCLAIM,**
CONSOLIDATED EDISON OF NEW YORK, INC.,        **CROSS CLAIMS, THIRD**
TERRA DINAMICA, LLC, CORESLAB                       **PARTY COMPLAINT AND**
STRUCTURES, and NICOLSON CONSTRUCTION          **DEMAND FOR JURY**
CO.,

        Defendants,
-------------------------------------------------------------X
CORESLAB STRUCTURES (CONN), INC.
(MISNAMED AS CORESLAB STRUCTURES),

        Defendant/Third Party Plaintiff,

vs.

STEVE ALLARD, individually,

        Third Party Defendant.
-------------------------------------------------------------X

    The defendant Coreslab Structures (Conn), Inc. ("Coreslab"), misnamed in the Verified

Complaint ("complaint") as Coreslab Structures, by way of answer thereto, says:

    1.    Coreslab  is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1 of the complaint.

    2.    Coreslab is without knowledge or information sufficient to form a belief as to the

truth of these allegations contained in paragraph 2 of the complaint, except it admits that

defendant Builders' Resources, Inc. ("BRI") has done business in the State of New York.

2132938v1

3.    Coreslab is without knowledge or information sufficient to form a belief as to the truth of these allegations contained in paragraph 3 of the complaint.

4.    Coreslab admits on information and belief the allegations contained in paragraph 4 of the complaint.

5.    Coreslab is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the complaint, except it admits that it has an interest in the Property by the filing of a mechanic's lien.

6.    Coreslab admits the allegations contained in paragraph 6 of the complaint with respect to the so-called Mott Haven Substation project (as the "project"); otherwise, it is without knowledge or information sufficient to form a belief as to the truth of these allegations.

7.    Coreslab states that it was a project subcontractor to defendant D'Onofrio General Contractors Corp. ("D'Onofrio") and that BRI was a subcontractor to Coreslab; otherwise the allegations are denied.

8.    Coreslab is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraphs 8 through 24 of the complaint.

9.    Coreslab is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the complaint, except it admits on information and belief that a record search has shown the filing of such notices of mechanic's liens.

10.    Coreslab is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the complaint.

2

11.     Coreslab is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 28 of the complaint, except it denies the allegation as to "not . . . discharged of record."

<u>Affirmative Defense, Counterclaim and First Cross-Claim Against All Parties</u>

The defendant Coreslab Structures (Conn), Inc. ("Coreslab"), by its attorneys, Lindabury, McCormick, Estabrook & Cooper, P.C., as an affirmative defense, and as a counterclaim against the plaintiff and cross-claim against all co-defendants, says:

12.     Coreslab repeats and re-alleges upon information and belief the allegations contained in paragraphs 1 through 6 of the complaint as if the same were set forth herein.

13.     In or about August 2005 by written contract, D'Onofrio subcontracted certain of the project's pre-cast concrete work to Coreslab at the stated price of $11,900,000.

14.     Coreslab performed all work for which it was obliged under its subcontract with D'Onofrio with the exception of certain work consisting of the pre-cast fence that it is currently performing that has a fair and reasonable value of $624,080 for a balance performed of $11,275,920.

15.     While performing its work Coreslab was directed and at times required to perform extra and additional work and to furnish extra and additional materials which were in excess of the work and materials required under the base contract between Coreslab and D'Onofrio.

16.     Coreslab's subcontractor (BRI) was directed to perform extra and additional work which included certain premium time work ordered by the Owner Con Edison, and in addition BRI has asserted that it was required to perform extra and additional work and to furnish extra and additional materials throughout the course of the project for which it seeks compensation.

3

17.    By virtue of the extra and additional work and extra and additional materials as aforesaid, Coreslab is entitled to the fair and reasonable value of the amount in excess of $4,392,598 as set forth in the change orders and request for change orders issued to and/or submitted by Coreslab to D'Onofrio.

18.    The aforesaid amount of $4,392,598 being added to the base contract balance performed of $11,275,920 results in an adjusted subcontract balance performed amount between Coreslab and D'Onofrio of $15,668,518.

19.    The amount paid to date by D'Onofrio to Coreslab is the sum of $9,499,425.

20.    There remains due and owing from D'Onofrio to Croeslab the sum of $6,169,093.

21.    The work, labor and services performed and the materials furnished by Coreslab were performed and furnished for the improvement of the said real property described above and in the Complaint and, upon information and belief, were performed and furnished with the knowledge and consent of defendant Consolidated Edison of New York, Inc. (Con Edison).

22.    On January 18, 2007, and within eight months after last performing work and furnishing materials, Coreslab filed in the Office of the Clerk of the County of Bronx, New York, in compliance with Lien Law Section 9, a notice of lien for the sum due of $6,169,093. A copy of the notice of lien is annexed as Exhibit A.

23.    On February 1, 2007, Coreslab served on Con Ed as owner and D'Onofrio as general contractor copies of the notice of lien in accordance with the New York Lien Law, and proof of service was duly and timely filed in the Office of the Clerk of the County of the Bronx, New York.

4

24.    The lien has not been paid, canceled, waived or discharged, and no other action or proceeding either at law or in equity has ever been brought to recover the amount claimed therein.

### Second Cross-Claim Against D'Onofrio General Contractors Corp.

25.    The subcontract agreement by and between D'Onofrio and Coreslab (hereinafter DGCC/Coreslab agreement) provided in part that progress payments would be made in installments of 95% of the value of engineering, start-up and pre-casting work on or before the 15th day of the month following submission on the 25th day of the preceding month.

26.    The DGCC/Coreslab agreement further provided that Coreslab, if directed to work overtime, would be compensated for actual additional wages paid plus taxes plus workers compensation insurance, disability benefits and employers liability insurance and other such costs and levies on such additional wages .

27.    The DGCC/Coreslab agreement specifically incorporated the Coreslab proposal dated October 10, 2005 and all exhibits referenced therein.

28.    The DGCC/Coreslab agreement also provided in part that DGCC would provide:

(a)  Drop zone to Coreslab at no cost.

(b)  Full unobstructed access to all areas of installation required.

(c)  Traffic control flagmen and street access permits for parking

(d)  Stand-by-trades, jobsite teamsters.

(e)  Stabilized level access for trucks into the jobsite and all overhead wires or obstructions which could interfere with erection were to be moved prior to erection.

5

(f) Space for parking a minimum of 12-15 semi-trucks in space adjacent to the building in erection area.

(g) Full access to all areas pertaining to installation of work for Coreslab trucks, workmen, equipment.

(h) Shoring, protection of sidewalks, subterranean facilities and stabilization of soil as required for cranes and trucks sufficient for them to work under their own power.

(i) Installation of CMU walls which support pre-cast in a timely/coordinated fashion so as not to interrupt continuous installation of Coreslab product.

29. DGCC in breach of the DGCC/Coreslab subcontract failed to make proper payment when due as set forth above and failed to provide site requirements as required.

30. Additionally, Coreslab, through no fault of its own, was delayed in starting fabrication of the pre-cast and thereafter DGCC and/or the Owner Con Edison ordered changes to the design and fabrication which increased the cost to Coreslab.

31. As a result of the various changes to the scope of the project and the delays and interruptions and other substantial breaches, Coreslab suffered and continues to suffer substantial damages.

<u>Third Cross-Claim Against Builders Resource, Inc.</u>

32. In or about May 2006, Coreslab subcontracted certain of its project pre-cast concrete erection work to defendant Builders Resourse, Inc. ("BRI").

33. On information and belief, BRI subcontracted with or otherwise engaged various vendors ("project vendors") for certain labor, materials, equipment and/or services in connection with the performance of BRI's aforesaid erection work.

34. Coreslab's subcontract with BRI obliged BRI to establish to Coreslab's satisfaction that BRI has paid or satisfied all bills obligations, debts, claims, and liens incurred in connection

6

with BRI's project work, to cause such bills, etc., to be paid, satisfied, removed or discharged at BRI's own expense, and to indemnify, protect, save harmless, and/or reimburse Coreslab from and/or for any loss or expense incurred by Coreslab (including legal expense) in connection with such bills, etc.

35. Additionally, Coreslab's subcontract with BRI conditioned BRI's right to payment upon BRI's performance of the aforesaid obligations.

36. Several of BRI's project vendors have asserted claims and/or liens for payment with respect to their asserted project work, some of whom are parties in this action.

37. Coreslab has incurred and/or may in the future incur losses and expenses (including legal expenses) from BRI's failure(s) to perform its aforesaid obligations with respect to its project vendors.

38. Such losses and expenses may include, but would not be limited to, possible loss or delay in payment from D'Onofrio or possible backcharge from D'Onofrio by reason of unresolved claims or liens of BRI's project vendors.

### Fourth Cross-Claim Against Builders Resource, Inc.

39. Coreslab repeats and realleges each and every allegation contained in paragraphs 12 through 38 as if more fully set forth at length herein.

40. The Coreslab/BRI subcontract provided that BRI was bound to Coreslab and assumed towards Coreslab all the obligations and responsibilities that Coreslab assumed through written documents toward the General Contractor.

41. The Coreslab/BRI subcontract further provided that all work was to be done by skilled craftsmen, in a good and workmanlike manner to the full satisfaction of Coreslab,

2132938v1

D'Onofrio, and the owner Con Edison.

42. BRI failed to perform its work in a good and workmanlike manner and Coreslab has had and continues to correct BRI defective work and as a result has suffered and continues to incur damages.

43. Coreslab is entitled to be reimbursed for all damages incurred.

### Fifth Cross-Claim Against Builders Resource, Inc.

44. Coreslab repeats and re-alleges each and every allegation contained in paragraphs 12 through 43 as if more fully set forth at length herein.

45. The Coreslab/BRI subcontract required BRI to pay promptly when due bills and charges for labor, materials and rental of equipment used in the performance of BRI's subcontract.

46. As a furtherance of the above subcontract condition, BRI was required to complete and submit with each periodic application for payment a Partial Waiver/Release of Lien Form completed and duly executed by an authorized representative of BRI.

47. The Partial Waiver/Release of Lien Form provided in part that BRI waived, released and forever relinquished any and all claims, demands, liens, and/or right(s) of action whether legal or equitable against the Project and against the Owner and Coreslab up to the period set forth.

48. The Partial Waiver/Release of Lien Form also contained an express representation and warranty by BRI that all labor, material, services, equipment and/or machinery used or provided by or through the Trades Contractor or its sub-subcontractors, suppliers, and/or material men through the date identified were paid in full.

8

49. BRI was aware and/or should have been aware that Coreslab relied upon the proper and truthful execution of the Partial Waiver/Release of Lien Form.

50. Coreslab did in fact rely upon BRI's execution and representations of the Partial Waiver/Release of Liens and was induced to make continual progress payments to BRI in the amounts of millions of dollars.

51. BRI, engaging in multiple acts of fraud, fraudulently misrepresented that it had made payments to its sub-subcontractors, equipment suppliers and materialmen.

52. As a result of the multiple acts of fraud and fraudulent misrepresentations by BRI, Coreslab was forced to incur substantial damages and costs that included costs of lien bonds by D'Onofrio, delay in payments and substantial attorneys fees.

<u>Third-Party Complaint Against Steve Allard</u>

Defendant and Third-Party Plaintiff Coreslab Structures (Conn), Inc. (Coreslab) as and for its third-party complaint by its attorneys Lindabury McCormick Estabrook & Cooper alleges upon information and belief as follows.

53. Upon information and belief third party defendant Steve Allard at all times mentioned herein was and is the Chief Financial Officer (CFO) of BRI.

54. Upon information and belief, as CFO Mr. Steve Allard had full and complete knowledge of all payments BRI received from Coreslab on this project.

55. Upon information and belief, as CFO Mr. Steve Allard had full and complete knowledge of subcontracts let equipment rented and material purchased by BRI.

56. Coreslab incorporates, repeats and re-alleges paragraphs 44 through 52 of its cross claim against BRI related to the execution of Partial Waiver/Release of Lien and Full and Final

2132938v1

Waiver/Release of Lien, which were executed by Mr. Allard as if more fully set forth at length herein.

57. Mr. Steve Allard executed the Partial Waiver/Release of Lien Form(s) as notarized certifying under oath in order to induce Coreslab to rely upon the statement and certifications that BRI paid its sub-subcontractors, equipment suppliers and materialmen on this project in full.

58. Upon information and belief, Mr. Steve Allard who possessed a direct financial interest in BRI knew or should have known that such certifications were false and untruthful and despite this knowledge executed these documents in order to induce Coreslab to pay millions of dollars to BRI.

59. By BRI's own admission, BRI has failed to pay many of its sub-subcontractors, equipment suppliers, materialmen and laborers and these entities have asserted liens and claims against the Project.

60. As a direct result of these false, misleading and untruthful representations by Mr. Steve Allard, Coreslab has suffered and will continue to suffer damages.

WHEREFORE, Coreslab demands judgment as follows:

1. On its Counterclaim and First Cross-Claim:

A.    Coreslab be adjudged to have a valid and enforceable lien on and against the Property and the project monies constituting the lien fund.

B.    The validity and extent of each and all of the liens and claims that may be presented and asserted herein be determined, and the equities of all the parties to this action and the order of priority of the different liens be adjusted.

2132938v1

C.  The interest of the defendant owner in the real property be sold according to law and from the proceeds of such sale Coreslab be paid in the amount of its lien, and interest thereon together with the expenses of such sale and the costs of this action.

D.  Coreslab have a judgment against defendant D'Onofrio for any deficiency that may remain after such payment, or for the entire sum of $6,169,093 should it be determined and adjudged that Coreslab does not have a valid and subsisting lien upon said real property, together with interest thereon.

E.  The plaintiff, the defendants, and all persons claiming under or through them be forever barred and foreclosed of all right and equity of redemption or other interest in the above mentioned premises of the defendant owner.

F.  Coreslab have such other and further relief as to the court may seem just and proper, together with the costs of this action.

2.  On its Second Cross-Claim that Coreslab have judgment against defendant D'Onofrio for the entire sum of the contract balance and extra scope work incurred.

3.  On its Third, Forth and Fifth Cross-Claim, that Coreslab have judgment against BRI for compensatory, consequential an punitive damages in an amount to be determined at trial, and for declaratory relief with respect to BRI's obligations as to its project vendors, together with interest, costs of suit, and such other or further relief as the court may award.

4.  On its Third Party Complaint against Mr. Steve Allard that Coreslab have judgment against Steve Allard individually for compensatory, consequential and punitive damages including but not limited to delays in payment by D'Onofrio and/or owner, attorneys fees and any payments ordered to be made or made to BRI's

11

subcontractors, equipment suppliers or materialmen over and above any contract balance owed

to BRI.

Demand for Jury

Coreslab demands a jury as to all issues triable by jury.

Dated: New York, New York
       June 26, 2007

LINDABURY, McCORMICK, ESTABROOK & COOPER, P.C.

By:_____
       Scott M. Yaffe (4344)
*Attorneys for Defendant Coreslab Structures*
*(CONN), Inc.*
26 Broadway, Suite 2300
New York, New York 10004
(212) 742-3390

12

2132938v1

**EXHIBIT A**

# NOTICE UNDER MECHANIC'S LIEN LAW

To the Clerk of the County of <u>the Bronx</u> and all others whom it may concern:

**PLEASE TAKE NOTICE**, that <u>Coreslab Structures (CONN) Inc.</u>, as lienor has and claims a lien on the real property hereinafter described as follows:

(1) The name and residence of the lienor is <u>Coreslab Structures (CONN) Inc., 1023 Waterbury Road, Thomaston, Connecticut</u>, being a corporation of the <u>State of Connecticut</u>, whose business address is <u>1023 Waterbury Road, Thomaston, Connecticut</u> and whose principal place of business is <u>1023 Waterbury Road, Thomaston, Connecticut</u>.

(1-a) The name and address of lienor's attorney is <u>Lindabury, McCormick, Estabrook & Cooper, P.C., 26 Broadway, Suite 2300, New York, New York 10004, (212) 742-3390</u>.

(2) The owner of the real property is <u>Consolidated Edison Company of New York, Inc.</u>, and the interest of the owner as far as known to the lienor is <u>fee simple</u>.

(3) The name of the person by whom the lienor was employed is <u>D'Onofrio General Contractors Corp</u>. The name of the person to whom the lienor furnished or is to furnish materials or for whom the lienor performed or is to perform professional services is <u>D'Onofrio General Contractors Corp</u>. The name of the person with whom the contract was made is <u>D'Onofrio General Contractors Corp</u>. The name of the person for whom professional services were rendered is <u>N/A</u>.

(4) The labor performed was <u>installation of architectural and structural precast/prestressed concrete products</u>. The material furnished was <u>architectural and structural precast/prestressed concrete products</u>. The materials actually manufactured for but not delivered to the real property are <u>architectural and structural precast/prestressed concrete products</u>. The agreed upon price and value of the labor performed and of the material furnished is <u>$15,518,518.00</u>. The agreed price and value of the material actually manufactured for but not delivered to the real property is $<u>150,000.00</u>. The agreed fee for professional services is $<u>N/A</u>. Total agreed price and value $<u>15,668,518.00</u>.

(5) The amount unpaid to the lienor for said labor performed and material furnished is $<u>6,019,093.00</u>. The amount unpaid to the lienor for material actually manufactured for but not delivered to the real property is $<u>150,000.00</u>. Total amount unpaid $<u>6,169,093.00</u>.

(6) The time when the first item of work was performed was <u>10/14/05</u>. The time when the first item of material was furnished was <u>12/28/05</u>. The time when the last item of work was performed was <u>10/20/06</u>. The time when the last item of material was furnished was <u>12/19/06</u>.

(7) The property subject to the lien is situated in <u>the County of the Bronx, City of New York, State of New York, and is known as Consolidated Edison Mott Haven Substation, 415 Bruckner Blvd., Block 2599, Lot 5</u>.

Said labor and materials were performed and furnished for and used, and the professional services rendered were used, in the improvement of the real property hereinbefore described. Eight months have not

1

elapsed dating from the last item of work performed, or from the last items of materials furnished, or since the completion for the contract, or since the final performance of the work, or since the final furnishing of the materials for which this lien is claimed.

Dated: January 17, 2007

_Scott M. Yaffe_
Scott M. Yaffe, Agent

State of New York, County of <u>New York</u> ss.:

    <u>Scott M. Yaffe</u>, being duly sworn, says that deponent is the <u>agent</u> of the lienor herein, that deponent has read the foregoing notice of lien and knows the contents thereof, and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters deponent believes it to be true. The reason why this verification is made by deponent is that deponent is the <u>agent</u> of <u>Coreslab Structures (CONN) Inc.</u>, which is a <u>foreign</u> corporation, and deponent is familiar with the facts and circumstances herein.

    The sources of deponent's information and the grounds of deponent's belief as to all matters not therein stated upon deponent's knowledge are as follows: <u>conversations with lienor's personnel and a review of lienor's books and records.</u>

_Scott M. Yaffe_
Scott M. Yaffe

Sworn to before me on
January 17, 2007

_Joseph F. Donohue_
Notary Public

JOSEPH F. DONOHUE, JR.
Notary Public, State of New York
No. 31-4698434
Qualified in New York County
Commission Expires October 31, 2007

Lindabury, McCormick, Estabrook & Cooper, P.C.
*Attorneys for Lienor*
26 Broadway, Suite 2300
New York, New York 10004
(212) 742-3390

2

**EXHIBIT H**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH McDONALD, WILLIAM HAYES,
CAROLE RAFFERTY, MARTIN SANDER,
LARRY WEISS, PATRICK BARRETT as
Trustees of the LOCAL 197 EMPLOYEE
BENEFIT FUNDS

**06 CV 15313**

Plaintiffs,

COMPLAINT

-against-

BUILDING RESOURCES, INC.

Defendant.

Plaintiffs, by their attorneys COLLERAN, O'HARA & MILLS L.L.P.
complain of defendants as follows:

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred upon this court by the Employee Retirement
Income Security Act of 1974, (hereinafter "E.R.I.S.A."), as amended, §§502 and 515, 29
U.S.C. §§1132 and 1145; and the Labor Management Relations Act, (hereinafter
"L.M.R.A."), as amended, §301, 29 U.S.C. §185; jurisdiction is pursuant to 28 U.S.C.
§§1331 and 1337; supplemental jurisdiction is pursuant to 28 U.S.C.1367.

2.    Venue within this district is proper pursuant to L.M.R.A. §301, 29 U.S.C.
§185; E.R.I.S.A. §502(e)(2), 29 U.S.C. §1132(e)(2); and 28 U.S.C. §1391(b) and (c).

## NATURE OF ACTION

3.    This action is brought by, inter alia, fiduciaries of jointly administered
employee benefit plans established pursuant to and in accordance with the
requirements of the L.M.R.A. §302, as amended, 29 U.S.C. §186 ("Taft-Hartley" plans)
to enforce the relevant provisions of the enabling trust indentures, applicable collective
bargaining agreements, and statutory obligations imposed on defendant by E.R.I.S.A.
§515, 29 U.S.C. §1145, and L.M.R.A. §301(a), 29 U.S.C. §185(a).

## PARTIES

4.    Non-Party LOCAL 197, is a labor organization within the meaning of the
L.M.R.A. and E.R.I.S.A., representing individuals that perform  stone installation work

within the five (5) boroughs of the City of New York and, more specifically, the individuals who performed such work on the Con Edison job site at Mott Haven, Bronx, New York (the "Project").

5.        Plaintiffs, JOSEPH McDONALD, WILLIAM HAYES, CAROLE RAFFTRY, MARTIN SANDERS, LARRY WEISS, PATRICK BARRETT, are trustees of the LOCAL 197 Employee Benefits Funds and as Individuals are, at all relevant times, fiduciaries, within the meaning of E.R.I.S.A. §§3(21)(A), 29 U.S.C. 1002(21)(A), of employee welfare benefit plans and employee pension benefit plans as defined in E.R.I.S.A. §3(1) and (2), 29 U.S.C. §1002(1) and (2), established and maintained by employers engaged in commerce and by a labor organization representing employees engaged in commerce and in an industry affecting commerce, and, further, the Local 197 Employee Benefit Funds qualify as multi-employer plans within the meaning of E.R.I.S.A. §3(37)(A), 29 U.S.C. §1002(37)(A), with its principal offices located at 253 West 35th Street, 12th Floor, New York, New York 10001.

6.        Defendant, BUILDING RESOURCES, INC., (hereinafter "BRI"), upon information and belief, is and was, at all relevant times, a corporation duly organized and existing pursuant to the laws of the State of Rhode Island with its principal place of business at 101 Nasonville Road, Harrisville, Rhode Island, 02830, that has and is transacting and contracting for business within the State of New York at various construction projects, including but not limited to the Con Edison Project referenced above.

7.        Defendant is and was at all relevant times, engaged in an industry affecting commerce and "employer(s)" within the meaning of the National Labor Relations Act, (hereinafter "N.L.R.A."), §§2(2) and 301(a), 29 U.S.C. 152(a) and 185(a), and E.R.I.S.A. §§3(5) and 515, 29 U.S.C. 1002(5) and 1145.

8.        Members of LOCAL 197, Brian Dunn, John R. Dunn, Jr., Michael W. Ervin, and Louis Robman as individuals performed stone installation work at the Project.

9.        The above described work is within the craft jurisdiction of LOCAL 197.

2

10.    Members of LOCAL 197 were paid wages by check by BRI.

11.    BRI did not make its required benefit contributions on behalf of the above named former employees to the Fund for the relevant period.

## AS AND FOR A FIRST CLAIM FOR RELIEF

12.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "11" of this Complaint with the same force and effect as though the same were set forth at length herein.

13.    At all relevant times, defendant, BRI, was in a collective bargaining relationship with LOCAL 197.

14.    By reason of the aforementioned, at all relevant times, defendant, BRI was and remains bound by the terms and conditions of the applicable collective bargaining agreements and trust indentures.

15.    The applicable collective bargaining agreement and trust indentures provide, inter alia, for an employer to pay contributions to the FUNDS on behalf of its employees who perform covered employment under such agreements.

16.    Since August 1, 2006 through September 30, 2006, Brian Dunn, John R. Dunn, Jr., Michael W. Ervin, and Louis Robman, who are members of Local 197 and participants in the FUNDS, performed covered employment for defendant, BRI within the meaning of the collective bargaining agreement.

17.    Defendant, BRI, has breached the applicable collective bargaining agreements and trust indentures by failing, refusing or neglecting to make proper contributions to the FUNDS for the above period in the sum of $40,136.84.

18.    As a direct and proximate result of the defendant's breach of its contract with LOCAL 197, the FUNDS have been damaged in the sum of, together with additional contractual damages pursuant to the collective bargaining agreement as follows:

| | |
|---|---|
| Contributions | $ 40,136.84 |
| Interest | $ 1,009.42 |
| Attorneys Fees (25%) | $ 10,034.21 |
| Liquidated Damages (20%) | $ 8,027.87 |
| TOTAL | $ 59,201.84 |

3

## AS AND FOR A SECOND CLAIM FOR RELIEF

19.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "18" of the Complaint with the same force and effect as though set forth at length herein.

20.     The FUNDS are multi-employer plans as defined in E.R.I.S.A. §3(37)(A), 29 U.S.C. §1002(37)(A).

21.     Pursuant to the terms and conditions of the applicable collective bargaining agreements and trust indentures, defendant, BRI, is an employer obliged to make contributions to the various FUNDS at the rates established by the applicable collective bargaining agreements.

22.     Defendant, BRI, is statutorily required to make contributions to the FUNDS pursuant to E.R.I.S.A. §515, 29 U.S.C. §1145.

23.     Defendant has failed, neglected and/or refused to contribute to the FUNDS despite due demand from plaintiffs in violation of its statutory duty.

24.     As a direct and proximate result of defendant's violation of its statutory duty to contribute to the FUNDS, plaintiffs have been damaged in the sum of $59,201.84 in unpaid contributions, together with statutory remedies including pre-judgment interest on the unpaid contributions, liquidated damages, reasonable attorneys' fees and the costs and disbursements of this action pursuant to E.R.I.S.A. §502(g), 29 U.S.C. §1132(g).

## AS AND FOR A THIRD CLAIM FOR RELIEF

25.     Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "24" as though fully set forth at length herein.

26.     Upon information and belief defendant, BRI, has received payment for its work performed on the Project.

27.     BRI is, under New York State Lien Law Article 8-A, a statutory trustee of the proceeds it received and will be receiving.

28.     BRI, rather than use the proceeds of the monies it received for the benefit

4

of the statutory beneficiaries, diverted the money to and for its own use, enjoyment and benefit.

29.    BRI is liable to the PLAINTIFFS pursuant to New York Lien Law Article 3-A for delinquent employee benefit contributions and the LOCAL 197 working assessment.

30.    The Court has supplemental jurisdiction over this New York Statutory claim, pursuant to 28.U.S.C.§1367, as this claim and the claims over which the Court has original jurisdiction are so related that they form a part of the same case or controversy.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

31.    Plaintiffs repeat and reiterate each and every allegation contained in paragraphs "1" through "30" as though fully set forth at length herein.

32.    BRI deducted from the wages of each of its employees amounts for vacation pay and the union working assessment but did not remit these deductions to the appropriate entity. Accordingly, the deductions were not "for the benefit of the employee" and thus were unlawful pursuant to New York Labor Law §193(1)(b). Upon information and belief, the total amount owed is $11,944.80.

33.    BRI is therefore liable to the Vacation Fund, or in the alternative to the individual former employees for each and every deduction made that was not "for the benefit of the employee", in accordance with New York Labor Law §193, in the total  amount of $ 9954.00.  BRI is also liable to LOCAL 197, or in the alternative to the individual plaintiffs, in the amount of $ 1990.80 for wrongfully withheld working assessment.

34.    The Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. §1367 as this claim and the claims over which the Court has original

6

jurisdiction are so related that they form a part of the same case or controversy.

WHEREFORE, Plaintiffs demand judgment against BRI, on each claim for relief and for such other and further relief as this Court shall deem just, proper and equitable, including the costs and fees associated with this litigation.

Dated:  December 15, 2006
        Garden City, New York

Yours;

COLLERAN, O'HARA & MILLS
Attorneys for Plaintiffs

By: _____
CAROL O'ROURKE PENNINGTON (0594)
1225 Franklin Avenue
Suite 450
Garden City, New York  11530
(516) 248-5757

TO:
CLERK
Southern District of New York
United States Courthouse
Foley Square
New York, New York  10007-1581

6

**EXHIBIT I**

*# C/// Signe*
*Agreeme*
*Do not lo*

# D'ONOFRIO GENERAL CONTRACTORS CORP.

**This Agreement**, made as of the **18th** day of **August** in the year two thousand five between **D'Onofrio General Contractors Corp.**, a New York Corporation (hereinafter called **DGCC**) and **CORESLAB Structures (CONN) Inc 1023 Waterbury Road Thomaston, CT 06787**

(hereinafter called the Subcontractor)

*Description of Work*

**Witnessed**, that the Subcontractor and DGCC agree as follows:

ARTICLE 1. The Subcontractor shall perform and furnish all the work, labor, services, materials, equipment, tools, and all other things necessary for the **Architectural and Structural Precast/Prestressed Concrete Products** (hereinafter called the Work) related to the **Consolidated Edison Mott Haven Substation** (hereinafter called the Project), located on premises at **Bronx, New York** (hereinafter called the Premises),as shown and described in and in strict accordance with the Contract Documents (Plans, Specifications and Sketches) listed in the Document list as itemized in Article A of Subcontractor's proposal dated July 22, 2005, thereto prepared by the DGCC's engineer VN Engineers and Consolidated Edison of New York (hereinafter called the Owner) and in strict accordance with the appendices annexed hereto and made a part hereof.

*Contract Documents*

ARTICLE II. The Plans, Specifications, General Conditions, Special Conditions, Addenda and Contract to be provided to the Subcontractor hereinabove mentioned, are available for examination by the Subcontractor at all reasonable times at the office of DGCC; all of the aforesaid, including this Agreement, being hereinafter sometimes referred to as the Contract Documents. The Subcontractor represents and agrees that it has carefully examined and understands this Agreement and the other Contract Documents, has investigated the nature, locality and site of the Work and the conditions and difficulties under which it is to be performed and that it enters into this Agreement on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any opinions or representations of DGCC, or of the Owner, or of any of their respective officers, agents, servants, or employees.

With respect to the Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to DGCC by each and all of the terms and provisions of the Contract and the other Contract Documents, and to assume toward DGCC all of the duties, obligations and responsibilities that DGCC by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that DGCC shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the Contract and the other Contract Documents has against DGCC with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. Likewise, DGCC agrees to assume toward Subcontractor all of the duties, obligations, and responsibilities that Owner by the Contract between Owner and DGCC assumes toward DGCC, and DGCC agrees further that Subcontractor shall have the same rights and remedies as DGCC under the terms and provisions of the contract between Owner and DGCC and the other Contract Documents has against the Owner. The terms and provisions of this Agreement with respect to the Work to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the Contract and the other Contract Documents.

This Agreement, the provisions of the Contract and the other Contract Documents are intended to supplement and complement each other and shall, where possible, be thus interpreted. If, however, any provision of this Agreement irreconcilably conflicts with a provision of the Contract and the other Contract Documents the Subcontract shall govern.

Although drawn by DGCC, this Agreement shall, in the event of any dispute over its meaning or application, be interpreted fairly and reasonably and neither more strongly for nor against either party to it.

*Time of Completion*

ARTICLE III. The Subcontractor shall commence the Work as agreed upon and shall diligently and continuously prosecute and complete the Work and coordinate the Work with the other work being performed on the Project, in accordance with the Project schedule, any revisions to the Project schedule, and any other scheduling requirements listed in this Agreement, so as not to delay, impede, obstruct, hinder or interfere with the commencement, progress or completion of the whole or any part of the Work or other work on the Project.

The Subcontractor shall participate and cooperate in the development of the agreed upon work schedule providing information for the scheduling of the times and sequence of operations required for its Work to meet DGCC's overall schedule requirements, shall continuously monitor the Project schedule so as to be fully familiar with the timing, phasing and sequence of operations of the Work and of other work on the Project, and shall execute the Work in accordance with the requirements of the Project schedule.

Should the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of the Subcontractor or any of its officers, agents, servants, employees, subcontractors or suppliers so as to cause any additional cost, expense, liability or damage to DGCC or to the Owner or any damages or additional costs or expenses for which DGCC or the Owner may or shall become liable, the Subcontractor shall and does hereby agree to compensate DGCC and the Owner for and indemnify them against all such costs, expenses, and direct damages. In no event shall Subcontractor be responsible to DGCC or any party for indirect, special, or incidental damages of any kind, no matter how based, under this agreement.

DGCC, if it deems necessary, may direct the Subcontractor to work overtime and if so directed the Contractor shall work said overtime and, provided that the Subcontractor is not in default under any of the terms or provisions of this Agreement or of the other Contract Documents, DGCC will pay the Subcontractor for such actual additional wages paid, if any, at rates which have been approved by DGCC, plus taxes imposed by law on such additional wages, plus workers compensation insurance, disability benefits and employer's liability insurance, and other such costs and levies on such additional wages to be paid by the Subcontractor.

-1-

*J.d., R.W.S*

If, however, the progress of the Work or of the Project be delayed by any fault or neglect or act or failure to act of the Subcontractor or any of its officers, agents, servants, employees, subcontractors or suppliers, then the Subcontractor shall, in addition to all of the other obligations imposed by this Agreement upon the Subcontractor in such case, and at its own cost and expense, work such overtime as may be necessary to make up for all time lost in the completion of the Work and of the Project due to such delay. Should the Subcontractor fail to make up for the time lost by reason of such delay, DGCC shall have the right to cause other subcontractors to work overtime and to take whatever other action it deems necessary to avoid delay in the completion of the Work and of the Project, and the cost and expense of such overtime and/or such other action shall be borne by the Subcontractor.

*Price*

ARTICLE IV. The sum to be paid by DGCC to the Subcontractor for the satisfactory performance and completion of the Work and of all of the duties of the Contractor under this Agreement *shall be* **Eleven Million Nine Hundred Thousand Dollars and No Cents ($11,900,000.00)** (hereinafter called the Price) in accordance with the attached.

*Monthly Estimate*

On or before the last day of each calendar month the Subcontractor shall submit to DGCC, in the form required by DGCC, a written requisition for payment showing the proportionate value of the Work installed to that date, from which shall be deducted: a reserve of ten percent (10%); all previous payments; and all charges for services, materials, equipment and other items furnished by DGCC to or chargeable to the Subcontractor; and the balance of the amount of such requisition, as approved by DGCC and the Architect and for which payment has been received by DGCC from the Owner, shall be due and paid to the Subcontractor within 30 days of receipt of payment request.

The obligation of DGCC to make a payment under this Agreement, whether a progress or final payment, or for extras or Owner change orders or Owner Delays to the Work, is subject to the express condition precedent of payment therefore by the Owner and the express approval of the Work by the Owner. If DGCC has provided payment or performance bonds or a combination payment and performance bond, in connection with the Work, the obligation of DGCC and its surety under any of those bonds to make any payment (whether a progress payment or final payment) to a claimant on that bond is similarly subject to the express condition precedent of payment therefore by the Owner.

The Subcontractor shall submit with its first requisition for payment a detailed schedule showing the breakdown of the Price into its various parts for use only as a basis of checking the Subcontractor's monthly requisitions.

DGCC reserves the right to advance the date of any payment (including the final payment) under this Agreement if, in its sole judgment, it becomes desirable to do so.

The Subcontractor agrees that, if and when requested so to do by DGCC, it shall furnish such information, evidence and substantiation as DGCC may require with respect to the nature and extent of all obligations incurred by the Subcontractor for or in connection with the Work, all payments made by the Subcontractor thereon, and the amounts remaining unpaid, to whom and the reasons therefore.

*Final Payment*

Final payment by DGCC to the Subcontractor shall not become due and payable until the following other express conditions precedent have been met: (1) the completion and acceptance of the Work by DGCC and the Architect and the express approval of the Work by the Owner; (2) provision by the Subcontractor of evidence satisfactory to DGCC that there are no claims, obligations or liens outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished, or incurred for or in connection with the Work; and (3) execution and delivery by the Subcontractor, in a form satisfactory to DGCC, of a General Release running to and in favor of DGCC and the Owner. Should there prove to be any such claim, obligation or lien after final payment is made, the Subcontractor shall refund to DGCC all monies that DGCC and/or the Owner shall pay in satisfying, discharging or defending against any such claim, obligation or lien or any action brought or judgment recovered thereon and all costs and expenses, including legal fees and disbursements, incurred in connection therewith. Final Payment, including all amounts due, including retention, will be paid by DGCC in full within 30 days of substantial completion and acceptance of Subcontractor's Work regardless of the anticipated project completion date or receipt of payment from others.

*Payments Withheld*

If any claim or lien is made or filed with or against DGCC, the Owner, the Project or the Premises by any person claiming the Subcontractor or any subcontractor or other person under subcontract has failed to make payment for any labor, services, materials, equipment, taxes or other items or obligations furnished or incurred for or in connection with the Work, or if at any time there shall be evidence of such nonpayment or of any claim or lien for which, if established, DGCC or the Owner might become liable and which is chargeable to the Subcontractor, or if the Subcontractor or any subcontractor or other person under subcontract causes damage to the Work or to any other work on the Project, or if the Subcontractor fails to perform or is otherwise in default under any of the terms or provisions of this Agreement, DGCC shall have the right to retain from any payment then due or thereafter to become due an amount which it deems sufficient to (1) satisfy, discharge and/or defend against any such claim or lien or any action which may be brought or judgment which may be recovered thereon, (2) make good any such nonpayment, damage, failure or default, and (3) compensate DGCC and the Owner for and indemnify them against any and all losses, liability, damages, costs and expenses, including legal fees and disbursements, which may be sustained or incurred by either or both of them in connection therewith. DGCC shall have the right to apply and charge against the Subcontractor so much of the amount retained as may be required for the foregoing purposes. If the amount is insufficient therefore, the Subcontractor shall be liable for the difference and pay the same to DGCC.

*Payments etc., non Acceptance*

No payment (final or otherwise) made under or in connection with this Agreement shall be conclusive evidence of the performance of the Work or of this Agreement, in whole or in part, and no such payment shall be construed to be an acceptance of defective, faulty or improper work or materials nor shall it release the Subcontractor from any of its obligations under this Agreement; nor shall entrance and use by the Owner constitute acceptance of the Work or any part thereof.

V.L  ⟨initials⟩

**Extension Of Time**

ARTICLE V  Should the Subcontractor be delayed, obstructed, hindered or interfered with in the commencement, prosecution or completion of the work by any cause, including but not limited to any act, omission, neglect, negligence or default by any other contractor or subcontractor on the Project, or by the Architect, the Owner or their contractors, subcontractors, agents or consultants, or by damage caused by fire or other casualty or by the combined action of workers or by governmental directive or order in no wise chargeable to the Subcontractor, or by extraordinary conditions arising out of war or government regulations, or by any other cause beyond the control of and not due to any fault, negligence, act or omission of the Subcontractor, its officers, agents, employees, subcontractors or suppliers, then the Subcontractor shall be entitled to an extension of time for a period equivalent to the time lost by reason of any and all of the aforesaid causes; provided, however, that the Subcontractor shall not be entitled to any such extension of time unless the Subcontractor (1) notifies DGCC in writing of the cause or causes of such delay, obstruction, hindrance or interference within seven (7) days of the commencement thereof and (2) demonstrates that it could not have anticipated or avoided such delay, obstruction, hindrance or interference and has used all available means to minimize the consequences thereof.

The Subcontractor agrees that it shall not be entitled to nor claim any cost reimbursement, compensation or damages for any delay, obstruction, hindrance or interference to the Work as per the above paragraph except to the extent that DGCC is entitled to corresponding cost reimbursement, compensation or damages from the Owner under the Contract Documents for such delay, obstruction, hindrance or interference, and then only to the extent of the amount, if any, which DGCC, on behalf of the Subcontractor, actually receives from the Owner on account of such delay, obstruction, hindrance or interference.

Should Subcontractor be delayed in the performance of it's work as the result of DGCC's direction or non-performance then (1) the time herein fixed for completion of the Subcontractor's work shall be extended for a period equivalent to the time lost by reason of the cause(s) aforesaid and (2) DGCC shall pay to Subcontractor's that amount of costs, fees, and expenses (Field work Union Increase in wages/dues) resulting from such delay including, those associated with the shutdown, interruption and resumption of the Subcontractor's Work.

**Freight Charges and Shipments**

ARTICLE VI.  The Subcontractor in making or ordering shipments shall not consign or have consigned materials, equipment or any other items in the name of DGCC.  DGCC is under no obligation to make payment for charges on shipments by or to the Subcontractor but any, at its option, pay such charges, in which case the Subcontractor shall reimburse DGCC for the amount of such payments plus a service charge of twenty-five percent (25%) of the amount so paid.

**Dimensions**

ARTICLE VII.  Notwithstanding the dimensions on the Plans, Specifications and other Contract Documents it shall be the obligation and responsibility of the Subcontractor to take such measurements as will insure the proper matching and fitting of the Work covered by this Agreement with contiguous work.

**Shop Drawings**

The Subcontractor shall prepare and submit to DGCC such shop drawings as may be necessary to describe completely the details and construction of the Work.  Approval of such shop drawings by DGCC and/or the Architect shall not relieve the Subcontractor from its responsibility for any deficiency in the shop drawing nor of its obligation to perform the Work in strict accordance with the Plans, Specifications, the Additional Provisions hereof and the other Contract Documents, nor of its responsibility for the proper placement, fabrication, installation, matching and fitting of the Work with contiguous work and the coordination of the Work with other work being performed on the site, which obligation and responsibility shall continue until completion of the Work.

**Contiguous Work**

Should the proper and accurate performance of the Work hereunder depend upon the proper and accurate performance of other work not covered by this Agreement, the Subcontractor shall carefully examine such other work, determine whether it is in fit, ready and suitable condition for the proper and accurate performance of the Work hereunder, use all reasonable means necessary to discover any defects in such other work, and before proceeding with the Work hereunder, report promptly any such improper conditions and defects to DGCC, in writing and allow DGCC a reasonable time to have such improper conditions and defects remedied. Sub Contractor shall proceed w/ Fabrications of the material after approval of shop drawings.

**Interpretation of Agreement, Plans and Specifications**

ARTICLE VIII.  The Work hereunder is to be performed and furnished under the direction and to the satisfaction of both the Owner and DGCC.  The decision of the Architect as to the true construction, meaning and intent of the Plans and Specifications shall be final and binding upon the parties hereto.  DGCC will furnish to the Subcontractor such additional information and Plans as may be prepared by the Architect to further describe the Work to be performed and furnished by the Subcontractor and the Subcontractor shall conform to and abide by the same.  If any interpretation of this Agreement is needed after execution, DGCC shall make such interpretation, which shall be conclusive and binding.

The Subcontractor shall not make any changes, additions and/or omissions in the Work except upon written order of DGCC as provided in Article IX hereof.

**Change Orders, Additions and Deductions**

ARTICLE IX.  DGCC reserves the right, from time to time, whether the Work or any part thereof shall or shall not have been completed, to make changes, additions and/or omissions in the Work as it may deem necessary, upon written order to the Subcontractor.  Said changed, additional, or deleted work shall be referred to as "Change Order Work".  The value of the Change Order Work shall be stated in said written order and shall be added to or deducted from the Price.  Neither oral directives nor any written directives not designated by DGCC as a Change Order will constitute Change Orders. Upon receipt of a Change Order from DGCC, the Subcontractor shall promptly comply by performing all work in accordance with the Change Order.

The value of the work to be changed, added or omitted shall be determined by the lump sum or unit prices, if any, stipulated herein for such work.  If no such prices are stipulated, such value shall be determined by whichever of the following methods or

-3-

V.L.  [signature]

combination thereof DGCC may elect:

(a)    By adding or deducting a lump sum or an amount determined by a unit price agreed upon between the parties hereto.

(b)    By adding (1) the actual net cost to the Subcontractor of labor in accordance with the established rates, including required union benefits, premiums the Subcontractor is required to pay for workmen's compensation, disability benefits and employer's liability insurance, and payroll taxes on such labor, (2) the actual cost to the Subcontractor of materials and equipment and such other direct costs as may be approved by DGCC, less all savings, discounts, rebates and credits, (3) an allowance of 10% for overhead on items (1) and (2) above, and (4) an allowance of 10% for profit on items (1) and (2) above.

Should the parties hereto be unable to agree as to the value of the work to be changed, added or omitted, the Subcontractor shall proceed with the work promptly under the written order of DGCC from which order the stated value of the work shall be omitted, and the determination of the value of the work shall be referred to the Owner whose decision shall be final and binding upon the parties hereto.

In the case of omitted work DGCC shall have the right to withhold from payments due or to become due to the Subcontractor an amount which, in DGCC's opinion, is equal to the value of such work until such time as the value thereof is determined by agreement or by the Owner as hereinabove provided.

All changes, additions or omissions in the Work ordered in writing by DGCC shall be deemed to be a part of the Work hereunder and shall be performed and furnished in strict accordance with all of the terms and provisions of this Agreement and the other Contract Documents.

Payment to DGCC by the Owner shall be an express condition precedent which must occur before DGCC shall be obligated to make payment for Change Order Work authorized by the owner to the Subcontractor.

*Inspection and Defective Work*

ARTICLE X.  The Subcontractor shall at all times provide sufficient, safe and proper facilities for the inspection of the Work by DGCC, the Architect and their authorized representatives in the field, at shops or at any other place where materials or equipment for the Work are in the course of preparation, manufacture, treatment or storage. The Subcontractor shall, within Five (5) days after receiving written notice from DGCC, proceed to take down all portions of the Work and remove from the premises all materials which the Architect or DGCC shall condemn as unsound, defective or improper or as in any way failing to conform to this Agreement or the Plans, Specifications or other Contract Documents, and the Subcontractor, at its own cost and expense, shall replace the same with proper and satisfactory work and materials and make good all work damaged or destroyed by or as a result of such unsound, defective, improper or nonconforming work or materials or by the taking down, removal or replacement thereof.

The Owner shall have the right at all times to inspect the operations and records of the Subcontractor relating to this Agreement.

*Failure to Prosecute, etc.*

ARTICLE XI.  Should the Subcontractor at any time refuse or neglect to supply a sufficiency of skilled workers or materials of the proper quality, or fail in any respect to prosecute the Work with promptness and diligence, or cause by any act or omission the stoppage, obstruction, hindrance or delay of or interference with or damage to the work of DGCC or of any other contractors or subcontractors on the Project, or fail in the performance of any of the terms and provisions of this Agreement or of the other Contract Documents, or should the Architect determine that the Work or any portion thereof is not being performed in accordance with the Contract Documents, or should there be filed by or against the Subcontractor a petition in bankruptcy or for an arrangement or reorganization, or should the Subcontractor become insolvent or be adjudicated a bankrupt or go into liquidation or dissolution, either voluntarily or involuntarily or under a court order, or make a general assignment for the benefit of creditors, or otherwise acknowledge insolvency, or if the Subcontractor's interest in this Agreement is sublet assigned, transferred, conveyed or otherwise disposed of without DGCC's consent, or if the Subcontractor willfully or in bad faith violates any provision or this Agreement, or if the Subcontractor shall fail to comply with any of the laws, rules, regulations or orders that may be applicable to this Contract, then in any of such events, each of which shall constitute a default hereunder on the Subcontractor's part, DGCC shall have the right, in addition to any other rights and remedies provided by this Agreement and the other Contract Documents or by law, after three (3) days written notice to the Subcontractor mailed or delivered to the last known address of the latter, (a) to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to the Contractor under this Agreement, and/or (b) to terminate the employment of the Subcontractor for all or any portion of the Work, to employ any person or persons to complete the Work and provide all the labor, services, materials and other items required therefore. In case of such termination of the employment of the Subcontractor, the Subcontractor shall not be entitled to receive any further payment under this Agreement until the Work shall be wholly completed to the satisfaction of DGCC and the Architect and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by DGCC in completing the Work, such excess shall be paid by DGCC to the Subcontractor; but if such cost and expense shall exceed such unpaid balance, then the Subcontractor shall pay the difference to DGCC. Such cost and expense shall include, not only the cost of completing the Work to the satisfaction of DGCC and the Architect and of performing and furnishing all labor, services, materials, equipment, and other items required therefore, but also all losses, damages, costs and expenses, including legal fees and disbursements sustained, incurred or suffered by reason of or resulting from the Subcontractor's default.

-4-

*Loss or Damage to Work*

ARTICLE XII.  DGCC shall not be responsible for any loss or damage to the Work to be performed and furnished under this Agreement, when caused by the subcontractor, until after final acceptance thereof by DGCC and Architect or use by DCGG or others, nor shall DGCC be responsible for loss of or damage to materials, tools, equipment, appliances or other personal property owned, rented or used by the Subcontractor or anyone employed by it in the performance of the Work, however caused.

*Cleaning Up*

ARTICLE XIII.  The Subcontractor shall, in accordance with its work, at its own cost and expense, (1) keep the Premises free at all times from all waste materials, packaging materials and other rubbish accumulated in connection with the execution of its Work by collecting and depositing said materials and rubbish in locations or containers from which it shall be removed by the Subcontractor from the Premises without charge, (2) clean and remove from its own Work and from all contiguous work of others any soiling, staining, mortar, plaster, concrete or dirt caused by the execution of its Work and make good all defects resulting there from (3) at the completion of its Work in each area, perform such cleaning as may be required to leave the area "broom clean", and (4) at the entire completion of it Work remove all of its tools, equipment, scaffolds, shanties and surplus materials.  Should the Subcontractor fail to perform any of the foregoing to DGCC's satisfaction, DGCC shall have the right to perform and complete such work itself or through others and charge the cost thereof to the Subcontractor.  DGCC will provide the waste containers/dumpsters required for the Cleaning Up Operations.

*Compliance with Law and Permits*

ARTICLE XIV.  The Subcontractor shall obtain and pay for all necessary permits and licenses pertaining to the Work and shall comply with all Federal, State, Municipal and local laws, ordinances, codes, rules, regulations, standards, orders, notices and requirements, including but not limited to those relating to safety, discrimination in employment, fair employment practices and equal employment opportunity, as provided for by the Plans, Specifications, General Conditions, or other Contract Documents, without additional charge or expense to DGCC, and shall also be responsible for and correct, at its own cost and expense, any violations thereof resulting from or in connection with the performance of its Work. The Subcontractor shall at any time upon demand furnish such proof as DGCC may require showing such compliance and the correction of such violations.  The Subcontractor agrees to the extent of its negligence to save harmless and indemnify DGCC, the and the Owner from and against any and all loss, injury, claims, actions, proceedings, liability, damages, fines, penalties, costs and expenses, including legal fees and disbursements, caused or occasioned directly or indirectly by the Subcontractor's failure to comply with any of said laws, ordinances, rules, regulations, standards, orders, notices or requirements or to correct such violations.

*Labor to be Employed*

ARTICLE XV.  Neither the Subcontractor nor any of its employees or subcontractors is or shall be an agent, servant, or employee of the Owner by virtue of this Agreement or by virtue of any approval, permit, license, grant, right, or other authorization given by the Owner, or any of their officers, agents, or employees.

The Subcontractor shall not employ men, means, materials or equipment which may cause strikes, work stoppages or any disturbances by workers employed by the Subcontractor, Dgcc or other contractors or subcontractors on or in connection with the Work or the Project or the location thereof. The Subcontractor agrees that all disputes as to jurisdiction of trades shall be adjusted in accordance with any plan for the settlement of jurisdictional disputes which may be in effect either nationally or in the locality in which the Work is being done and that it shall be bound and abide by all such adjustments and settlements of jurisdictional disputes, provided that the provisions of this Article shall not be in violation of or in conflict with any provisions of law applicable to the settlement of such disputes. Should the Subcontractor fail to carry out or comply with any of the foregoing provisions. DGCC shall have the right, in addition to any other rights and remedies provided by this Agreement or the other Contract Documents or by law, after three (3) days written notice mailed or delivered to the last known address of the Subcontractor, to terminate this Agreement or any part thereof or the employment of the Subcontractor for all or any portion of the Work.

*Taxes and Contributions*

ARTICLE XVI.  The Subcontractor, for the Price herein provided for and proper and timely receipt of due payments from DGCC, hereby accepts and assumes exclusive liability for and shall indemnify, protect and save harmless DGCC and the Owner from and against the payment of:

1.    All contributions, taxes or premiums (including interest and penalties thereon) which may be payable under the Unemployment Insurance Law of any State, Federal Social Security Act, Federal, State, County and/or Municipal Tax Withholding Laws, or any other law, measured upon the payroll of or required to be withheld from employees, by whomsoever employed, engaged in the Work to be performed and furnished under this Agreement.

2.    All sales, use, personal property and other taxes (including interest and penalties thereon) required by Federal, State, County, Municipal or other law to be paid or collected by the Contractor or any of its subcontractors or vendors or any other person or persons acting for, through or under it or any of them, by reason of the performance of the Work or the acquisition, ownership, furnishing or use of any materials, equipment, supplies, labor, services or other items for or in connection with the Work.

3.    All pension, welfare, vacation, annuity and other union benefit contributions payable under or in connection with labor agreements with respect to all persons, by whomsoever employed, engaged in the Work to be performed and furnished under this Agreement.

Pursuant to Section 1115 (a) (15) of the New York State Tax Law, purchases of tangible personal property by the Subcontractor or its subcontractors arising out of this Agreement are exempt from the sales and use tax imposed by Article 28 of the New York State Tax Law, to the extent that such property (i) is used to alter, maintain or improve, and becomes an integral component

-5-

part of, the real property which is improved under the Agreement or (ii) remains tangible personal property and is installed on such real property. This exemption does not apply to tools, machinery, equipment or other property leased by the Subcontractor or its subcontractors, or to supplies, materials or other property which are consumed in the course of construction or for any other reason not incorporated into the real property which is improved under the Agreement.

*Patents*

ARTICLE XVII. The Subcontractor hereby agrees to indemnify to the extent of its negligence, protect and save harmless DGCC and the Owner from and against any and all liability, loss or damage and to reimburse DGCC and the Owner for any expenses, including legal fees and disbursements, to which DGCC and the Owner may be put because of claims or litigation on account of infringement or alleged infringement of any letters patent or patent rights by reason of the Work or materials, equipment or other items used by the Subcontractor in its performance.

*Mechanic's Liens or Claims*

ARTICLE XVIII. If any subcontractor, laborer, material man or supplier of the Subcontractor or any other person directly or indirectly acting for, through or under it or any of them files or maintains a lien or claim, whether a mechanics' lien or an attested account or otherwise, a mechanic's lien or claim against the Project or Premises or any part thereof or any interests therein or any improvements thereon or against any monies due or to become due from the Owner to DGCC or from DGCC to the Subcontractor, for or on account of any work, labor, services, materials, supplies, equipment or other items performed or furnished for or in connection with the Work or under any change order or supplemental agreement for extra or additional work in connection with the Project, the Subcontractor agrees based upon timely and proper receipt of due payments from DGCC to cause such liens and claims to be satisfied, removed or discharged at its own expense by bond, payment or otherwise within ten (10) days from the date of the filing thereof, and upon its failure so to do DGCC shall have the right, in addition to all other rights and remedies provided under this Agreement and the other Contract Documents or by law, to cause such liens or claims to be satisfied, removed or discharged by whatever means DGCC chooses, at the entire cost and expense of the Subcontractor (such cost and expense to include legal fees and disbursements). The Subcontractor agrees to indemnify to the extent of its negligence, protect and save harmless DGCC, and the Owner from and against any and all such liens and claims and actions brought or judgments rendered thereon, and from and against any and all loss, damages, liability, cost and expenses, including legal fees and disbursements, which DGCC, and/or the Owner may sustain or incur in connection therewith.

*Assignment and Subletting*

ARTICLE XIX. Neither this Agreement nor any monies due or to become due hereunder shall be assignable without the prior written consent of DGCC nor shall the whole or any part of this Agreement be sublet without like prior written consent. Any such assignment or subletting without such prior written consent shall be void and of no effect and shall vest no right or right of action in the assignee or subcontractor against DGCC. DGCC's consent to any assignment or subletting shall not relieve the Subcontractor of any of its agreements, duties, responsibilities or obligations under this Agreement and the other Contract Documents, and the Subcontractor shall be and remain as fully responsible and liable for the defaults, neglects, acts and omissions of its assignees and subcontractors and all persons directly or indirectly employed by them as it is for its own defaults, neglects, acts and omissions and those of its own officers, agents, servants and employees. The Subcontractor shall bind each of its subcontractors to all of the terms, provisions and covenants of this Agreement and the other Contract Documents with respect to the sublet Work. DGCC's consent to any subletting shall not be deemed to create any contractual relationship between DGCC and any subcontractor to whom the Work or any portion thereof is sublet, and shall not vest any right or right of action in such subcontractor against DGCC.

*Termination of Agreement*

ARTICLE XX. DGCC shall have the right at any time by written notice to the Subcontractor, to terminate without fault this Agreement and require the Subcontractor to cease work hereunder, in which case, provided the Subcontractor be not then in default, DGCC shall indemnify the Subcontractor against any damage directly resulting from such termination, except that the Subcontractor shall not be entitled to anticipated profits on work unperformed or on materials or equipment unfurnished.

*Guarantees*

ARTICLE XXI. The Subcontractor hereby guarantees the Work to the full extent provided in the Plans, Specifications, General Conditions, Special Conditions and other Contract Documents.

The Subcontractor shall promptly remove, replace and/or repair at its own expense as DGCC may direct and at the convenience of the Owner any faulty, defective or improper work, materials or equipment discovered within one (1) year from the date of the acceptance of the Project as a whole by the Architect and the Owner. Upon the Subcontractor's failure to promptly repair and/or replace any such defect, DGCC may cause the same to be repaired and/or replaced and the Subcontractor shall promptly pay to DGCC all costs incurred by DGCC in connection therewith.

Without limitation to the foregoing, the Subcontractor shall pay in addition for all damage to the Project resulting from defects in the Work and all costs and expenses necessary to correct, remove, replace and/or repair the Work and any other work or property which may be damaged in correcting, removing, replacing or repairing the Work.

*Accident of Prevention*

ARTICLE XXII. The Subcontractor agrees that the prevention of accidents to workmen engaged upon or in the vicinity the Work is its responsibility. The Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices and requirements concerning safety as shall be applicable to the Work, including, among others, the Federal Occupational Safety and Health Act of 1970, as amended, and all standards, rules, regulations and orders which have been or shall be adopted or issued there under, and with the safety standards established during the progress of the Work by DGCC. When so ordered, the Subcontractor shall stop any part of the Work which DGCC deems unsafe until corrective measures satisfactory to DGCC have been taken, and the Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should the Subcontractor neglect to take any such corrective measures, DGCC may do so at the cost and expense

-6-

V.L.

of the Subcontractor and may deduct the cost thereof from any payments due or to become due to the Subcontractor. Failure on the part of DGCC to stop unsafe practices shall in no way relieve the Subcontractor of its responsibility thereof.

*Liability for Damage and Personal Injury*

    ARTICLE XXIII. The Subcontractor hereby assumes entire responsibility and liability for any and all damage or injury of any kind or nature whatever (including death resulting there from) to all persons, whether employees of any tier of the Subcontractor or otherwise, and to all property caused by, resulting from, arising out of or occurring in connection with the execution of the Work, or in preparation for the Work, or any extension, modification, or amendment to the Work by change order or otherwise directly caused by subcontractor. The Subcontractor to the extent of its negligence agrees to indemnify and save harmless DGCC, the Owner, their officers, agents, servants and employees from and against any and all such claims, judgments and further from and against any and all loss, cost, expense, liability, damage or injury, including legal fees and disbursements, that DGCC, the Owner, their officers, agents, servants or employees may directly or indirectly sustain, suffer or incur as a result thereof, and the Subcontractor agrees to and does hereby assume, on behalf of DGCC, the Owner, their officers, agents, servants and employees, the defense of any action at law or in equity which may be brought against DGCC, the Owner, their officers, agents, servants and employees, upon or by reason of such claims and to pay on behalf of DGCC, the Owner, their officers, agents, servants and employees, upon demand, the amount of any judgment that may be entered against DGCC, the Owner, their officers, agents, servants or employees in any such action. In the event that any such claims, loss, cost, expense, liability, damage or injury arise or are made, asserted or threatened against DGCC, the Owner, their officers, agents, servants or employees, DGCC shall have the right to withhold from any payments due or to become due to the Subcontractor if the defense of such is not undertaken by subcontractor or its insurer an amount sufficient in its judgment to protect and indemnify DGCC, the Owner, their officers, agents, servants and employees from and against any and all such claims, loss, cost, expense, liability, damage or injury, including legal fees and disbursements, or DGCC, in its discretion may require the Subcontractor to Furnish a surety bond satisfactory to DGCC guaranteeing such protection, which bond shall be furnished by the Subcontractor within five (5) days after written demand has been made therefore.

    In furtherance to but not in limitation of the indemnity provisions in this Agreement, Subcontractor hereby expressly and specifically waives any statutory or constitutional immunity it enjoys from suits by its own employees or from limitations of liability or recovery under workers compensation laws.

*Indemnification*

    ARTICLE XXIV. To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner and/or Contractor and employee of either of them from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of the Subcontractor's Work, provided that such claim, damage, loss or expense is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself), cause in whole or in part by negligent acts or omissions of the Subcontractor, the Subcontractor's Sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, regardless of whether or not such claims, damage, loss or expense is caused in part by a party indemnified hereunder. Such obligation shall not be construed to negate, abridge, or otherwise reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this paragraph.

    In claims against any person or entity indemnified under this paragraph by an employee of the subcontractor, the Subcontractor's Sub-contractors, anyone directly or indirectly employed by them or anyone for whose acts they may be liable, the indemnification obligation under this paragraph shall not be limited by a limitation on amount or type of damages, compensation or benefits payable by or for the Subcontractor or the Subcontractor's Subcontractor under Workers' or Workmen's Compensation Acts or other employee benefit acts.

    The obligations of the Subcontractor under this paragraph shall not extend to the liability of the Architect, the Architect's consultants, and agents and employees of any of them arising out of (1) the preparation or approval of maps, drawing, opinions, reports, surveys, Change Orders, designs, or specifications, or (2) the giving of or the failure to give directions or instruction by the Architect, the Architect's consultants, and agents and employees of any of them provided such giving or failure to give is the primary cause of the injury or damage.

    Subcontractor waives all rights against Contractor, Owner and Architect and their agents, officers, directors and employees for recovery of damages to the extent that these damages are covered by Commercial General Liability Umbrella liability, business auto liability or workers compensation and employers liability maintained per insurance requirements stated above.

*Insurance Requirements*

    ARTICLE XXV. The Subcontractor shall purchase and maintain insurance of the following types of coverage and limits of liability:

| | |
|---|---|
| Commercial General Liability – including | $1,000,000 Each Occurrence |
|   Contractual Liability | $2,000,000 Aggregate, PER PROJECT |
| Workers' Compensation and Employers Liability | $1,000,000 Each Employee |
| Business Automobile, Including HNOA | $1,000,000 CSL per Accident |
| Umbrella Liability | $1,000,000 |

-7-



The Owner and/or Contractor are to be named as an additional insured on a primary basis to the Subcontractor's Comprehensive General Liability using appropriate ISO forms that include Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provide equivalent protection.

Coverage's written on an occurrence basis shall be maintained without interruption from date of commencement of the Subcontractor's work until expiration of the applicable statute of limitations relating to latent defect in construction of or improvement to real property of the state in which the work is performed. Coverage shall include contractual liability.

Certificates of Insurance acceptable to the Contractor shall be filed with the Contractor prior to commencement of the subcontractor's work. The certificates and insurance policies required by Article 2 shall contain the language shown on the sample certificate enclosed, and contain a provision that coverage afforded under the policies will not be canceled or allowed to expire until at least 30 days' prior written notice has been given to the Contractor. If any of the foregoing insurance coverage's are required to remain in force after final payment and are reasonably available, an additional certificate evidencing continuation of such coverage shall be submitted with the final application for payment as required. If any information concerning reduction of coverage is not furnished by the insurer, it shall be furnished by the Subcontractor with reasonable promptness according to the Subcontractor's information and belief.

Waivers of Subrogation. The Contractor and Subcontractor waive all rights against (1) each other and any of their Subcontractors, Sub-subcontractors, agents and employee, each of the other, and (2) the owner, the Architect, the Architect's consultants, separate contractors, and any of their subcontractors, sub-contractors, agents and employees for damages caused by fire or other perils to the extent covered by property insurance provided under the Contract or other property insurance applicable to the Work except such rights as they may have to proceeds of such insurance held by the Owner as fiduciary. The Subcontractor shall require of the Subcontractor's Sub-subcontractors, agents and employees, by appropriate agreements, written where legally required for validity, similar waivers in favor of other parties enumerated herein. If possible, the policies shall provide such waivers of subrogation by endorsement or otherwise. A waiver of subrogation shall be effective as to a person or entity even though that person or entity would otherwise have a duty of indemnification, contractual or otherwise, did not pay the insurance premium directly or indirectly, and whether or not the person or entity had an insurable interest in the property damaged.

*Maintenance of Records*

ARTICLE XXVI. The Subcontractor agrees to maintain accurate, readily auditable records and accounts, with supporting documentation and prepared in accordance with sound accounting principles, of the Work performed by it, its employees, and its subcontractors under this Agreement, and of all financial accounts and transactions maintained or undertaken in connection with this Agreement, including, but not limited to, time cards and records reflecting the nature of the work performed and time consumed, bank statements, canceled checks, bills and receipts, requests for payment, and deposit slips, and to have such records available for inspection and audit by the Owner upon reasonable notice. Said records shall be maintained for a period of six years after termination of this Agreement. However, Work performed on a lump sum basis or the make up of any unit prices are not auditable.

*Title*

ARTICLE XXVII. Title to all materials, tools, and equipment purchased pursuant to this Agreement shall be vested in the Owner upon proper payment of the subcontractor. At the completion of the Work and when no longer required the Subcontractor shall, at the Owner's election, either deliver the remaining tools, equipment, and materials to the Owner or sell them for the account of the Owner. (Not Applicable)

*Severability*

ARTICLE XXVIII. In the event that any provision or any part of a provision of this Agreement shall be finally determined to be superseded, invalid, illegal or otherwise unenforceable pursuant to applicable laws by an authority having jurisdiction, such determination shall not impair or otherwise affect the validity, legality, or enforceability of the remaining provisions or parts of provisions of this Agreement, which shall remain in full force and effect as if the unenforceable provision or part were deleted.

*Entire Agreement*

ARTICLE XXIX. This Agreement constitutes the entire agreement between the parties hereto. No oral agreements have been made by DGCC except as stated in the Agreement. This Agreement may not be changed in any representations or other way except as herein provided, and no term or provision hereof may be waived by DGCC except in writing signed by its duly authorized officer or agent. The marginal descriptions of any term or provision of this Agreement are for convenience only and shall not be deemed to limit, restrict or alter the content, meaning or effect thereof.

The said parties, for themselves, their heirs, executors, administrators, successor and assigns, do hereby agree to the full performance of all of the terms and provisions herein contained.

**In Witness Whereof** the parties to these presents have hereunto set their hands as of the day and year listed above written

In the Presence of: (Witness)                                    D'ONOFRIO GENERAL CONTRACTORS CORP.

X _____                    By: _____

In the Presence of: (Witness)

                                                                X _____
                                                                                                    Subcontractor
                                                                _LEON H. GRANT_

X _____                    By: _____
                                                                                                    Official Title

Subcontractor's _____ State Unemployment Ins. No. _____
                 (Insert State and Register No. for State in which the Work is to be performed)

Subcontractor's License No. _____
                 (Insert License No., if any, for State or locality in which the Work is to be performed)

Subcontractor's _____ State Sales Tax Registration No. _____
                 (Job Location)

PLEASE AFFIX
CORPORATE SEAL
AFTER SIGNING

-9-

## INSURANCE REQUIREMENTS ATTACHMENT

GL Occurrence form with limits not less than 1mm occurrence/2mm Aggregate to include Premises, Operations, Products/Completed Operations, contractual, personal & advertising liability.

Automobile Liability with limits not less than 1mm each accident.

Workers Compensation and Employers Liability with limits of at least 500,000/500,000/500,000

Commercial Umbrella with Limits of at least 5mm

GL Limits are on a per job basis.

Waiver of Subrogation in favor of DGCC.

DGCC is listed as additional insured.

Hold Harmless and Indemnification in favor of DGCC.

# APPENDICES

**Appendix A - Additional Provisions**

1. The Subcontractor agrees to comply with the provisions contained in Equal Employment and Affirmative Action for Construction Contractors.
2. Building control, layouts and benchmarks will be provided by DGCC;
3. The subcontractor must read and comply with the Environmental Health and Safety Plan (eHASP) produced by DGCC before any work on site can be performed. The contractor will review and sign the master copy of the eHASP in the presence of DGCC's safety manager on site. Any violation of the eHASP provisions is grounds for dismissal or relief for cause.
4. Payment shall be made within 30 days of Core Slab's submitted invoice and receipt of ICIP monthly payroll reports. However, DGCC submits invoices on the 15th and 30th of each month and therefore we would expect a pencil copy of the invoice from Core Slab a minimum of three (3) working days before the 15th and 30th of the month.
5. Certificates of insurance should read as follow:

   Subcontractors, at their own expense, shall procure, carry and maintain on all of its operations Workers' Compensation and Employer's Liability Insurance covering all of its employees, Public Liability and Property Damage Insurance, and Automobile Public Liability and Property Damage Insurance. Coverage limits shall be equal to or greater than $1,000,000 per Occurrence and $2,000,000 General Aggregate for General Liability and $1,000,000 Combined Single Limit for Automobile Insurance. Subcontractor is required name D'Onofrio General Contractors as Additional Insured on Subcontractor's General Liability Policy.

   Subcontractors shall provide D'Onofrio General Contractors Corp., prior to commencement of work, a Certificate of insurance evidencing coverage is in effect with said limits, and will not be canceled without thirty (30) days written notice D'Onofrio General Contractors Corp. Subcontractor will also name the owner as additionally insured as per work to be performed under contract with D'Onofrio General Contractors Corp.

   To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless D'Onofrio General Contractors Corp., against any and all claims, damages, losses and expenses, including legal fees arising out of, or resulting from performance of subcontracted work to the extent caused in whole or in part by the Subcontractor. Coverage will also be excluded for injury to temporary and leased workers of the subcontractor.

**Appendix B – Scope of Work**

To be performed in accordance with the Contract Drawings, Shop Drawings, Specifications and Special Conditions.

**Appendix C - Schedule**

All work must be completed by milestone dates as per DGCC's approved schedule.
As discussed, CSCONN will be held to the all Pre-Cast Delivery and Erection dates that are on the approved project schedule.

-11-

<u>Completion of the Work shall mean acceptance and approval by the Owner of all Work required under this Contract.</u>

**Appendix D** - Specifications

**Appendix E** – Contract Drawings

**Appendix F** – Special Conditions of the Contract by Consolidated Edison of New York

**Appendix G** – Environmental Health and Safety Plan (eHASP)

~~**Appendix H** – Core Slab Proposal dated July 22, 2005, and DGCC's acceptance letter dated August 18, 2005~~

**Appendix I** – Revised proposal dated October 10, 2005,
                Certificate & Safety Award dated October 11, 2005
                Letter of Intent dated October 14, 2005

-12-

# D'Onofrio General Contractors Corp.

## 202 28th Street

## Brooklyn, NY 11232

Phone: (718) 832-5700
Fax: (718) 832-5772

October 14, 2005

Via Fax: 860 283 0165

Coreslab Structures (CONN) Inc.

Attn.: Robert DelVento

Re.:   Mott Haven Project
       Letter of Intent

Gentlemen:

As per our recent meetings, D'Onofrio General Contractors Corp. (DGCC) is notifying Coreslab Structures (CSCONN) to proceed with your scope of work for $11,900,000.00. A formal contract will follow.

Please note, all work to be in accordance with the terms and conditions, special conditions, plans specification, insurance requirements, Project Schedule, and EHASP. As discussed, CSCONN will be held to the all Pre-Cast Delivery and Erection dates that are on the approved project schedule. If these dates are not met because of CSCONN, a monetary penalty will be deducted from the contract price. CSCONN will also utilize LEAP Associates as the engineering firm for the project. CSCONN may release all previously approved RFI's and submittals, including Brick.

Sincerely
D'Onofrio General Contractors Corp.

Vincent Leone





| To: | Vinny Leone | From: | Robert Del Vento Jr |
| | D'Onofrio Construction | | Coreslab Structures (CONN) Inc. |

**Fax No.**   (718) 292-9391

| Phone: | ~~718-892-5715~~ (718) 292-930; | Fax No. | (860) 283-0165 |
| Date: | October 11, 2005 | Email. | Rdelvento@coreslab.com |
| Re: | PCI Certificate & Safety Award | Phone No. | (860) 283-8281 |
| | | Cell No. | (860) 484-9439 |

**No. Pages including cover** _____1_____

Coreslab Structures (CONN) Inc. can currently meet the following project schedule:

- Building 345KV to begin installing precast  April 3rd  completed for June 16th
- Administration/Control Building and Building 13KV  to begin installing precast May 1st completed by July 15th.
- Site-walls to be installed in the 4th Qtr. 2006.

Prompt (i.e. one-week) turnaround for engineering submittals is necessary to maintain the anticipated project schedule.  Coreslab will not be held responsible for any delays that result from delinquent engineering review.

Call if you should have any questions.

Thank you,


Rob Del Vento Jr.

October 10th, 2005

D'Onofrio
202 – 28th Street
Brooklyn, NY 11232

RE:   Mott Haven Substation
       Bronx, New York
       Our Estimate No. C-2113 *Revised*

Gentlemen:

Thank you for the opportunity to submit this proposal for the supply of precast concrete products for the project referenced above.

We propose to fabricate, deliver and erect the products described in the attached Exhibit "A" for the Base Proposal sum of $11,959,250.00, excluding taxes.

*11,900,000 per signed contract*

**Note: Due to current fuel price increases, materials and trucking will increase beyond this proposal, as required by the time of manufacturing and delivery of products.**

This proposal is valid for Ten (10) days from the date of this proposal and subject to a Sub-Contract acceptable to Coreslab Structures (CONN) Inc.

The following Exhibits, attached hereto, form a part of this proposal:

       Exhibit "**A**" - Scope of work
       Exhibit "**B**" - Description of Finishes
       Exhibit "**C**" - Contract Documents and Design Criteria
       Exhibit "**D**" - General Terms and Conditions
       Exhibit "**E**" - Additional information (as required)
       Exhibit "**F**" - Description of Alternatives to Base Proposal
       Exhibit "**G**" – Drawing List

Again, we thank you working with us in developing this proposal, and look forward to working with you on this project.

Respectfully
**Coreslab Structures (Conn) Inc.**

Robert Del Vento Jr.
Sales Manager

Coreslab Structures (Conn) Inc.                    Page 2

# EXHIBIT "A" SCOPE OF WORK

This proposal includes the products described below, in the quantities noted, and with the finishes indicated.

| Product Description | Number Pieces | Approximate Quantity |
|---|---|---|
| Insulated Precast Exterior Wall Panels | 120 pcs. | 32,501 SF |
| Solid Precast Exterior Wall Panels | 89 pcs. | 24,948 SF |
| Insulated Precast Interior Wall Panels, partition Type 'B'. | 112 pcs. | 35,300 SF |
| Solid Precast Interior Wall Panels, partition Type 'C' | 80 pcs. | 27,050 SF |
| Precast Exterior Sills @ grade, Detail 1/ 342821 | 370 pcs. | 1,475 LF |
| Exterior Precast Perimeter Fence walls and columns | 177 pcs. | 15,315 SF |
| Structural Column | 142 pcs. | 4,655 LF |
| Structural Solid & Hollowcore Slabs | - | 6,900 SF |
| Structural Double Tees | 290 pcs. | 79,500 SF |
| Precast Stairs (Stairs #1, #2 & #3) | 14 Stair units | - |
| Precast Beams | 186 pcs. | 4,680 LF |

This proposal is based upon drawings and specifications prepared by Con Edison dated 04/28/05, Revision 2 dated 07/15/05 and Exhibit 'G' with the following clarifications:

**Inclusions:**
This proposal includes the following items:
1. Architectural Exterior Face Mix, 5,000-psi, using locally available aggregates.
2. Interior Walls, Structural Beams, Columns, Double Tees, Stairs and Slabs shall be Standard 5,000-psi Concrete, using Grey Cement and locally available aggregates.
3. Furnish only, F.O.B. jobsite, all miscellaneous steel assemblies shown on our shop drawings, which are to be placed by others in cast-in-place concrete, cast-in-precast supplied by ~~Coreslab welded to structural steel~~ for the use of attachment of the product being supplied by Coreslab Structures (CONN) Inc. These assemblies are to be placed with tolerances of +/-¼".
4. Bearing pads for Precast.
5. One full size mock-up to be viewed at plant (Thomaston, CT). Full size mock-up to be incorporated into project.
6. All miscellaneous steel items embedded in our members that are used to connect members together, and to structure.
7. Galvanizing of all reinforcement for all areas in which reinforcement coverage is 1 ½" or less for Exterior Architectural Products.
8. Plain reinforcement for all Structural Product. Straight strand used.
9. Metro Brick Thin-Brick, standard colors and textures. (2 ¼" x 12" size). Approx. 46,000 SF.
10. Brick joints to be a 3/8" cove joint achieved by using a standard brick formliner showing a running bond brick pattern.
11. Exterior panels to receive a light sandblast finish where exposed.
12. Interior surfaces of exterior wall panels to receive a roller "stipple" finish. Coreslab's Standard Grey Concrete 5,000-psi Mix Design.
13. Interior Walls to receive an As-cast Form Finish / Bull Float.

Approved by _____ VL.
10/10/05

Coreslab Structures (Conn) Inc.                    Page 3

14. Insulation within panels indicated. 2" EPS Insulation. R-value 7.8.
15. Non-conductive insulation pins.
16. Recessed Burke embedded handling  lifting devices.
17. All loose miscellaneous steel items that are used to connect members together. and to structure.
18. Galvanizing of all imbeds and loose hardware.
19. Standard Double Tee stem spacing or 5'-0" or 6'-0".
20. Cast-in openings of 12" sq. or larger as shown on approved shop drawings. All other openings to be field drilled/cut by others, with locations approved by Engineer.
21. Embedding those items for other trades located returned approval drawings and supplied by those corresponding trades prior to casting schedule. Embedded items not to exceed precast product depth.
22. Delivery to designated drop zone. (Drop zone provided to Coreslab at no cost).
23. Union Field Labor during normal working hours/ weekdays.
24. One continuous installation mobilization for Buildings 345kV Station, Control/Administration and 138kV Buildings. Second Mobilization for Site Fence prior to end on 2006 year timeframe.
25. Equipment needed to off-load and install our products. Full unobstructed access to all areas of installation required.
26. Grouting of precast to cast-in-place horizontal joints where structurally required.
27. PCI membership and plant certification. PCI Standards used for fabrication and installation tolerances.
28. Coreslab's one-year warranty.

## Exclusions
This proposal excludes any and all other items and specifically the following:
1. Any field dimensions or building survey.
2. Engineer of Record services or E&O Insurance.
3. Off-loading and installation of precast sills. (See Detail 342821).
4. Corrosion inhibitors.
5. Water repellant sealers, premold fillers Detail 342808, 342893, etc., expansion joints, caulking, etc.
6. Anti-graffiti coatings. See Alternates.
7. Topping, horizontal joint deck sealant or cast-in-place.
8. Grouting, other that Hollowcore keyway joints and Structural Column Bases.
9. Structural or miscellaneous steel of any kind, except as noted.
10. Cast-in reglets Detail 342752. Reglets to be cut-in field by others.
11. Cast-in items for other trades. (Conduits, grills. railings, handrails, etc.) Detail
12. Firestopping and smoke sealants.
13. Painting of precast concrete or embedments.
14. Stainless steel finishes.
11. Epoxy coating of reinforcement or precast connection hardware.
12. Outriggers and support brackets welded to the structural frame.
13. HVAC, Carrier & Mechanical embedded bracket plates. Detail 342896.
14. Any additional columns, posts or structure needed to receive loads from precast for bracing or stiffening of the structural frame.
15. Furnishing embedded items or block-outs in the precast for the other trades.

Approved by _____    V.L
                    10/10/05

Coreslab Structures (Conn) Inc.                    Page 4

16. Placing of inserts, openings or sleeves for other trades not shown on bid drawings. (Window cramps, door frames, etc.)
17. GFRC and provisions for attachment.
18. Brick shown on 342771 attached to metal stud.
19. Building permits or plan-check fees required by any agency.
20. Traffic control, flagmen or street access permits for truck parking.
21. Stand-by trades, jobsite teamsters.
22. Fire-watch.
23. Inspection and testing of any kind other than Seller's standard PCI Quality Control procedures.
24. Protection and repair of precast products damaged by other trades.
25. Final cleaning at completion of project.  Coreslab will deliver precast products clean at the completion of Coreslab's work.
26. Liquidated damages and/or consequential damages on any kind.
27. Bonds of any kind.
28. Taxes.

**Schedule:**
Delivery dates are to be according to a schedule mutually agreed to between Buyer and **Coreslab Structures (Conn) Inc.** and confirmed in writing by both parties. Fabrication and Delivery Schedule to be attached to Contract between Buyer and **Coreslab Structures (Conn) Inc.**

Preliminary Schedule: As of 09/23/05
Precast Initial Submittals January 9th, 2006
Production 4th Qtr. 2005 – 3rd Qtr. 2006
Delivery to site beginning March 25th 2006.

Approved by _____
10/10/05

Coreslab Structures (Conn) Inc.                    Page 5

## EXHIBIT "B" – DESCRIPTION OF FINISHES

This proposal is based upon the following Description of Finishes. designated by finish code letter in Exhibit "A"- Scope of Work. Small surface holes caused by air bubbles. normal color variations. normal steel form joint marks should be expected. but no major or unsightly imperfections, honeycomb, or other defects will be permitted.

It is important to note that concrete is made from natural materials, and variations in color and shade are not only possible, but also likely. This proposal is based upon such natural variations in color and shade, and contains no provision for obtaining perfect color uniformity.

**SB - Sandblast**. Removal of cement and sand matrix by means of sand particles driven by compressed air. The coarse aggregate is exposed, leaving a muted or frosted appearance. Depth of exposure, whether light, medium or heavy, is designated with corresponding postscripts, L, M or H. For example, SBL designates Light Sandblast.

**F - Form**. Resulting from casting against steel and/or wood forms using good industry practice in cleaning of forms, design of concrete mix, placing and curing.

**FL - Float**. Result of vibrating screed and additional hand finishing of top surface, using wood or magnesium float.

**ST- Stipple** A lined, topside surface texture produced by final pass of the troweled surface with a roller. Light textures can be achieved, depending on the texture of the roller. Corresponding postscripts are used to designate depth of texture. For example, STL designates light stipple texture.

**L – Form Liner**. A special, custom mold is placed in the form to produce a texture, which is described in Contract Drawings. This pattern may be used in conjunction with other available finishes. such as exposed aggregate.

**BR – Thin-Brick**. The application of ½" Thin-Brick tiles set in custom form liners producing a standard joint pattern. This pattern may be used in conjunction with other available finishes, such as exposed aggregate. Thin-Brick is manufactured to be used in precast concrete products and has tolerances and "dovetail" backing for this use.

**Special Architectural Finish Exterior Walls Only: Coreslab Structures (Conn) Inc.** Samples Pending.
- Exterior Walls (SBL/STL).
- Interior Walls, Columns, Stairs, Slabs, Double Tees (F/FL).

Approved by _____
10/10/05

## EXHIBIT "C" CONTRACT DOCUMENTS AND DESIGN CRITERIA

### This proposal is based on a mutual agreed upon contract.

This proposal is also based upon **Coreslab Structures (Conn) Inc.** Standard Specifications for Architectural Precast Concrete. Because of the preliminary nature of the project drawings. **Coreslab Structures (Conn) Inc.** reserves the right to review final working drawings and specifications, if necessary, and to make appropriate price adjustments.

Products will be designed to conform to the BOCA, current version. Products will be cast using **Coreslab Structures (Conn) Inc.** standard manufacturing procedures, including mix designs, curing methods, surface treatment and product handling.

Quality of projects will be consistent with industry standards for concrete products as defined by the Prestressed Concrete Institute's publications.

**Coreslab Structures (Conn) Inc. is a Certified Plant under the Prestressed Concrete Institute's Plant Certification program.**

Connection details will be **Coreslab Structures (Conn) Inc.** standards. The capacity of connections is based upon rational analysis or test results.

**Coreslab Structures (Conn) Inc.** is responsible only for the design of the individual pieces and connections as shown on the bid documents based on the loads furnished by the engineer of record. We do not perform lateral analysis of the structure and we do not accept the responsibility for the overall lateral stability of the structure.

Approved by _____
10/10/05

Coreslab Structures (Conn) Inc.                    Page 7

# EXHIBIT "D" GENERAL TERMS AND CONDITIONS (SOP & ERECT)

## I    WORK ITEMS TO BE PROVIDED OR PERFORMED BY OTHERS

1.  Stabilized level access for trucks into the jobsite. The compacted surface  and or slab must accommodate loaded tractor-trailers (gross weight 90,000 lbs.) moving under their own power to several crane settings. Any overhead wires or obstructions, which could interfere with erection, are to be moved prior to erection. **If it is necessary for our trucks and cranes to erect on an existing slab, we will take reasonable precautions to avoid damage, however we assume no responsibility for cracks or structural damage to the slab.** The Buyer agrees to take all reasonable measures to protect utilities, footings, foundations, walls, curbs and private property which **Coreslab Structures (Conn) Inc.** may be required to cross.
2.  Layout of building lines and grades, column centerlines and lines for the interior face of wall panels and elevations at columns.
3.  Protection of installed glass or frames during the precast erection process.
4.  Permits, manpower, and warning barricades required when jobsite conditions require **Coreslab Structures (Conn) Inc.** equipment to occupy city streets.
5.  Jobsite traffic control, Jobsite security, all safety barriers, opening covers or any other safety measures required by OSHA or any other safety regulatory agency.
6.  Jobsite location for **Coreslab Structures (Conn) Inc.** office trailer or use of General Contractor trailer and phone.
7.  Services of the architect and/or engineer of record to approve **Coreslab Structures (Conn) Inc.** designs and shop drawings. **Coreslab Structures (Conn) Inc.** shop drawings are not to be used to secure a building permit. **Coreslab Structures (Conn) Inc.** will not be the engineer of record. **Coreslab Structures (Conn) Inc.** production schedule is based upon a one week approval period for designs and shop drawings. Any delays in this process (unless caused by **Coreslab Structures (Conn) Inc.**) will be reflected in the schedule of the project.
8.  The Buyer is responsible for checking the shop drawings to insure their conformance with the overall building dimensions, and to resolve any conflicts between the precast concrete work, his work and that of other trades, prior to approval of the shop drawings.

## II    QUALIFICATIONS

1.  The Buyer's subcontract or purchase order submitted in lieu of a signed copy of this proposal shall stipulate "terms and conditions of **Coreslab Structures (Conn) Inc.**'s proposal are made a part of this contract". In the event of a conflict between the agreement tendered and the terms and conditions of **Coreslab Structures (Conn) Inc.** proposal, this proposal shall control over the contract.
2.  **Coreslab Structures (Conn) Inc.** reserves the right to repair, rather than replace, any spalled or cracked units provided it is structurally and architecturally feasible.
3.  **Coreslab Structures (Conn) Inc.** agrees to hold Buyer harmless for property damage and bodily injury which results from acts of negligence on the part of **Coreslab Structures (Conn) Inc.**, its employees, agents or subcontractors. Buyer agrees to immediately notify **Coreslab Structures (Conn) Inc.**, in writing, of any deficiency in **Coreslab Structures (Conn) Inc.** products. If the deficiency is determined to be the fault of **Coreslab Structures (Conn) Inc.**, then **Coreslab Structures (Conn) Inc.** will repair the work with its own forces, or at **Coreslab Structures (Conn) Inc.**'s option, authorize the Buyer in writing to have the work done at a mutually agreed price. Coreslab Structures (Conn) Inc. will accept no back charges, unless prior authorization was issued by **Coreslab Structures (Conn) Inc.**
4.  **Coreslab Structures (Conn) Inc.** will not be responsible for delays in the fabrication or delivery of materials as a result of fire, labor, strikes, transit loss or damage, unavailability of materials from usual sources, acts of God, or without limitation by the foregoing, any causes beyond its reasonable control. No liquidated damages penalty for late performance is agreed to regardless of Buyer's obligation for such a penalty.
5.  If the Contractor does not pay, through no fault of **Coreslab Structures (Conn) Inc.**, within seven days from the time payment should be made as provided in this agreement, **Coreslab Structures (Conn) Inc.** reserves the right, without prejudice to any other available remedies, upon seven additional days written notice to the Contractor, stop their Work under this subcontract until payment of the amount owing has been received.
6.  Buyer agrees to reimburse **Coreslab Structures (Conn) Inc.** for all work completed, including expected profit, if for any reason the contract is canceled before completion.
7.  This proposal is based on the General Contractor carrying "Builder's Risk" on the entire project, to which this proposal applies, at no expense to **Coreslab Structures.** The General Contractor will provide evidence of such coverage.
8.  This subcontract shall not be assigned without the written consent of **Coreslab Structures (Conn) Inc.**
9.  No provision is made in this proposal for Owner or Contractor controlled insurance program credits. If an Owner or Contractor controlled insurance program is a requirement of this subcontract, then administrative costs that Coreslab Structures (Conn) Inc. and/or its subcontractors incur will be estimated and deducted from any insurance credits due the Owner and/or Contractor."

## III    PAYMENT TERMS

1.  Unless otherwise specified herein, payment in installments of 95% of the value of engineering, start-up and precasting work shall be made by the Buyer to **Coreslab Structures (Conn) Inc.** on or before the 15th day of the month following submission on the 25th day of the preceding month.

Approved by _____ V.L.

10/10/05

Coreslab Structures (Conn) Inc.                    Page 8

2.  When casting begins, Coreslab Structures (Conn) Inc. shall invoice the Buyer monthly for the yard price of material cast specifically for this project and properly stored in Coreslab Structures (Conn) Inc.'s plant. After payment is received, Coreslab Structures (Conn) Inc. then agrees to repair or replace any of this material damaged or lost in storage, transit or erection, without cost to the Buyer. Buyer may inspect this material prior to payment.

3.  Should retainage be required on this project, Buyer agrees to release one half the amount of the specified retainage upon installation of products in their final position and after welding and grouting is completed. The balance of the retainage withheld shall be released within thirty (30) days following acceptance of Coreslab Structures (Conn) Inc. work, regardless of any conditions subsequent to the completion of our work including but not limited to Owner or Contractor controlled insurance program audits.

# EXHIBIT "E" – ADDITIONAL INFORMATION

## E-1  GENERAL CONTRACTOR SHALL PROVIDE THE FOLLOWING FREE OF CHARGE:

1.  Space for parking a minimum of Twelve - Fifteen (12 - 15) semi-trucks in space adjacent to the building in erection area; space for parking of Company pickup truck(s) for field crews.
2.  Full access to all areas pertaining to installation of our work for trucks, workmen, equipment, etc. This includes removal and/or relocation of all overhead obstructions and electrical wires. Shoring, protection of sidewalks or subterranean facilities and stabilization of soil as required for cranes and trucks sufficient for them to work under their own power.  Access behind panels for workman and welding equipment to complete panel connections.
3.  Protection of product installed.
4.  Benchmark elevation on each floor, two-foot offset lines, and column grid centerlines at each side elevation.
5.  Snow removal.
6.  Installation of CMU walls which support precast in a timely/coordinated fashion as not to interrupt continuous installation of our products.
7.  Electric power for power tools and water, weather protection and/or night lighting.
8.  Prior to fireproofing starting (but after lines and elevations are established), a minimum of five working days will be provided in the schedule for connection hardware at each floor and roof.
9.  Construction elevator to hoist miscellaneous materials and workmen, if available and required.
10. Safety cables or rails installed in a position that does not interfere with the pre-welding or installation of precast products.  Any removal or reinstallation of safety cables or rails to facilitate precast product installation operation will be by others.
11. Two (2) complete sets of hardcopy plans and specifications.

## E-2  TERMS AND CONDITIONS FOR CHANGE ORDERS AND WARRANTIES:

1.  CHANGES IN THE WORK: All changes in the work are subject to Coreslab Structures' current "Schedule of Unit Rates for Change Orders and Backcharges".
2.  THERE ARE NO WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING MERCHANTABILITY OR FITNESS FOR USE, EXCEPT AS STATED BELOW.  Seller's sole liability for defects in materials, workmanship or installation shall be to correct, or replace, or on the agreement of Buyer and Seller, to negotiate a credit to the contract price of any product proven to be so defective.  All warranties are limited to one (1) year after completion of Seller's contract.

Approved by _____
10/10/05

Coreslab Structures (Conn) Inc.                    Page 9

E-3  ADDITIONAL TERMS AND CONDITIONS:

1. Prompt (i.e. two-week) turnaround for engineering submittals is necessary to maintain the anticipated project schedule. Coreslab will not be held responsible for any delays that result from delinquent engineering review.

2. The concrete fill shall be completed prior to the time that layout and installation of miscellaneous metal items included in this proposal commence.

3. Concrete, residue, fireproofing, etc. shall be removed to clean bare steel by others (at no cost to Coreslab) in areas to receive welded or bolted connections for precast products. Rebar to be bent clear of precast product connection and returned to position by others.

4. Coreslab will provide erection panel layout for our scope of work. Surveying of items supplied or installed by other trades is excluded. Any items found to be miss located affecting installation shall be corrected by that corresponding trade immediately as to not delay work.

5. Coreslab will not accept backcharges for fireproofing repair unless approved in writing prior to work commencing. Coreslab reserves the right to arrange directly for any fireproofing repairs required.

6. The precast products described herein are built and installed to normal manufacturing tolerances as specified in the Precast Concrete Institute's *Manual for Quality Control* (MNL-117-77).

7. All items such as structural steel, concrete, brackets, fireproofing, pipes, ducts, etc. that are furnished and installed by others shall be located a minimum of 2" clear of back-face of precast products.

8. Buyer assumes risk of loss and all costs, expenses and damages caused by inadequate onsite preparation, bearing points, lateral load points, or of improper or defective labor or materials provided by persons other than Seller, including all losses sustained and injuries to a person or property caused by collapse of any product supplied by Seller due to such improper or defective labor or materials furnished by others.

9. Beams and columns shall be capable of resisting the lateral, horizontal and vertical dead and seismic loads created by the precast products at all connection points. Any braces or stiffening required to facilitate this is to be by others. Correction of undersized or missing structure is specifically excluded.

10. Included in the proposal may be certain modifications (i.e. corner conditions, precast product sizes, connections, etc.) to facilitate economy and transportation or code requirements; any changes to these modifications could result in an increase in the contract price.

11. The bid price of this Proposal is based on the anticipation that some precast products may incur chipped or damaged edges and/or partially or cracked sections during the process of manufacturing, hauling and installation. As concrete is produced from natural materials subject to variation, final product is subject to variation in color and texture. Coreslab is experienced in correcting this type of problem and reserves the right to do so. We specifically exclude any reference to the project specifications to reject precast product, which, in the opinion of Coreslab, is correctable utilizing standard industry methods.

12. Coreslab's Proposal includes design and detailing of precast products and connection hardware to meet code requirements. Bearing supports (steel or concrete) designed by the Structural Engineer of Record and unless otherwise stated, shall be supplied and installed by others. Drawings and calculations will be submitted to the Engineer of Record for review and approval and transmitted to the appropriate agency. Coreslab Structures (CONN) Inc. will not become the Engineer of Record for any portion of the work.

Approved by _____
10/10/05

Coreslab Structures (Conn) Inc.                    Page 10

13. Any controversy arising out of the construction of the project referred to in this Proposal or regarding the interpretation thereof, or any contract, subcontract or sub-subcontract to which the undersigned is a party, is subject to arbitration.
14. Coreslab Structures (CONN) Inc. shall not be held responsible for strikes or union disputes.
15. The terms of this Proposal shall be made part of the subcontract agreement.


## EXHIBIT "F" – ALTERNATES

1. Increasing the R-value of the insulation to a R-10 by supply Extruded Polystyrene (XPS) in lieu of Expanded Polystyrene (EPS). Add $29,998.00
2. Supply Payment & Performance Bond for our Scope. Add 1% to Contact Amount.
3. Anti-graffiti coatings for precast site walls and West Elevation Building entrance. Add $21,310.00.
4. Delete Drafting & Engineering (to be provided to Coreslab at no charge) Deduct $570,500.00.
5. Add 2nd crane for twin erection teams. Add $151,646.00
6. Incorporate in CCIP Insurance Program.


## EXHIBIT "G" – DRAWING LIST
ARCHITECTURAL (SF): 342800 – 342829, 342745 – 342792 DATED 04/28/05
STRUCTURAL (SB): 342850 – 342883, 342886 – 342899 DATED 04/28/05.


_____                    _____
D'Onofrio General Contractors Corp.                          Coreslab Structures (Conn) Inc.


Approved by _____
10/10/05

EXHIBIT F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| BUILDERS RESOURCE, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-40057 FDS |
| | ) | |
| CORESLAB STRUCTURES | ) | |
| CONN, INC. | ) | |
| | ) | |
| Defendant | ) | |

**OPPOSITION OF PLAINTIFF, BUILDERS RESOURCE, INC. TO THE
MOTION OF DEFENDANT CORESLAB STRUCTURES CONN, INC. TO
DISMISS OR ALTERNATIVELY FOR A CONVENIENCE TRANSFER**

Now comes the Plaintiff, Builders Resource, Inc., and opposes the Defendants (sic)

Motion to Dismiss Pursuant to F.R.Civ.P. (sic) 12(b)(1), (2) and (3) Or Alternatively, for

a 28 U.S.C. § 1404(A) 'Convenience' Transfer.

The Plaintiff notes that the Motion is not only specious, but almost rises to a level of

fraud on this Court. Diversity of the parties in this case cannot seriously be questioned. In

addition, there can be no doubt that this Court holds general jurisdiction over the

Defendant. Finally, it is beyond comprehension that this case would be more

conveniently located in a forum in which no major witness is located, no major repository

of documents exits and in which the forum demanded by the Defendant has no interest in

the outcome of this litigation.

A Memorandum of Law, and Affidavit of Marty Cardon, are attached hereto, and are

incorporated herein by reference.

**Respectfully Submitted,**

**The Plaintiff**

By its attorney,

s/Robert N. Meltzer_____
The Mountain States Law Group
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: July 19, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of July, 2007 I served a copy of the foregoing on all counsel of record by mailing the same to:

Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue
Norwood, MA 02062
Attn: Craig F. Anderson, Esq.

Lindabury. McCormick, Estabrook & Cooper
53 Cardinal Drive, PO Box 2369
Westfield, NJ 07091
Attn: Edward J. Frisch, Esq.

<u>s/Robert N. Meltzer</u>

EXHIBIT G

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| BUILDERS RESOURCE, INC. )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>CORESLAB STRUCTURES )<br>CONN, INC. )<br>)<br>Defendant )<br>_____) | Civil Action No. 07-40057 FDS |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE
OPPOSITION OF PLAINTIFF, BUILDERS RESOURCE, INC. TO THE
MOTION OF DEFENDANT CORESLAB STRUCTURES CONN, INC. TO
DISMISS OR ALTERNATIVELY FOR A CONVENIENCE TRANSFER**

Now comes the Plaintiff, Builders Resource, Inc., and opposes the Defendants (sic)

Motion to Dismiss Pursuant to F.R.Civ.P. (sic) 12(b)(1), (2) and (3) Or Alternatively, for

a 28 U.S.C. § 1404(A) 'Convenience' Transfer.

The Plaintiff notes that the Motion is not only specious, but almost rises to a level of

fraud on this Court. Diversity of the parties in this case cannot seriously be questioned. In

addition, there can be no doubt that this Court holds general jurisdiction over the

Defendant. Finally, it is beyond comprehension that this case would be more

conveniently located in a forum in which no major witness is located, no major repository

of documents exits and in which the forum demanded by the Defendant has no interest in

the outcome of this litigation.

The Motion to Dismiss should be summarily rejected, and discovery should proceed

forthwith. As further grounds for this Opposition, the Plaintiff states as follows:

I.    NATURE AND STATUS OF PROCEEDINGS

Plaintiff, a Massachusetts corporation in good standing in the Commonwealth, filed this lawsuit against the Defendant, a Connecticut corporation, on March 13, 2007. This lawsuit arises out of a construction contract between the parties, now completed, in the state of New York.

The Plaintiff, although a Massachusetts corporation, maintains offices across the Massachusetts/Rhode Island border in Harrisville, Rhode Island. There is total diversity between the parties, and the matter in dispute far exceeds the $75,000 jurisdictional requirement.

The Defendant is a company which boasts of its continental construction operations, and engages in regular business within the Commonwealth and has otherwise subjected itself to the jurisdiction of the Massachusetts courts. Nonetheless, the Defendant now moves for dismissal, arguing that this Court has no jurisdiction (subject or personal), and that a lawsuit between a Connecticut company and a Massachusetts company should be litigated in New York. In brief, the Defendant finds it convenient to engage in daily business in the Commonwealth, but would find it inconvenient to litigate in the Commonwealth. Because the Motion is so clearly specious, the Plaintiff asks this Court to summarily deny the Motion to Dismiss summarily, without a hearing.

II.    RELEVANT FACTS

1.  Builders Resource, Inc. is a Massachusetts corporation with offices in Rhode
    Island, facts attested to by the affidavit of Marty Cardon.

2.  Coreslab Structures (Conn), Inc. is located in Connecticut, according to the
    affidavit of Leon Grant of Coreslab.

3.  This lawsuit arises out of a one-page proposal dated May 10, 2006, by which BRI
    agreed to perform certain construction work in New York.

4.  The work is complete.

5.  The major witnesses to the contract, and to the performance of the contract, are in
    Connecticut and Rhode Island.

6.  Neither party is located in New York, or maintains its records in New York.

7.  This lawsuit was commenced in Massachusetts prior to any litigation being
    commenced between BRI and any of its subcontractors in New York.

8.  Coreslab engages in construction work in the Commonwealth of Massachusetts.
    As noted in the affidavit of Marty Cardon, Coreslab, which manufactures and
    oversees installation of pre-cast material, has performed work at the Children's
    Hospital facility in Waltham, and is now involved in the Filene's project in
    Burlington.

9.  Coreslab has created and distributed a flashy brochure in which it informs the
    construction community that it is a "prominent provider of precast/prestressed
    concrete products for the construction industry in North America." The brochure
    then states that Coreslab is a company that "is spanning the continent."

10. Massachusetts is clearly part of North America and "the continent."

11. To demonstrate that it is "spanning the continent," Coreslab identifies its major projects, from east to west and north to south. As part of that continent spanning scope, Coreslab proudly identifies its work at a major tower project in downtown Boston, One Lincoln Street.[1]

12. Coreslab also provides a graphic map, showing its twenty North American facilities, and emphasizing that Coreslab operates on a continental level.

13. Coreslab also emphasizes in its brochure that it does not merely introduce its material in to the stream of commerce. As Coreslab informs the industry, "each of the functions Coreslab performs for your project is managed by a professional and experienced staff."

14. As noted in the affidavit of Marty Cardon, Coreslab provides on-sight management and oversight.

15. Thus, Coreslab not only sells product in Massachusetts for large construction projects, but it also sends it personnel on a daily basis into the Commonwealth to oversee its projects. It can be presumed that it sends invoices to Massachusetts, receives payment from Massachusetts, and is otherwise engaged in the economy of Massachusetts.

16. By nature of those major projects, Coreslab is subject to Massachusetts regulation for workers compensation and other regulatory laws, and is also subject to special jurisdiction for those projects for contract disputes, personal injury cases, workers compensation cases, mechanic's liens, local federal OSHA compliance and all of

---

[1] Upon information and belief, the three projects are not the total extent of Coreslab's work in the Commonwealth. These represent large projects of which BRI is currently aware. Nonetheless, these three projects are big projects.

the other potential legal entanglements that have become part and parcel of construction.

17. In addition to sending material into the Commonwealth, and overseeing construction work in the Commonwealth, and being subject to the jurisdiction of the Commonwealth for repetitive and ongoing projects, the affidavit of Marty Cardon notes that Coreslab advertises for bidders in the Dodge Report, in which Coreslab invites Massachusetts companies to do business with Coreslab in the Commonwealth of Massachusetts.

III.    ARGUMENT

A.  THE PLAINTIFF HAS ADEQUATELY PLED SUFFICIENT SUBJECT MATTER JURISDICTION TO SATISFY THE REQUIRMENTS OF THE LAW, SUCH THAT THE MOTION FOR DISMISSAL ON THE GROUNDS OF SUBJECT MATTER JURISDICTION MUST BE SUMMARILY DENIED

There is simply no basis for a credible argument that diversity has not been demonstrated. Builders Resource, Inc. is a Massachusetts corporation. The Defendant is not. The matter in controversy exceeds $75,000. Thus, the Motion to Dismiss must be DENIED.

B. THE COURT HAS SUCH CLEAR AND OBVIOUS PERSONAL
JURISDICTION OVER THE DEFENDANT TO SATISFY THE
REQUIREMENTS OF THE LAW, SUCH THAT THE MOTION FOR
DISMISSAL ON THE GROUNDS OF PERSONAL JURISDICTION MUST BE
SUMMARILY DENIED

It is a well established principle of law that "[t]here are two different avenues by

which a court may arrive at personal jurisdiction. One frequently traveled route leads to

general jurisdiction. 'General jurisdiction exits when the litigation is not directly founded

on the defendant's forum-based contacts, but the defendant has nevertheless engaged in

continuous and systematic activity, unrelated to the suit, in the forum state." Foster-

Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3rd 138,144 (1st Cir. 1995), citing United

Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080,1088 (1st Cir. 1992).

Significantly, the Foster-Miller Court noted that a significant finding in denying

general jurisdiction was that BWC "…provides no services to Massachusetts utilities, and

does not solicit business from Massachusetts residents." Foster-Miller, Inc. v. Babcock &

Wilcox Canada, 848 F.Supp. 271,273 (D. Mass. 1994) It should also be noted that

general jurisdiction was not found over the primary defendant in United Elec. Workers

based upon the finding that the primary defendant did not avail itself of the forum state,

working only through a subsidiary ("ITD was not a party to the contract"), such that there

was insufficient evidence that the defendant, "through its own affirmative conduct,

purposely availed itself of the privilege of conducting activities in Massachusetts such

that it could reasonably anticipate being hailed into there." United Elec. Workers, 960

F.2d at 1090-91 (citations omitted). The Court noted, in denying general jurisdiction, that

"[t]he Court below found that ITD's sole connection with Massachusetts concerned a

single forum-based company, PSC." <u>United Elec. Workers</u>, 960 F.2d at 1088 (citations omitted).

An analysis of whether a party is subject to general jurisdiction is fact-dependant, but those facts tend to be consistent nationally with the Massachusetts holdings. See, for example, <u>Trierweiler v. Croxton and Trench Holding Corp</u>., 90 F.3rd 1523,1533 (10th Cir. 1996) in which it was noted that general jurisdiction would not be found where a law firm has "no Michigan office or agent. Trierweiler has neither alleged that Machol held itself out as doing business in Michigan through ads or listings, nor claimed that it was not 'qualified to transact business in the state of Michigan' during the relevant period…[I]t was not asserted that any…business was conducted in Michigan, and none of the other factors which are normally considered in making 'continuous and systematic' determinations…."

The Court should be very clear on several fundamental points pertaining to Coreslab, points that are absolutely determinative on this issue and which confirm, without doubt, that Coreslab is subject to the jurisdiction of this court.

1. Coreslab is building skyscrapers, hospitals and retail stores *in the Commonwealth of Massachusetts*. Coreslab is sending its employees in *to the Commonwealth of Massachusetts*.

2. Coreslab is involved on a daily basis with on-the-ground construction in the Commonwealth of Massachusetts.

3. Coreslab is advertising in the Dodge Report for bids *in the Commonwealth of Massachusetts from Massachusetts contractors* for work to be performed *in the Commonwealth of Massachusetts*.

In short, Coreslab is in the Commonwealth of Massachusetts every single day performing construction work in the Commonwealth of Massachusetts.

In addition, this is known because Coreslab advertises this fact. Coreslab markets this involvement in its own brochures. It brags of spanning the continent, and of proving precast throughout North America. To prove it, it proudly fills ¾ of a page of a glossy, four color brochure trumpeting its work with a picture of a skyscraper in Boston. The message could not be any clearer—Coreslab is here. Coreslab is there. Coreslab is everywhere. And that includes the Commonwealth of Massachusetts.[2]

Litigation and courts are part and parcel of construction. The Commonwealth's mechanic's lien statute (M.G.L. c. 254) requires perfection of a lien by the filing of suit. Work places include the occasional injury, bringing a contractor under the umbrella of the Commonwealth's workers compensation statute (M.G.L. c. 152). Personal injury cases, lawsuits with subcontractors, suppliers and others under contract are part and parcel of this industry. Would it be foreseeable that a construction company building skyscrapers, retail stores and hospitals would be haled in to court in the Commonwealth? The question answers itself.

Coreslab's contacts with this forum state do not consist of the occasional sale of product, or the occasional phone call to an individual in the Commonwealth or the construction of a small house on the edge of the Connecticut/Massachusetts border. The contacts are not limited to one project, long ago, by a subsidiary or some other company. The contacts are not the result of third-parties pulling Coreslab in to this state. The contacts are not the result of some unforeseen occurrence.

---

[2] The four-color brochure does not scan for electronic purposes in a way that makes sense. The Plaintiff will provide a copy of the brochure to the Court if a hearing is required or if the Court requests a copy.

On the contrary, Coreslab is here performing major, profitable projects for Massachusetts residents, and seeking, by the Dodge Report and otherwise, to do business with Massachusetts residents in the Commonwealth.

The contacts are absolutely continuous and systematic. The point need not be labored further. Coreslab has purposefully availed itself of the choice to work and make money in this Commonwealth on a sustained basis. Under the principles of constitutional law, it has done so willingly, and with the known risks. Under the law, it is subject to general jurisdiction of this Court, and the Motion to Dismiss, which the Court should view as both disingenuous and highly misleading as to what Coreslab really does, should be summarily DENIED.

C. THE DEFENDANT HAS MADE NO SHOWING AS TO WHY IT WOULD BE MORE CONVENIENT TO LITIGATE THIS CASE IN NEW YORK, OR WHY NEW YORK WOULD EVEN HAVE AN INTEREST IN THIS CASE, SUCH THAT THE MOTION TO TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK SHOULD BE SUMMARILY DENIED

The Court has noted that " 'Section 1404(a) provides: for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.' In addition to the convenience of parties and witnesses, factors to be considered include the availability of documents…and the order in which the district court obtained jurisdiction.…The burden of proof rests with the party seeking transfer and there is a strong presumption in favor of the *plaintiff's* choice of forum." Sigros v. Walt Disney World Co., 129 F.Supp.2d 56,71  (D.Mass. 2001) emphasis added, citing Cianbro Corp. v. Curran-

Lavoie, Inc. 814 F. 2d 7,11 (1st Cir. 1987).(Also noting that "…the first filed action is generally preferred in a choice-of-venue decision.")

Notwithstanding the Defendant's efforts to make this matter more complex than it is, this case is an extremely simple construction case—a Connecticut company entered into a one page construction contract with a Massachusetts company, the work has been completed, and the Massachusetts company has not been paid. No lien claim has been made in New York.[3]

The issue before the Court is the Defendant's failure to make payment on the contract to a Massachusetts company.  This case involves little more than an exchange of documents (much of which has already transpired), and the deposition, by the Plaintiff, of four witnesses. It can be presumed that there will be some depositions by the Defendant of Plaintiff's Rhode Island based witnesses.

The Plaintiff's main witnesses are in Rhode Island (on the Worcester County border). The four individuals who will deposed by the Plaintiff are all in Connecticut. Any witnesses in New York would be minor and inconsequential, and it is hardly logical that this case should be pending where the most minor witnesses are located.

The relevant documents in this case are in Rhode Island (on the Worcester County border) and Connecticut.

As noted above, the Defendant has not found it inconvenient to travel from Connecticut to Burlington, from Connecticut to downtown Boston or from Connecticut to

---

[3] In fact, this point should be determinative. The Plaintiff was forced to make a difficult choice with regard to the lien issue. Ultimately, the lien was not filed because the attendant litigation in New York which would have followed the filing of a lien would have required litigation in a forum which made no sense. With the documents and witnesses well-away from New York, it would have been nearly impossible to litigate the case in New York. The near impossibility of litigating the claim remains, which is why this case was filed in Massachusetts.

Waltham to engage in nearly daily activities. Since it has no difficulty with these travels and with these appearances in Massachusetts, it cannot claim that it would be inconvenient for its staff in Connecticut or its attorney in Norwood, Massachusetts to travel to court in Worcester. In addition, the Defendant has had no difficulty in retaining highly qualified Massachusetts counsel to represent its interest here, and has provided no basis for suggestion of prejudice by this Court.[4]

There can be no argument that Worcester is inconvenient to any party in this case, or that any claims that Coreslab wishes to bring, which would be compulsory counterclaims, could be brought in this forum and should be brought in this forum.[5] Further, there is no doubt that this claim, in Massachusetts, was first filed.

The states with any interest in this case are Massachusetts and, possibly, Connecticut and Rhode Island. The building, which was in New York, is finished. There is no need to look at the building or talk to the project owner. There is no lien claim pending by BRI, and this case does not, in any way, invoke New York lien law, nor would it include any New York parties. This claim does not preclude the Defendant from bringing its own lawsuits in New York, and, since the contract contains no "pay when paid" or "pay if paid" clause, the Plaintiff in this case has no interest in any litigation between the Defendant and the general contractor in New York.

---

[4] Indeed, the patronizing, lecturing tone of the motion, with its implication that the construction bar and the Federal Court in Massachusetts lacks the sophistication to handle this dispute, is insulting and gratuitous.
[5] On page 19 of the Defendant's Motion, the Defendant mischaracterizes the Plaintiff's contention that Massachusetts is "as convenient as any other," by which the Plaintiff meant that this case could also have been brought in Connecticut or Rhode Island. The Plaintiff clearly did not mean that it should be brought somewhere unrelated, such as New York, or Iowa or Guam for that matter.

The Defendant has provided no case law, or logical explanation, which would explain why this claim would not be independent from any dispute with the general contractor under the signed contract.[6]

To the extent that any witnesses in New York would be required, those witnesses are secondary at best. The Defendant has suggested that this case be heard or tried in the state in which neither party is located, in which the priority and available witnesses are not found, where no documents are not found, where the case has no interest in the litigation, because it is somehow more convenient. The argument lacks credibility.

This is a collections case filed in the home jurisdiction of the Plaintiff, *prior to the filing* of any other lawsuits in New York.

The Plaintiff notes that this case reflects the growing trend of global commerce—the parsing of venue for a multi-state dispute. The Plaintiff agrees that the analysis would be different if the Defendant resided in New York, if the parties retained offices in New York or if a lien had been filed. That is not the case here. The Plaintiff has selected its home state for this litigation based upon the location of the witnesses and documents, and the clear interest of the Commonwealth in the ability of its citizens to engage in interstate commerce with the assurance of a fair, home-based forum for its disputes.

The suggestion by the Defendant that this Court should transfer this matter to a jurisdiction where neither party is located, no witnesses are located and no documents are located, defies credibility and is inconsistent with the law. In addition, the suggestion that this case should be transferred to the clogged and congested Southern District of New

---

[6] Similarly unfounded is the notion that the case should be heard in New York because the Plaintiff's subcontractors have filed suit against BRI in that forum. The Court should note that this goes to an interesting question of bad faith by the Defendant. BRI has been sued in New York because the Defendant has not paid BRI. A Defendant should not be allowed, and is not allowed, to withhold payment in a bad faith effort to force lawsuits to be filed as a result of that influence jurisdiction over unrelated claims.

York, and that the Southern District of New York would even to add a case between non-residents to its docket, makes no sense.

Finally, on this point, there is substantial effort underway by the New York residents in the litigation referenced by the Defendant to remand that matter to state court in the Bronx; the Defendant, therefore, is setting up a legal limbo in which it is asking this Court to transfer this case to a court which is considering rejecting jurisdiction itself. Considering the uncertainty alone, this Court should deny the Defendant's motion.

The suggestion that this Court should find New York more convenient or more expedient for this litigation is specious. The Defendant has failed to present a single credible or recognized argument for transfer, instead electing to provide a long and drawn-out treatise on New York lien law that is entirely irrelevant to this dispute. The venue is appropriate in Massachusetts, and no more convenient location exists. The Defendant has failed its burden and the Motion to Dismiss or Transfer should be summarily DENIED.

D. UNDER ANY CIRCUMSTANCE, TRANSFERRING THIS CASE TO NEW YORK DOES NOT WARRANT THAT IT WOULD BE CONSOLIDATED WITH OTHER CASES OR THAT IT WOULD LEAD TO JUDICIAL EFFICIENCY, AND WOULD RATHER END UP ISOLATING THIS CLAIM IN LEGAL LIMBO, SUCH THAT THIS COURT SHOULD NOT CONSIDER TRANSFER TO NEW YORK

The Defendant seems to suggest that somehow all of the litigation involving the New York project should somehow be consolidated in the Southern District of New York, even though the cases are not interrelated and even though there is no risk of inconsistent judgments.

The Plaintiff in <u>ALF Rentals Company v. D'Onofrio General Contractors Corp</u> et al S.D.N.Y. 07-CV-3148 (LAK) has now filed a motion for remand from the Southern District of New York to state court in the Bronx. In addition, in that same case, BRI has filed a Motion to Dismiss cross claims brought against it by Coreslab in the Southern District of New York on the grounds of prior pending action and compulsory cross claim.

Based upon the strength of the latter motion (this lawsuit was filed prior to the New York case, and the claims are clearly compulsory as cross claims to this case), it is extremely likely that the Southern District of New York will reject the Coreslab cross claim in the Southern District in deference to this Court. It is also possible that the lien claims will be returned to state court in the Bronx. Thus, the Southern District case is in procedural chaos and procedural limbo, and there is no foreseeable likelihood of judicial efficiency in consolidating claims. In fact, it is possible that this claim would end up orphaned in the Southern District of New York if transferred, while the balance of the claims are transferred to the Bronx. That is no more efficient than the situation that exists now.

Coreslab is asking this Court to somehow send this matter into that poisonous procedural brew because it will somehow be more convenient (to whom is unclear) and because it will expedite the process of justice (unlikely).

The Plaintiff has properly brought this claim in its home venue. Jurisdiction is appropriate for both subject matter and personal jurisdiction. All parties to this case regularly conduct business in this state, and it is as convenient to litigate here as to conduct business here. Any argument that there is merit to sending this case to New York for the sake of judicial efficiency lacks merit. A transfer of venue is likely to mire this

case in perpetual procedural wrangling at a time when it should be moving in to discovery and trial.

The Plaintiff's choice of venue must be respected, and the Motion to Dismiss must be DENIED.

IV.    CONCLUSION

It cannot be disputed that the Plaintiff has pled diversity. The Motion to Dismiss for lack of subject matter jurisdiction should be summarily denied. It cannot be disputed that Coreslab conducts regular and systematic business in the Commonwealth, and that it does so willingly and intentionally, such that general jurisdiction has been established, such that the Motion to Dismiss for lack of personal jurisdiction should be summarily denied. Finally, the Defendant has failed in its burden of showing why this Court should transfer this case to a forum that has no witnesses, relevant documents or interest in the litigation, such that the Motion to Transfer should be summarily DENIED.

**Respectfully Submitted,**

**The Plaintiff**

By its attorney,

s/Robert N. Meltzer_____
The Mountain States Law Group
Robert N. Meltzer, BBO #564745
PO Box 1459
Framingham, MA 01701
Phone: (508) 872-7116

Dated: July 19, 2007

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of July, 2007 I served a copy of the foregoing on

all counsel of record by mailing the same to:

Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue
Norwood, MA 02062
Attn: Craig F. Anderson, Esq.

Lindabury. McCormick, Estabrook & Cooper
53 Cardinal Drive, PO Box 2369
Westfield, NJ 07091
Attn: Edward J. Frisch, Esq.

<u>s/Robert N. Meltzer</u>

EXHIBIT H

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| BUILDERS RESOURCE, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-40057 FDS |
| | ) | |
| CORESLAB STRUCTURES | ) | |
| CONN, INC. | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### AFFIDAVIT OF MARTY CARDON IN SUPPORT OF THE PLAINTIFF'S OPPOSITIO TO THE MOTION OF THE DEFENDANT, CORESLAB STRUCTURES CONN, INC. TO DISMISS THE COMPLAINT

I, Marty Cardon, do depose and swear as follows:

1. I am the General Manager at Builders Resource, Inc., a Massachusetts corporation. BRI does not conceal that it is a Massachusetts corporation, even though a BRI office is over the border in Rhode Island.

2. I have prepared this affidavit based upon my personal knowledge.

3. I have been aware of the business activities of Coreslab Structures (Conn), Inc. in Massachusetts from seeing bid information pertaining to Massachusetts projects in the Dodge Report, which identifies construction projects to be bid in Massachusetts.

4. I have also seen the four color brochure prepared by Coreslab that identifies the company and stresses that it is a "prominent provider of precast/prestressed concrete products for the construction industry in North America." The back of the brochure states that

Coreslab is a company that is "spanning the continent," with 20 locations, including facilities in New Mexico, Arizona, Arkansas, Georgia, South Carolina, Connecticut, Indiana, Kansas, California, Florida, Missouri, Oklahoma, Nebraska, Ontario and Texas.

5. Aside from showing Coreslab projects in Nevada, Florida, Arizona, Texas, California, Oklahoma and South Carolina, the brochure proudly shows a major high rise in Boston, Massachusetts, the 30 plus story building known as One Lincoln Street, which has just been completed.

6. I am also aware that Coreslab is performing or has just completed a project for Children's Hospital in Waltham, Massachusetts and is working another major project in Burlington, Massachusetts, the Filenes store at the Burlington Mall.

7. My understanding from working with Coreslab is that Coreslab sends a project manager to the construction site to oversee proper installation of the product, and it is my understanding that they attend project meetings as well.

8. My experience with Coreslab is that they are very hands-on with their projects, consistent with the statement in their brochure, stating that "each of the functions Coreslab performs for your project is managed by a professional and experienced staff."

Sworn under the pains and penalties of penalties of perjury this 18th day of July, 2007

s/Marty Cardon

2

EXHIBIT I

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| BUILDERS RESOURCE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-40057 FDS |
| | : | |
| v. | : | |
| | : | |
| CORESLAB STRUCTURES | : | |
| (CONN), INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

REPLY BRIEF OF THE DEFENDANT IN SUPPORT OF ITS F.R. CIV. P. 12(b)(1),(2) AND
(3) MOTION TO DISMISS OR, ALTERNATIVELY, FOR A 28 U.S.C. §1404(a)
"CONVENIENCE" TRANSFER

LEAVE TO FILE GRANTED ON 8/8/07

Lindabury, McCormick, Estabrook & Cooper, P.A.
53 Cardinal Drive
P.O. Box 2369
Westfield, NJ 0709-2369
Attorneys *Pro Hac Vice* for (as general counsel to)
Defendant Coreslab Structures (Conn), Inc.

-and-

Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue, Suite 105
Norwood, MA 02062
Attorneys for (as local counsel to)
Defendant Coreslab Structures (Conn), Inc.

2139628v1

TABLE OF CONTENTS

COUNTERSTATEMENT OF FACTS ............................................................................1

LEGAL ARGUMENT

I.    THE PLAINTIFF HAS NOT MET ITS BURDEN OF PROVING
      SUFFICIENT FACTS TO SHOW GENERAL PERSONAL
      JURISDICTION. ...............................................................................................3

II.   ALTERNATIVELY, A 28 U.S.C. §1404(A) "CONVENIENCE" TRANSFER
      TO NEW YORK IS WARRANTED......................................................................5

CONCLUSION.....................................................................................................9

ii

2139628v1

COUNTERSTATEMENT OF FACTS

The defendant reiterates the facts described in its initial motion brief ("Db"), at Db 1-5. Regarding those in the plaintiff' opposing memorandum ("Pb"), it adds the following – using the paragraph numbering in Pb 3-5. (Due to some new matters argued by the plaintiff, the defendant also is submitting in reply the Affidavit of Edward J. Frisch, Esq. with exhibit.)

Regarding ¶1, the plaintiff has yet to plead that it is a Massachusetts corporation, as required by F.R.Civ.P. 8(a)(1). An affidavit is not a "pleading." E.g. F.R.Civ.P. 7(a).

Regarding ¶3, the defendant's May 10, 2006 purchase order incorporated a subcontract by reference, and the "flow down" provision thereof added further terms by reference. (L. Grant Affid., ¶'s 5, 21-25 and Exs. A, I) Regarding ¶4, the defendant disputes that the plaintiff's work conformed with their contract. (See Id., Ex. G, pp. 7-8: Fourth Cross-claim)

Regarding ¶'s 5 and 6, the plaintiff overlooks the fact that both the N.Y. Lien Law (see Db 3, 17-18) and several contract provisions (see Db 3; L. Grant Affid. ¶'s 21-25) create a need for important non-party witnesses. They are the representatives of the plaintiff's several project vendors, to testify as to what the vendors are still owed and with respect to their mechanic's lien filings. (E.g. L. Grant Affid. ¶'s 26, 27, 29)

Such testimony would support the defendant's defenses of: the plaintiff's failure to satisfy a condition precedent to payment – proof that its vendors have been paid; setoff and/or recoupment – of any amount the defendant might have to pay to or incur with respect to them; and supervening legal duty – to protect from misapplication the N.Y. Lien Law statutory trust for their benefit on contract funds otherwise payable to the plaintiff. Additionally, such testimony – as well as that from the general contractor's (D'Onofrio's) representative(s) – would support the

2139628v1

defendant's affirmative claims for loss from D'Onofrio's non-payment to or backcharge of it due to claims or liens of the plaintiff's project vendors.

Further, testimony from the project vendors' and/or D'Onofrio's representatives will be needed as to the plaintiff's non-conforming performance of its work, such as with respect to a portion done by a vendor, or as to D'Onofrio's nonpayment or backcharge to the defendant therefor. Also a substantial portion (some $437,000) of the plaintiff's claim is for alleged extra work, regarding which the defendant will need testimony: from representatives of the owner (Con Ed) that the plaintiff disregarded the owner's conditions and limits to payment therefor; and from certain New York City officials that per their audit, the plaintiff's certified payrolls did not support the amount claimed by the plaintiff. (E.J. Frisch Affid., ¶'s 8, 9)

These non-party witnesses are from the New York tri-state area, not southern New England (see L. Grant Affid., ¶'s 3, 26, 28), as well as likely beyond the "100 mile bulge" (Db 12). Moreover, it is more their convenience, and less that of the parties' own representatives, that a §1404(a) "convenience" transfer should serve.

Additionally, witnesses aside, the plaintiff's project vendors with lien rights (including statutory trust rights), D'Onofrio, and the owner are necessary parties to a lien foreclosure (Db 16), which must be and is being pursued in New York. They likely cannot be impleaded here (e.g. Db 12) – although if this case remained here, the defendant would have to try, with further jurisdictional wrangling. It thus would make little sense to litigate here one piece of a larger controversy being litigated in New York.

Regarding ¶7, yes, the instant action was filed first – by <u>two</u> days. (See Verified Complaint – 3/13/07 filing; L. Grant Affid., Ex. C – 3/15/07 filing)

2

Regarding ¶'s 8-17, none of such matters show the defendant to be domiciled, to be incorporated, or to have its principal place of business in Massachusetts.   None therefore can trigger M.G.L. c. 223A, §2.

Also, even from the constitutional perspective, the pertinent gist of ¶'s 8-17 is just that the defendant has worked on three projects in Massachusetts, over an undescribed timeframe, and of unspecified magnitude. Also, no basis is given for "presum[ing]" any of the things described in ¶15.  No basis is given for inferring on-site project oversight to be "daily" as also said in ¶15.  Nothing shows any "repetitive … projects" as claimed in ¶17.

Regarding the promotional activities described in ¶'s 9-13, 17, the plaintiff overlooks the distinction between non-party Coreslab International, Inc. and its several affiliates (by production facility) including the defendant.  (See www.coreslab.com/about us)  A parent's general advertising is not that of an affiliate directed at a specific locale.  Moreover, since the plaintiff would argue the greater to include the lesser on that aspect, consistency requires it to acknowledge the same point elsewhere – that the merits claims in the S.D.N.Y. action are the greater which include those here as the lesser.

I.    THE PLAINTIFF HAS NOT MET ITS BURDEN OF PROVING SUFFICIENT FACTS
      TO SHOW GENERAL PERSONAL JURISDICTION.

First, the plaintiff ignores its failure to meet the first requirement for personal jurisdiction – state long arm statute compliance.  Compare Db 6-10, with Pb 6-9.  It thus overlooks the fact that its merits claim does not "aris[e] from" any pertinent Massachusetts activity of the defendant, making M.G.L. c. 223A, §3 inapplicable.

Its argument about the defendant's Massachusetts activities apart from the merits claim then ignores the statutorily pertinent ones.  Per M.G.L. c. 223A, §2, they are just domicile,

3

incorporation, or maintenance of one's "principal place of business" here. The defendant has or does none of them.

Other states might reach out with a longer arm than that. See e.g. Trierveiler v. Croxton & Trench Holding Corp., 90 F.3d. 1523, 1533 (10th Cir. 1996) (Mich. statute for long arm general jurisdiction, over one "conduct[ing] a 'continuous and systematic part of its general business'" there). Massachusetts has not done so, however. It thus is legally immaterial what business the defendant does here unrelated to the merits claim, because such business cannot trigger M.G.L. c. 223A, §2.

Accordingly, the plaintiff's solely "constitutional law" argument (Pb 9) need not be reached. Its failure to show facts triggering either §2 or §3 of M.G.L. c. 223A prevents any finding of personal jurisdiction over the defendant here. (In turn, venue here then becomes improper. See Db 13-14.)

Secondly, even its showing on the constitutional aspect is insufficient. "The standard for general jurisdiction is high; contacts with a state must 'approximate physical presence.' (citation omitted) Put another way, a defendant must not only step through the door, it must also '[sit] down and [make] itself at home.'" (citation omitted) Tuazon v. R.J. Reynolds Tobacco Co., 433 F.3d 1163, 1169 (9th Cir. 2006). "It is abundantly clear that a corporation does not necessarily submit to general jurisdiction in every state in which it merely sells a product." Id. (at 1174).

Here, the plaintiff would rely more on rhetoric than the pertinent facts. The latter are that the defendant does seek and occasionally does perform work here, but it has no continuing physical presence and no regular, continuing commercial involvement here. (See L. Grant Affid., ¶'s 33, 34)

4

2139628v1

Its work here of course could support specific jurisdiction as to claims arising therefrom. (E.g. Pb 8) However, such work is not enough in light of all the pertinent facts to show it to have "made itself at home" in Massachusetts – as its "home away from home ..." (Db 10) General jurisdiction over it therefore is lacking even constitutionally.

Finally, the plaintiff does not address the "reasonableness" aspect of the constitutional analysis. Compare Db 10, 11-13, with Pb 6-9. It thus ignores the fact that even if the defendant's contacts here were assumed to be sufficiently "continuous and systematic," general jurisdiction still would not be reasonable. The pertinent interests of the parties, the courts, and the states involved show that the plaintiff's claims should be pursued in New York, rather than here. See Db 11-13, 18-19.

In sum, the plaintiff has not met its burden of showing sufficient facts to support personal jurisdiction over the defendant here. Its Verified Complaint therefore should be dismissed.

II.    ALTERNATIVELY, A 28 U.S.C. §1404(a) "CONVENIENCE" TRANSFER TO NEW YORK IS WARRANTED.

The plaintiff's arguments against a 28 U.S.C. §1404(a) convenience transfer also miss the mark. For instance, its own "main witnesses" and "documents ... are in Rhode Island," not here. (Pb 10) Indeed, no one's witnesses or documents are here. More generally, its arguments about the supposed convenience of traveling "from there to here" (see Pb 10-11) apply just as much to traveling "from here (or Rhode Island) to there."

Also, its arguments overlook the injustice to the defendant of hosting the merits dispute at a place where the defendant likely cannot compel the attendance of important non-party witnesses or even implead necessary third parties. See supra, pp. 1-2. Those others – from the New York area – are critical to the proper and complete resolution hereof, because both

5

contractually and statutorily, the parties' rights and duties <u>inter</u> <u>sese</u> were qualified by ones as to other project participants upstream and downstream of them.

On the statutory side, the fact that the plaintiff itself has "no [New York] lien claim pending" (Pb 11) does not render the N.Y. Lien Law inapplicable.  It engaged one (Alf Rentals) which has filed and since sued to foreclose on a New York mechanic's lien.  It also contracted with one (the defendant) which too has filed and, by claims over, is suing to foreclose its own lien.  More fundamentally, it agreed to and then did perform work on a New York project.

Such matters suffice to trigger the N.Y. Lien Law even as to it – for instance, as to: the defendant's and its own trust obligations to one like Alf Rental; the owner's and the general contractor's lien and trust obligations down the contractual stream to and beyond them; and the needs to resolve together all liens in competing contractual chains down from the general contractor and to net out any vertically duplicative items in liens within the same chain.  <u>See</u> Db 16-17.  As a result, all such others become necessary parties to a complete resolution, amenable to suit in New York but, inconveniently, not here.  <u>See</u> Db 14-15, 16-18.

Such matters also show the insufficiency of the plaintiff's contention that the defendant can assert a compulsory counterclaim here.  (See Pb 11)  It would also need to implead the other necessary parties as aforesaid, but could not do so for lack of personal jurisdiction over them here.

Additionally, even apart from the N.Y. Lien Law, the parties' own contract preconditioned the payment for which the plaintiff is suing upon its proof that its downstream project vendors have been paid and their liens resolved.  (See L. Grant Affid., ¶'s 5, 22-27 and Exs. A, I)  Even if such vendors do not thereby become necessary parties, their representatives

6

will be important non-party witnesses – for whom Massachusetts would not be a convenient forum.

Regarding some of the other §1404(a) considerations, the plaintiff provides no proof that the Southern District of New York is "clogged and congested." (Pb 12-13)  In fact, the federal district courts' website (www.uscourts.gov/caseload 2006 - Federal Judicial Caseload Statistics 3/31/06, at Table C-5) shows that for the year ending 3/31/06, the overall median case disposition time in that district was 8.9 months, compared to one here of 10.2 months.

Regarding the pending motion for remand in the S.D.N.Y. action (Pb 13, 14), the plaintiff here – through its New York counsel there – has opposed that motion.  (See E.J. Frisch Affid., ¶'s 3-5 and Ex. A)  Moreover, even if that motion were granted and the case remanded to New York state court, the relief here under 28 U.S.C. §1406(a) for improper venue could be a dismissal without prejudice to the plaintiff's pursuit of its claims and defenses there.

Regarding the plaintiff's pending motion to dismiss the defendant's crossclaims in the S.D.N.Y. action (Pb 14) – which is being opposed (E.J. Frisch Affid., ¶'s 6, 7), its arguments overlook several things.  One is the absence of personal jurisdiction over the defendant here, as aforesaid.

Another is that "the first filed rule … is usually disregarded where the competing suits were filed merely days apart."  (citation omitted)  Ontel Products, Inc. v. Project Strategies Corp., 899 F.Supp. 1144, 1153 (S.D.N.Y. 1995).  Likewise, "courts have declined to defer to the first-filed action when little if anything has been done to advance that action for trial."  (citation omitted)  Affinity Memory & Micro, Inc. v. K&Q Enterprises, Inc., 20 F.Supp.2d 948, 954 (E.D.Va. 1998).

7

Here, the filing of the instant case preceded that of the later-removed New York state court action by just two days.   Supra, p. 2.  See also Feinstein v. Brown, 304 F.Supp. 2d 279, 282-283 (D.R.I. 2004) (filing date as that of the state court action which is later removed).   As one result, proceedings here have not progressed faster than in the S.D.N.Y. action; rather, they have progressed faster there with responsive pleadings and impleader filings. (E.g. L. Grant Affid., ¶'s 15-17 and Exs. D-G)

Further, the first filed rule only applies where the two cases are sufficiently similar – such that proceeding with both risks "wasted resources," "the possibility of conflicting judgments," and "concern[s] that the [two] courts may unduly interfere with each other's affairs."  See TPM Holdings, Inc. v. Intra-Gold Industries, Inc., 91 F.3d 1, 4 (1st Cir. 1996).

Here, the instant case is just a "lesser included" of the S.D.N.Y. action, in that it contains just some of the necessary parties and claims which are all present in the latter.   Such divergence then requires a "case by case" (citation omitted) rather than a chronological determination, "based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute."  Id. (91 F.3d at 4).   Such factors then point to the S.D.N.Y. action as the one:  having progressed faster; containing all of the necessary parties for a complete resolution; where such a resolution will include but not be limited to that of the merits claims here; and where such a resolution also will further New York's policies as evinced in its Lien Law as well as the court's interest in efficiency.   They thus far outweigh a two day filing difference between the two actions.

Finally,  such  and  the  other  considerations  previously  discussed  also  lessen  the significance of the plaintiff's choice of forum.  This forum is not where the operative events occurred, not where even the plaintiff's own witnesses and documents are located, and not where

8

the defendant could implead necessary third parties or compel the attendance of important non-party witnesses.

Also, while it is located in the state which the plaintiff would call "home" (e.g. Pb 12, 14), the plaintiff admits that its "offices … [are] in … Rhode Island" (Pb 2, Pb 3-¶1).  It nowhere disputes that it dealt from Rhode Island with the defendant.  (Compare Db 4 with entire Pb)  Its "home" is where it hangs its hat – in Rhode Island, not where the hat was bought – its state of incorporation.  (Otherwise, Delaware would overflow with corporate "homes.")

In sum, all of the pertinent considerations point to the Southern District of New York as the forum which is more convenient for all of the necessary parties and all of the likely witnesses, as well as the one where a complete resolution can be had – with the interests of justice and efficiency thereby served.  If this action is not dismissed, it therefore should be transferred there.

## CONCLUSION

For the reasons and authorities previously advanced, the defendant respectfully requests that the court dismiss this action for lack of subject matter jurisdiction, lack of personal jurisdiction, and/or improper venue.  Alternatively, the action should be transferred to the Southern District of New York pursuant to 28 U.S.C. §1404(a) (and/or §1406(a)).

Respectfully submitted,

Defendant Coreslab Structures (Conn), Inc.
By its Attorneys *Pro Hac Vice*
 /s/ Edward J. Frisch
Edward J. Frisch, Esq.
Lindabury, McCormick, Estabrook & Cooper, P.A.
53 Cardinal Drive, P.O. Box 2369
Westfield, New Jersey
Phone:  (908) 233-6800
Fax:  (908) 518-2760
 - and –

9

2139628v1

/s/ David T. Keenan
Edward J. Quinlan, Esq., BBO #409060
David T. Keenan, Esq., BBO #567325
Quinlan & Sadowski, P.C.
11 Vanderbilt Avenue, Suite 250
Norwood, MA   02062-5056
Attorneys for (as local counsel to)
Defendant Coreslab Structures (Conn), Inc.
Phone:  (781) 440-9909
Fax:  (781) 440-0079

Dated:  August 7, 2007

10

EXHIBIT J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| BUILDERS RESOURCE, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 07-40057 FDS |
| | : | |
| v. | : | |
| | : | AFFIDAVIT |
| CORESLAB STRUCTURES | : | OF EDWARD J. FRISCH, ESQ. |
| (CONN), INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

STATE OF NEW JERSEY    )
                       ) ss.:
COUNTY OF UNION        )

      Edward J. Frisch, of full age, and having been duly sworn, upon his oath deposes and says:

      1.     I am an attorney at law of the State of New Jersey and a member of Lindabury, McCormick, Estabrook & Cooper, P.A., general counsel for the defendant herein.  I also was recently admitted *pro hac vice* to the bar of this court.

      2.     This affidavit is submitted in support of the defendant's pending motion to dismiss or, alternatively, to transfer this action.

      3.     The plaintiff's opposition memorandum to the motion, at page 14, refers to a pending motion in the S.D.N.Y. action, by the plaintiff in that action, for its remand to state court.

2140441v1

4.      Annexed hereto as Exhibit A is a true copy of the memorandum of law recently filed in opposition to that remand motion by the plaintiff here/a defendant there – through its New York counsel. It thus is opposing any remand there.

5.      To my knowledge, the court in the S.D.N.Y. action has yet to decide such remand motion.

6.      The plaintiff's opposition memorandum in the instant case, page 14, also refers to its own motion in the S.D.N.Y. action to dismiss the claims over of the defendant here/a codefendant there – essentially in favor of the pursuit of such claims over here.

7.      On behalf of the defendant, we will be opposing that motion and are in the process of preparing its opposition papers.

8.      Finally, the critical non-party witnesses which the defendant will need herein include, but are not limited to the following.

9.      A substantial portion (some $437,000) of the plaintiff's claim is for alleged extra work, regarding which the defendant will need testimony: from representatives of the owner (Con Ed) that the plaintiff disregarded the owner's conditions and limits to payment therefor; and from certain New York City officials that per their audit, the plaintiff's certified payrolls did not support the amount claimed by the plaintiff.

_____
EDWARD J. FRISCH, Esq. (EF 8377)

Sworn to before me on this 1st
day of August, 2007.

LYNN NESENJUK
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES DECEMBER 1, 2010
_____
Notary Public, State of New Jersey

2

2140441v1

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ALF RENTAL COMPANY, INC.,

                   Plaintiff,                        Docket No.:  07 CV 3148 (LAK)

     -against-

BUILDERS RESOURCE, INC., D'ONOFRIO GENERAL
CONTRACTORS CORP., CONSOLIDATED EDISON
OF NEW YORK, INC., TERRA DINAMICA, LLC,
CORESLAB    STRUCTURES,    and    NICOLSON
CONSTRUCTION CO.,

                 Defendants.
-------------------------------------------------------------------X
BUILDERS RESOURCE, INC.,

                Third-Party Plaintiff,

     -against-

BAY CRANE SERVICE INC.,

                Third-Party Defendant.
-------------------------------------------------------------------X

## BRI'S MEMORANDUM OF LAW IN
## OPPOSITION TO ALF'S MOTION TO REMAND

## INTRODUCTION

This memorandum of law is submitted by defendant Builders Resource, Inc. ("BRI") in opposition to plaintiff ALF's motion to remand this action the State Court.

## STATEMENT OF FACTS

Plaintiff moves to remand its action the State Court on the grounds remand is required by reason of an earlier lien foreclosure action commenced in Bronx County by defendant Terra Dinamica.

Plaintiff's motion to remand should be denied in all respects. The mechanic's liens of both of the plaintiff and of the co-defendant Terra Dinamica have been replaced by individual lien discharge bonds. Thus, the actions are in reality suits against bonds which are each contracts assumed by the surety on the bonds. In addition, Terra Dinamica has asserted its own lien claim by counterclaim in the ALF suit. Therefore, all parties and claims are before this Court, and remand is unjustified.

## ARGUMENT

### POINT I

### ALF'S MOTION TO REMAND
### SHOULD BE DENIED IN ALL RESPECTS

Plaintiff contends that since its action is to foreclose on a mechanic's lien, and since a prior action to foreclose on a lien was commenced in the State Court before the instant suit, this Court should remand this action to the State Court. Plaintiff relies on York Hunter Construction, Inc. v. Avalon Properties, Inc., 104 F.Supp.2d 211 (S.D.N.Y., 2000).

Without conceding that ALF even has a valid mechanic's lien (and BRI contends otherwise), plaintiff's reliance upon York Hunter is misplaced, since all of the liens filed by

Terra Dinamica and ALF, the instant plaintiff, have been discharged by lien bonds. Each lien has been separately bonded by a separate surety obligation.

By reason of these bonds, "a 'shifting' occurs and the lien detaches from its original adherence (appropriated funds or property) and attaches to the substitute, the bond. A surety obligation is then substituted (citation omitted)." Tri-City Electric Co., Inc. v. State of New York, 96 A.D.2d 146, 468 N.Y.S.2d 283 (4th Dept. 1983); aff'd, 63 N.Y.2d 969, 483 N.Y.S.2d 990 (1984); Outrigger Const. Co. Inc. v. Nostrandt Avenue Development Corp., 217 A.D.2d 689, 630 N.Y.S.2d 332 (2d Dept. 1995).

Plaintiff's argument that the Terra Dinamica suit and the action at bar involve the "same property" is in error. "The very end to be achieved by the filing of undertakings ... is to relieve the real estate from incumbrances, so that the same may freely be alienated by the owner". White Plains Sash & Door Co., Inc. v. Doyle, 262 N.Y. 16 (1933); see also, Western Woodworking Co., Inc. v. Kaskel, 133 N.Y.S.2d 632 (S. Ct. Sp. T. Qu. 1954) (once an undertaking is filed the lis pendens is to be discharged). "The bond takes the place of the real property on which the lien was asserted." Brescia Const. Co., Inc. v. Walart Const. Co., Inc., 238 A.D. 360, 264 N.Y.S. 862 (1st Dept. 1933).

Since separate surety bonds are substitutes for the liens on realty, neither the Terra Dinamica nor the ALF lien foreclosure action implicates realty. Instead, the actions distill to suits under contracts of suretyship. "The interpretation of a contract of suretyship is governed by the standards which govern the interpretation of contracts in general." General Phoenix Corp. v. Cabot, 300 N.Y. 87, 92, 89 N.E.2d 238, 241 (1949).

Since the lien ceased to exist upon the giving of the bond, a suit to enforce the mechanic's lien is not an action in rem but "is simply an in personam contract claim." Pax, Inc.

2

v. Veolia Water North American Operating Services, Inc., 347 F.Supp.2d 281 (W.D.Va. 2004).

In Pax, the material supplier sued the contractor and the surety in State Court. Defendants then

removed the suit. Plaintiff in turn filed a motion to remand arguing that since the surety bond

discharging plaintiff's mechanic's lien was under the control of the State Court federal

abstention was required. The District Court denied the motion since the mechanic's lien no

longer existed, and the claim against the discharge or lien bond was merely an action against a

contract.

Since the mechanic's liens have been substituted by surety bonds, and the lienors' claims

are against separate surety bonds, the state court does not have jurisdiction over a *res*. Moreover,

the federal forum is not inconvenient and removal does not result in piecemeal litigation since

the lienors' claims are against different surety bonds and all the lienors are before this forum.

For these reasons, this Court should not abstain under Colorado River Water

Conservation Dist. v. United States, 424 U.S. 800 (1976).

Where a federal district court has subject matter jurisdiction over a case, it has a

"virtually unflagging obligation" to exercise that jurisdiction, even if a parallel state court action

is pending. In addition, there is a "heavy presumption favoring the exercise of [federal]

jurisdiction." Bethlehem Contracting Co. v. Lehrer/McGovern, Inc., 800 F.2d 325 (2d Cir.

1986). Furthermore, "the liens having been discharged, neither court presently has jurisdiction

over any res or property, and the federal forum is not less convenient than the state forum."

Bethlehem, supra.

In addition, Terra Dinamica and CSCI assert the existence of their liens as counterclaims

and cross-claims in this action. Therefore, Terra Dinamica, CSCI, and ALF are before this

forum, and all controversies may be adjudicated by this Court.

3

## POINT II

### IN THE EVENT THAT ALF IS REMANDED, CSCI'S CROSS-CLAIMS AGAINST BRI AND ALLARD ALONE SHOULD REMAIN IN THIS COURT

Federal jurisdiction over CSCI's cross-claims against BRI alone, and CSCI's third-party complaint against Allard is supported by diversity of citizenship. If these claims are not dismissed on the grounds of prior action pending, forum non conveniens, and lack of personal jurisdiction under New York's long arm statute (CPLR § 302), then these claims should remain in this District Court and not be remanded with ALF to the State Court. CSCI's claims are at their core unrelated to ALF's claim. And even if they were not "as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal Court having jurisdiction ...' " Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).

Accordingly, CSCI's cross-claims against BRI alone and CSCI's third-party claim against Allard should remain in this District Court.

4

## CONCLUSION

By reason of the foregoing, ALF's motion to remand should be denied in all respects. However, if ALF's action is remanded and CSCI's cross-claims against BRI and Allard are not dismissed, then CSCI's third, fourth, and fifth cross-claims against BRI, and CSCI's third-party claim against Allard should remain in this District Court. These claims are separate and distinct from ALF's claim, and there is an independent basis for Federal jurisdiction of these claims.

Dated: New York, New York
       July 17, 2007

Yours, etc.

LAMBERT & WEISS
*Attorneys for Defendant and*
*Third-Party Plaintiff Builders Resource, Inc.,*
*and Third-Party Defendant Steven Allard*

By:  _____
     STEPHEN H. MARCUS (SHM 2370)
     61 Broadway, Suite 2020
     New York, New York 10006
     (212) 344-3100

H:\SHM\5790-Private-Builders\Legal\ALF\MOL in Opp to ALF Mot to Remand.doc

5

EXHIBIT K



**TREACY**
**SCHAFFEL**
**& MOORE**
**& MUELLER**

*Attorneys and Counsellors at Law*
*Founded 1872*

111 BROADWAY, SUITE 402 • NEW YORK, NY 10006
TEL: (212) 227-8150 • FAX: (212) 285-1968

1120 BLOOMFIELD AVENUE • P.O. BOX 1289
WEST CALDWELL, NJ 07007-1289
TEL: (973) 575-1878
E-MAIL: tsmm@tsmmlaw.com
WEBSITE: www.tsmmlaw.com

GARY J. MUELLER
MEMBER:    NEW YORK BAR
           NEW JERSEY BAR
           PENNSYLVANIA BAR
WRITER'S
E-MAIL:    GMUELLER@TSMMLAW.COM

August 8, 2007

(Via Facsimile)

Edward J. Frisch, Esq.
Lindabury, McCormick, Estabrook & Cooper, P.C.
P. O. Box 2369
53 Cardinal Drive
Westfield, New Jersey 07091

Re:    <u>Con Edison - Mott Haven Project</u>

Dear Mr. Frisch:

Pursuant to the provisions of Coreslab Structures' July 10, 2007 "Contractor Affidavit, Partial Release and Waiver of Lien," as well as Article XVIII of the D'Onofrio-Coreslab contract, the following liens have been filed on the Mott Haven Project and have not been satisfied or withdrawn:

| | | | |
|---|---|---|---|
| 1.) | Weilgus & Sons | - | $ 91,500.00 |
| 2.) | New York Crane & Equipment | - | 249,111.23 |
| 3.) | ALF Rental | - | 18,611.00 |
| 4.) | ALF Rental | - | 58,538.00 |

These liens have been replaced by surety bonds. We hereby demand pursuant to the Contractor-Affidavit and Article XVIII of the Contract that Coreslab provide substitute bonds for these liens and reimburse D'Onofrio for the cost of the original bond premium.

frisch {69845.WPD;1}

LY, SCHAFFEL, MOORE & MUELLER

-2-

Also, the ALF Rental liens are the subject of a foreclosure action in the United States District Court for the Southern District of New York.  Again, pursuant to the third paragraph of the Contractor-Affidavit, Partial Release and Waiver of Lien, we call upon Coreslab to defend, indemnify and hold harmless both Con Ed and D'Onofrio in said action without cost to Con Ed and D'Onofrio, including but not limited to attorneys' fees.

If you require additional information, please advise.

Very truly yours,

Gary J. Mueller

GJM/mr

frisch (89845.WPD;1)



**TREACY SCHAFFEL & MOORE & MUELLER**

*Attorneys and Counsellors at Law*
*Founded 1872*

111 Broadway, Suite 402 • New York, NY 10006
Tel: (212) 227-8150 • Fax: (212) 285-1968

1120 Bloomfield Avenue • P. O. Box 1289
West Caldwell, NJ 07007-1289
Tel: (973) 575-1878
E-MAIL: tsmm@tsmmlaw.com
WEBSITE: www.tsmmlaw.com

GARY J. MUELLER
MEMBER:   NEW YORK BAR
          NEW JERSEY BAR
          PENNSYLVANIA BAR
WRITER'S
E-MAIL:   GMUELLER@TSMMLAW.COM

August 9, 2007

(Via Facsimile)

Edward J. Frisch, Esq.
Lindabury, McCormick, Estabrook & Cooper, P.C.
P. O. Box 2369
53 Cardinal Drive
Westfield, New Jersey 07091

Re:   Con Ed - Mott Haven Substation II
      Lien of Weilgus & Sons

Dear Mr. Frisch:

After receipt of your letter of this date concerning the Weilgus & Sons' lien, I confirmed with D'Onofrio that the work performed and material furnished by Weilgus & Sons was not part of the contractual responsibilities of Coreslab. As such, it should not have been included in my August 8th letter. You may consider my letter of August 8th amended to delete any reference to the Weilgus & Sons' lien and to confirm that Coreslab has no responsibility for the Weilgus & Sons' lien.

In all other respects, however, the statements and demands set forth in my August 8th letter remain in full force and effect.

Very truly yours,

Gary J. Mueller

frisch (69851.WPD;1)

EXHIBIT L

# D&B Small Business Solutions

Comprehensive Insight Plus Report for
**BUILDERS RESOURCE CORP.**
Report Printed: April 12, 2007

**D-U-N-S #: 95-670-3268**

Copyright 2004 Dun & Bradstreet – Provided under contract for the exclusive use of subscriber A Michael Candido, x

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

# Company Snapshot

## Business Summary

**Profile**
**BUILDERS RESOURCE CORP.**
101 Nasonville Rd
(burrillville)
Harrisville, RI 02830

| | |
|---|---|
| Likelihood this company will not pay on time over the next 12 months | MODERATE |
| **Credit Score Class: 3** | |

**Mailing address:**
Rural Route 180 Main Street
Blackstone, MA 01504

| | |
|---|---|
| Likelihood this company will experience financial distress in the next 12 months | MODERATE |
| **Financial Stress Class: 3** | |

**Tel:** 401 762-0262
www.buildersresource.com
**D-U-N-S #:** 95-670-3268
**D&B Rating: 2R4**

| | |
|---|---|
| Timeliness of historical payments for this company** | SLOW |
| **D&B PAYDEX®: 78** | |

**Company Stats**

| | |
|---|---|
| Year incorporated | 1995 |
| Year started | 1995 |
| Management control | 2003 |
| Employees | 3 |
| Chief Executive | Louise Allard , President |
| S.I.C. | 1791 |
| Industry | |
| Structural steel erection | |

Industry benchmark: Prompt
**Based on 10 trade experiences on file with D&B

| | |
|---|---|
| Payment performance trend over the past 90 days | UNCHANGED |

This is a **single** location.

The Net worth amount in this section may have been adjusted by D&B to reflect typical deductions, such as certain intangible assets.

| | |
|---|---|
| **Evidence of bankruptcy, fraud, or criminal proceedings in the history of this business or its management** | NO |
| **Noteworthy special events in this company's file** | NO |
| **Total number of suits, liens and judgments in this company's file** | 5 |
| **Value of open suits, liens and judgments for this company** | $365,196 |

Value of open records refers only to 10 most recent filings for each record type.

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

# Creditworthiness

## Summary

| | | |
|---|---|---|
| Likelihood this company will experience financial distress in | MODERATE | **D&B Rating: 2R4**<br>Number of employees: 2R is 1 to 9 employees.<br>Composite credit appraisal: 4 is limited. |

the next 12 months

**Likelihood this company will not pay on time over the next 12 months**          MODERATE

The 1R and 2R ratings categories reflect company size based on the total number of employees for the business. They are assigned to business files that do not contain a current financial statement. In 1R and 2R Ratings, the 2, 3, or 4 creditworthiness indicator is based on analysis by D&B of public filings, trade payments, business age and other important factors. 2 is the highest Composite Credit Appraisal a company not supplying D&B with current financial information can receive. For more information, see the D&B Rating Key.

## Default on Payment: Financial Stress Summary

**Likelihood this company will experience financial distress in the next 12 months**          MODERATE

**Financial Stress Class: 3**

During the prior year, firms in this Financial Stress Class had a failure rate of 8%, which is 3.08 times higher than the national average.

Financial stress national percentile: 9 (high risk: 1%; low risk: 100%)
National percentile industry norm: 38 (high risk: 1%; low risk: 100%)

**Key Factors**
- 10 trade experiences exist for this company.
- Financial Stress Score: 1278 (high risk: 1,001;low risk: 1,875)
- 7% of trade dollars indicate slow payment(s) are present.
- Evidence of open lien(s) in D&B database.

## Payment within Terms: Credit Score Summary

**Likelihood this company will not pay on time over the next 12 months**          MODERATE

**Credit Score Class: 3**

The Credit Score class of 3 for this company shows that 14.3% of firms with this classification paid one or more bills severely delinquent, which is lower than the average of businesses in D&B's database.

Credit score percentile: 42 (high risk: 1%; low risk: 100%)
Industry norm percentile: 51 (high risk: 1%; low risk: 100%)

**Key Factors**
- 10 trade experiences exist for this company.
- 7% of trade dollars indicate slow payment(s) are present.
- Evidence of open lien(s) in D&B database.

## Additional Information

**Financial Stress Summary**
- The Financial Stress Class indicates that this firm shares some of the same business and financial characteristics of other companies with this classification. It does not mean the firm will necessarily experience financial stress.
- The Incidence of Financial Stress shows the percentage of firms in a given Class that discontinued operations over the past year with loss to creditors. The Incidence of Financial Stress - National Average represents the national failure rate and is provided for comparative purposes.
- The Financial Stress National Percentile reflects the relative ranking of a company among all scorable companies in D&B's file.
- The Financial Stress Score offers a more precise measure of the level of risk than the Class and Percentile. It is especially helpful to customers using a scorecard approach to determining overall business performance.
- All Financial Stress Class, Percentile, Score and Incidence statistics are based on 2004.

**Credit Score Summary**
- The Incidence of Delinquent Payment is the percentage of companies with this classification that were reported 90 days past due or more by creditors. The calculation of this value is based on an inquiry weighted sample.
- The Percentile ranks this firm relative to other businesses. For example, a firm in the 80th percentile has a lower risk of paying in a severely delinquent manner than 79% of all scorable companies in D&B's files.

Company Snapshot     Creditworthiness     Payment History & Trends     Public Filings     History & Operations     Banking & Finance

## Payment History

### Summary

| | | | |
|---|---|---|---|
| Average payment performance trend when weighted by dollar amount | **UNCHANGED** | Company's payment performance over the past 12 months compared with its peers | **AHEAD** |

### Payment History Overview

| | | | |
|---|---|---|---|
| **Payment experiences on file with D&B:** | **10** | Average highest credit: | $10,678 |
| Payments made within terms: | 8 (83%) | Largest high credit: | $35,000 |
| Amount placed for collections: | 0 (0%) | Highest now owing: | $25,000 |
| | | Highest past due: | $2,500 |

### Historical Payment Trends: PAYDEX®

**Average payment performance trend when weighted by dollar amount**

**Last 3 months:** Trend is unchanged    **UNCHANGED**

**Last 12 months:** 3 days beyond terms    D&B PAYDEX® : **78**
Industry benchmark: Prompt

Based on payments collected over last 12 months.
Indications of slowness can be the result of dispute over merchandise, skipped invoices, etc. Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed.

### Historical Payment Trends: PAYDEX® Comparison to Industry

**Company's payment performance over the past**    **AHEAD**
**12 months compared with its peers**

**This company's 12-month high:** 80, or equal to generally within terms
**This company's 12-month low:** 78, or equal to 3 days beyond terms

| | 5/06 | 6/06 | 7/06 | 8/06 | 9/06 | 10/06 | 11/06 | 12/06 | 1/07 | 2/07 | 3/07 | 4/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **This Business** | 79 | 79 | 79 | 79 | 79 | 79 | 80 | 79 | 79 | 78 | 78 | 78 |
| **Industry Quartiles** | | | | | | | | | | | | |
| Upper | | 80 | | | 80 | | | 80 | | | 80 | |
| Median | | 77 | | | 77 | | | 77 | | | 77 | |
| Lower | | 67 | | | 67 | | | 68 | | | 68 | |

Shows PAYDEX scores of this Business compared to the Primary Industry from each of the last four quarters. The Primary Industry is Structural steel erection, based on SIC code 1791.

### Payment History Details

| Date Reported | Paying Record | High Credit ($) | Now Owes ($) | Past Due ($) | Selling Terms | Last Sale Within (months) |
|---|---|---|---|---|---|---|
| 03/07 | Prompt | 35,000 | 25,000 | 0 | | |
| 03/07 | Prompt | 30,000 | 20,000 | 0 | | |
| 02/07 | Prompt | 1,000 | 500 | 0 | | 1 |
| 02/07 | Prompt | 0 | 0 | 0 | | 4-5 |
| 02/07 | Prompt-Slow 60 | 5,000 | 5,000 | 2,500 | Net30 | 1 |
| 02/07 | Slow 30 | 2,500 | 2,500 | 2,500 | | 1 |

| 01/07 | Prompt | 0 | 0 | | | 1 |
|-------|--------|---|---|---|---|---|
| 01/07 | Prompt | 0 | 0 | 0 | | 1 |
| 12/06 | Prompt | 250 | 250 | 0 | | 1 |
| 05/06 | Prompt-Slow 30 | 1,000 | 0 | 0 | Net60 | 1 |

Payment experiences reflect how bills are met in relation to the terms granted. In some instances payment beyond terms can be the result of dispute over merchandise, skipped invoices, etc.
Each experience shown is from a separate supplier. Updated trade experiences replace those previously reported.
Accounts are sometimes placed for collection even though the existence or amount of the debt is disputed.

## Payment Analysis By Industry

**Company's dollar-weighted payments listed by the primary industries of its suppliers**

| Industry | Total Received (#) | Total Dollar Amount ($) | Largest High Credit ($) | Within Terms | Slow 1-30 | Slow 31-60 | Slow 61-90 | Slow 91+ |
|----------|-----|-----|-----|-----|-----|-----|-----|-----|
| | | | | | | (% of dollar amount) | | |
| Short-trm busn credit | 2 | 65,000 | 35,000 | 100 | 0 | 0 | 0 | 0 |
| Hvy const eqpt rental | 1 | 5,000 | 5,000 | 50 | 0 | 50 | 0 | 0 |
| Radiotelephone commun | 1 | 2,500 | 2,500 | 0 | 100 | 0 | 0 | 0 |
| Nonclassified | 1 | 1,000 | 1,000 | 100 | 0 | 0 | 0 | 0 |
| Whol office supplies | 1 | 1,000 | 1,000 | 50 | 50 | 0 | 0 | 0 |
| Whol hardware | 1 | 250 | 250 | 100 | 0 | 0 | 0 | 0 |
| Whol electrical equip | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Whol industrial suppl | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Misc publishing | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Other payment categories** | | | | | | | | |
| Cash experiences | 0 | 0 | 0 | | | | | |
| Payment record unknown | 0 | 0 | 0 | | | | | |
| Unfavorable comments | 0 | 0 | 0 | | | | | |
| **Placed for collection** | | | | | | | | |
| With D&B | 0 | 0 | 0 | | | | | |
| Other | 0 | N/A | 0 | | | | | |
| **Total in D&B's file** | **10** | **74,750** | **35,000** | | | | | |

There are 10 payment experiences in D&B's file for the most recent 12 months, with 8 experiences reported during the last three month period.

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

# Public Filings

## Summary of Court Actions

**The following data includes both open and closed filings found in D&B's database on the subject company.**

| Record Type | Open Records | Open Value | Total Records | Most Recent Filing Date |
|-------------|-------------|-----------|---------------|------------------------|
| **Suits** | 0 | 0 | 0 | - |
| **Liens** | 5 | $365,196 | 5 | 05/02/2005 |
| **Judgments** | 0 | 0 | 0 | - |
| **UCC Filings** | 0 | N/A | 0 | - |
| **Bankruptcy Proceedings** | 0 | N/A | 0 | - |

Public filing data is for informational purposes only and is not the official record. Certified copies can only be obtained from the official source.
Number and value of open records refers only to 10 most recent filings for each record type.

## Liens

| Status | Amount | Type | Filed By | Against | Date Filed | Additional Details |
|--------|--------|------|----------|---------|-----------|--------------------|
| Open | $10,986 | Federal Tax | I R S | BUILDERS RESOURCE INC | 05/02/2005 | Book/Page: K414/G151<br>Date status Attained: 05/02/2005<br>Latest info Received: 12/30/2005<br>Where filed: PROVIDENCE COUNTY-BURRILLVILLE TOWN CLERK, HARRISVILLE, RI |
| Open | $27,321 | Federal Tax | I R S | BUILDERS RESOURCE INC | 01/27/2005 | Book/Page: K392/G251<br>Date status Attained: 01/27/2005<br>Latest info Received: 12/30/2005<br>Where filed: PROVIDENCE COUNTY-BURRILLVILLE TOWN CLERK, HARRISVILLE, RI |
| Open | $37,497 | Federal Tax | I R S | BUILDERS RESOURCE INC | 10/25/2004 | Book/Page: K369/G254<br>Date status Attained: 10/25/2004<br>Latest info Received: 05/27/2005<br>Where filed: PROVIDENCE COUNTY-BURRILLVILLE TOWN CLERK, HARRISVILLE, RI |
| Open | $64,794 | Federal Tax | I R S | BUILDERS RESOURCE INC | 08/12/2004 | Book/Page: K350/G121<br>Date status Attained: 08/12/2004<br>Latest info Received: 05/27/2005<br>Where filed: PROVIDENCE COUNTY-BURRILLVILLE TOWN CLERK, HARRISVILLE, RI |
| Open | $224,598 | Federal Tax | IRS | BUILDERS RESOURCE INC | 03/31/2004 | Book/Page: K310/G62<br>Date status Attained: 03/31/2004<br>Latest info Received: 05/27/2005<br>Where filed: PROVIDENCE COUNTY-BURRILLVILLE TOWN CLERK, HARRISVILLE, RI |

A lienholder can file the same lien in more than one filing location. The appearance of multiple liens filed by the same lienholder against a debtor
may be indicative of such an occurrence. Any public filings displayed in red are open.

## Government Activity

| Activity Summary | | Possible Candidate for Socio-Economic Program Consideration | |
|------------------|-----|------------------------------------------------------------|-----|
| Borrower (Dir/Guar) | No | | |
| Administrative Debt | Yes | Labor Surplus Area | Yes (2007) |
| Contractor | No | | |
| Grantee | No | Small Business | Yes (2007) |
| Party Excluded from Federal Program(s) | No | 8(A) Firm | N/A |

The details provided in the Government Activity section are as reported to D&B by the federal government and other sources.

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

# History & Operations

| Topic | Description |
|-------|-------------|
| History | Detailed information on the history of a company, including background information on the management team and key principals, and information on related companies. |
| Registration & Incorporation | Detailed registration and incorporation information, including the date and state of incorporation and the type of corporation formed. |
| Company Operations | Detailed information on a company's operations, including the identity of the parent company, the geographic scope of the business, and the key holdings. |

**Industry Classification**  Details on the specific industry within which a company is classified.

## History

**Officer(s):**                          **Director(s):**
LOUISE ALLARD, PRESIDENT-    THE OFFICER(S)
CEO

The business was incorporated in the state of Rhode Island on September 18, 1995.

Business started 1995. 100% of capital stock is owned by Louise Allard.

Percentage of stock ownership is undetermined.

LOUISE ALLARD. Work history is unknown.

## Registration & Incorporation

| | | | |
|---|---|---|---|
| **Registered Name:** | Builders resource corp. | **Filing Date:** | September 18, 1995 |
| **Business Type:** | Corporation | **Registration ID:** | 86124 |
| **Corporation Type:** | Profit | **Where filed:** | SECRETARY OF STATE/CORPORATIONS DIVISION, PROVIDENCE, RI |
| **Date incorporated:** | September 18, 1995 | | |
| **State of incorporation:** | Rhode island | **Registered Agent:** | JAMES D. LEVITT, #ONE LONSDALE AVENUE, PAWTUCKET, RI, 028600000 |
| **Duration :** | Perpetual | | |
| **Status:** | Revoked charter | **Principals:** | ROBERT L . GIULIANO, PRESIDENT, ONE LONSDALE AVENUE, PAWTUCKET, RI, 028600000 |
| **Status attained :** | September 22, 1999 | | |

Corporate and business registrations provided by management or other source.

## Company Operations

**Description:**        Contractor of structural steel (100%).

                        Terms are net 15 days. Sells to general public. Territory : Regional.

**Employees:**          3 which includes officer(s).

**Facilities:**         Rents 30,000 sq. ft. in brick building.

**Location:**           Suburban business section on well traveled street.

## Industry Classification

**SIC**                         **NAICS**

17910000  Structural steel erection  238120  Structural Steel and Precast Concrete Contractors

Based on information in our file, D&B has assigned this company an extended 8-digit SIC. D&B's use of 8-digit SICs enables us to be more specific to a company's operations than if we use the standard 4-digit code.
The 4-digit SIC numbers link to the description on the Occupational Safety & Health Administration (OSHA) Web site. Links open in a new browser window.

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

# Banking & Finance

## Key Business Ratios

D&B has been unable to obtain sufficient financial information from this company to calculate business ratios. Our check of additional outside sources also found no information available on its financial performance.

To help you in this instance, ratios for other firms in the same industry are provided below to support your analysis of this business.

### Industry Norms based on 28 establishments

| | This Business | Industry Median | Industry Quartile |
|---|---|---|---|
| **Profitability** | | | |
| Return on Sales | UN | 3.3 | UN |
| Return on Net Worth | UN | 16.0 | UN |
| **Short-Term Solvency** | | | |
| Current Ratio | UN | 2.0 | UN |
| Quick Ratio | UN | 1.4 | UN |
| **Efficiency** | | | |
| Assets Sales | UN | 37.5 | UN |
| Sales / Net Working Capital | UN | 8.2 | UN |
| **Utilization** | | | |
| Total Liabilities / Net Worth | UN | 99.1 | UN |

UN = Unavailable

## Finance

**09/26/2006**

On September 26, 2006, attempts to contact the management of this business have been unsuccessful. Outside sources confirmed operation and location.

Company Snapshot    Creditworthiness    Payment History & Trends    Public Filings    History & Operations    Banking & Finance

**Customer Service**

▶ Email us with your questions at sbsSupport@dnb.com

▶ If you'd like to speak to one of our member support technicians directly, call toll-free 1-800-333-0505, Monday through Friday, 7:00AM to 7:00 PM CST

▶ If this is a report on your own company use eUpdate, our easy online tool, to inform D&B of any changes to your business information.

Copyright 2004 Dun & Bradstreet – Provided under contract for the exclusive use of subscriber A Michael Candido, x